# 26-1416

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

Mid Vermont Christian School, on behalf of itself and its students and its students' parents, Nathan Partington, individually, O.P., by and through his father and natural guardian, Nathan Partington,

*Plaintiffs-Appellants,*

T.S., K.S., by and through their parents and natural guardians, Nathaniel and Dawna Slarve, Nathaniel Slarve, individually, Dawna Slarve, individually, A.G., M.G., by and through their parents and natural guardians, Chris and Bethany Goodwin, Christopher Goodwin, individually, Bethany Goodwin, individually,

*Plaintiffs,*

v.

Zoie Saunders, in her official capacity as Secretary of the Vermont Agency of Education, Jennifer Deck Samuelson, in her official capacity as Chair of the Vermont State Board of Education, Waits River Valley (Unified #36 Elementary) School Board,

*Defendants-Appellees,*

Heather Bouchey, in her official capacity as Interim Secretary of the Vermont Agency of Education, Christine Bourne, in her official capacity as Windsor Southeast Supervisory Union Superintendent, Hartland School Board, Randall Gawel, in his official capacity as Orange East Supervisory Union Superintendent, Jay Nichols, in his official capacity as the Executive Director of The Vermont Principals' Association,

*Defendants.*

On Appeal from the United States District Court
for the District of Vermont / Case No. 2:23-cv-00652

**JOINT APPENDIX – VOLUME 1 (1-165)**

David A. Cortman
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
dcortman@ADFlegal.org

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

James A. Campbell
Jacob E. Reed
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
jcampbell@ADFlegal.org
jreed@ADFlegal.org

Ryan J. Tucker
Jeremiah J. Galus
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rtucker@ADFlegal.org
jgalus@ADFlegal.org

*Counsel for Appellants*

Samuel B. Stratton
OFFICE OF THE VERMONT
ATTORNEY GENERAL
109 State Street
Montpelier, VT 05609
(802) 828-3171
sam.stratton@vermont.gov

*Counsel for Appellees Zoie
Saunders and Jennifer Deck
Samuelson*

Pietro J. Lynn
Sean M. Toohey
LYNN, LYNN, BLACKMAN &
TOOHEY, P.C.
76 St. Paul St., Suite 400
Burlington, VT 05401
(802) 860-1500
plynn@lynnlawvt.com
stoohey@lynnlawvt.com

*Counsel for Appellee Waits River
Valley (Unified #36 Elementary)
School Board*

## TABLE OF CONTENTS

| Document Description | ECF No. | Appendix Page |
|---|---|---|
| **VOLUME 1** | | |
| District Court Docket | | 1-32 |
| Memorandum from Daniel M. French, Ed.D. to Vermont State Board of Education dated February 1, 2023 | 14-3 | 33-40 |
| Declaration of Randall Gawel | 28-2 | 41-43 |
| Email dated October 3, 2023 re tuition payment | 28-4 | 44-45 |
| Supplemental Declaration of Jennifer Deck Samuelson | 50-2 | 46-48 |
| Amended Verified Complaint | 100 | 49-165 |
| **VOLUME 2** | | |
| Exhibit 1 to Amended Complaint – Act 73 | 100-1 | 166-313 |
| Exhibit 2 to Amended Complaint – Mid Vermont Christian School Website Pages | 100-2 | 314-338 |
| Exhibit 4 to Amended Complaint – Vermont Agency of Education's Continuing Best Practices for Schools Regarding Transgender and Gender Nonconforming Students | 100-4 | 339-348 |
| Exhibit 5 to Amended Complaint – September 13, 2022 Guidance Letter | 100-5 | 349-351 |
| Exhibit 6 to Amended Complaint – Mid Vermont Addendum for Independent School Applications - 2022 | 100-6 | 352-353 |

| | | |
|---|---|---|
| Exhibit 7 to Amended Complaint – Agency of Education Status Letter dated August 3, 2023 | 100-7 | 354-355 |
| Exhibit 8 to Amended Complaint – Gawel and Bourne October 4, 2023 Emails to Vicky Fogg | 100-8 | 356-358 |
| Exhibit 9 to Amended Complaint – January 4, 2024 Letter re approval status | 100-9 | 359-360 |
| Exhibit 10 to Amended Complaint – Declaration of Jennifer Deck Samuelson | 100-10 | 361-363 |
| Exhibit 11 to Amended Complaint – February 2025 & September 2025 Independent School Directories | 100-11 | 364-413 |
| Exhibit 12 to Amended Complaint – Mid Vermont 2025 Application Clarifier | 100-12 | 414-415 |
| Plaintiffs' Motion for Preliminary Injunction | 105 | 416-420 |
| **VOLUME 3** | | |
| Memorandum in Support of Motion for Preliminary Injunction | 105-1 | 421-451 |
| Declaration of Nathan Partington in Support of Motion for Preliminary Injunction | 105-2 | 452-456 |
| Declaration of Vicky Fogg in Support of Motion for Preliminary Injunction | 105-3 | 457-463 |
| Exhibit 1 to Fogg Declaration – List of Religious Schools Now Ineligible Due to Act 73 | 105-4 | 464-467 |
| School Board's Opposition to Motion for Preliminary Injunction | 121 | 468-478 |
| State Defendants' Response in Opposition to Plaintiffs' Motion for Preliminary Injunction | 122 | 479-502 |

| | | |
|---|---|---|
| Plaintiffs' Reply to State Defendants' Opposition to Motion for Preliminary Injunction | 124 | 503-519 |
| State Defendants' Motion to Dismiss Official Capacity Claims in Plaintiffs' Amended Complaint | 126 | 520-544 |
| Plaintiffs' Response in Opposition to State Defendants' Motion to Dismiss Official Capacity Claims | 129 | 545-577 |
| State Defendants' Reply in Support of Motion to Dismiss Official Capacity Claims in Plaintiffs' Amended Complaint | 133 | 578-588 |
| Plaintiffs' Notice of Supplemental Declarations in Support of Motion for Preliminary Injunction | 141 | 589-592 |
| Declaration of David Young | 141-1 | 593-594 |
| Declaration of Micah Hayre | 141-2 | 595-598 |
| Declaration of Robert Congdon, Jr. | 141-3 | 599-600 |
| Declaration of Brandon Damaska | 141-4 | 601-604 |
| Exhibit 1 to Damaska Declaration – School Tuition Website Pages | 141-5 | 605-640 |
| Exhibit 2 to Damaska Declaration – Chart of Secular Independent Schools Approved for Town Tuition | 141-6 | 641-643 |
| Exhibit 3 to Damaska Declaration – Religious Schools Tuition Website Pages | 141-7 | 644-676 |
| Exhibit 4 to Damaska Declaration – Chart of Religious Independent Schools Unapproved for Town Tuition | 141-8 | 677-679 |

| | | |
|---|---|---|
| Exhibit 5 to Damaska Declaration – Announced Tuition Rates for SY 2026-2027 | 141-9 | 680-684 |
| **VOLUME 4** | | |
| Exhibit 6 to Damaska Declaration – Announced Tuition Rates for the 2025-2026 School Year | 141-10 | 685-702 |
| Exhibit 7 to Damaska Declaration – Agency of Education 2024-2025 Final Allowable Tuition Calculation | 141-11 | 703-709 |
| Exhibit 8 to Damaska Declaration – School Redistricting Task Force's December 1, 2025 Report to the General Assembly | 141-12 | 710-751 |
| Declaration of David Evans | 141-13 | 752-754 |
| Exhibit 1 to Evans Declaration – Map of Private Schools/Programs Eligible for Tuition and Religious Schools Ineligible for Tuition | 141-14 | 755-759 |
| Order on Motion for Preliminary Injunction | 143 | 760-793 |
| State Defendants' Exhibit A – Act 73 (2025) Approved Independent School Eligibility | 144-1 | 794-796 |
| Notice of Appeal | 146 | 797-799 |
| Transcript of Motions Hearing | 148 | 800-889 |

iv

**Query**     Reports     **Utilities**     Help   Log Out

APPEAL,ENE0

# U.S. District Court
## District of Vermont (Burlington)
## CIVIL DOCKET FOR CASE #: 2:23-cv-00652-gwc

| | |
|---|---|
| Mid Vermont Christian School et al v. Bouchey et al<br>Assigned to: District Judge Geoffrey W. Crawford<br>Cause: 42:1983 Civil Rights Act | Date Filed: 11/21/2023<br>Jury Demand: None<br>Nature of Suit: 440 Civil Rights: Other<br>Jurisdiction: Federal Question |

### Plaintiff

| | | |
|---|---|---|
| **Mid Vermont Christian School**<br>*on behalf of itself and its students and its students' parents* | represented by | **David A. Cortman , Esq.**<br>Alliance Defense Fund<br>1000 Hurrican Shoals Rd NE, Suite D1000<br>Lawrenceville, GA 30043<br>(770) 339-0774<br>Fax: (770) 339-6744<br>Email: dcortman@adflegal.org<br>*ATTORNEY TO BE NOTICED* |

**Gretchen M. Wade , Esq.**
Wadleigh, Starr & Peters, PLLC
95 Market Street
Manchester, NH 03101
603-206-7262
Email: gwade@wadleighlaw.com
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
Alliance Defending Freedom
44180 Riverside Pkwy
Lansdowne, VA 20176
571-707-4718
Email: jreed@adflegal.org

JA.001

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremiah J. Galus , Esq.**
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, AZ 85260
480-444-0020
Fax: 480-444-0028
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, AZ 85260
480-444-0020
Fax: 480-444-0028
Email: kanderson@adflegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
Wadleigh, Starr & Peters, PLLC
95 Market Street
Manchester, NH 03101
(603) 669-4140
Fax: (603) 669-6018
Email:
mtierney@wadleighlaw.com
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
Alliance Defending Freedom
15100 North 90th Street
Scottsdale, AZ 85260
(480) 444-0020
Fax: (480) 444-0028
Email: rtucker@adflegal.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

JA.002

**Plaintiff**

**A. G.**
*by and through their parents and
natural guardians, Chris and
Bethany Goodwin*

represented by **David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremiah J. Galus , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**M. G.**
*by and through their parents and
natural guardians, Chris and
Bethany Goodwin*

represented by **David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)

JA.003

*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremiah J. Galus , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Christopher Goodwin**          represented by   **David A. Cortman , Esq.**
*individually*                                    (See above for address)
                                                  *ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

JA.004

**Jeremiah J. Galus , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Bethany Goodwin**
*individually*

represented by **David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremiah J. Galus , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**

JA.005

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**T. S.**
*by and through their parents and natural guardians, Nathaniel and Dawna Slarve*
*TERMINATED: 06/21/2024*

represented by **David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)

JA.006

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**K. S.**
*by and through their parents and natural guardians, Nathaniel and Dawna Slarve*
*TERMINATED: 06/21/2024*

represented by **David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nathaniel Slarve**
*individually*
*TERMINATED: 06/21/2024*

represented by **David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

JA.007

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dawna Slarve**                    represented by   **David A. Cortman , Esq.**
*individually*                                      (See above for address)
*TERMINATED: 06/21/2024*                            *ATTORNEY TO BE NOTICED*

**Gretchen M. Wade , Esq.**
(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael J. Tierney , Esq.**

JA.008

(See above for address)
*TERMINATED: 05/05/2026*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**O. P.**
*by and through his father and
natural guardian Nathan
Partington*
*as Guardian for*
Nathan Partington

represented by **David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Nathan Partington**
*individually*

represented by **David A. Cortman , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jacob E. Reed , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katherine L. Anderson , Esq.**
(See above for address)
*PRO HAC VICE*

JA.009

*ATTORNEY TO BE NOTICED*

**Ryan J. Tucker , Esq.**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Heather Bouchey**<br>*in her official capacity as Interim Secretary of the Vermont Agency of Education*<br>*TERMINATED: 09/30/2025* | represented by | **Debbie H. Stevens , Esq.**<br>Office of the Attorney General<br>109 State Street<br>Montpelier, VT 05609<br>802-595-3717<br>Email:<br>debbie.stevens@vermont.gov<br>*ATTORNEY TO BE NOTICED* |

**Jonathan T. Rose , Esq.**
Office of the Attorney General
109 State Street
Montpelier, VT 05609
802-793-1646
Email: jonathan.rose@vermont.gov
*ATTORNEY TO BE NOTICED*

**Kate T. Gallagher**
Office of the Attorney General
109 State Street
Montpelier, VT 05609-1001
802-828-1300
Email:
kate.gallagher@vermont.gov
*TERMINATED: 02/23/2024*

**Patrick T. Gaudet , Esq.**
Office of the Vermont Attorney
General
HC 2 North
109 State Street
Montpelier, VT 05609-1001

JA.010

802-828-3178
Email:
patrick.gaudet@vermont.gov
*TERMINATED: 05/20/2026*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jennifer Deck Samuelson**                    represented by    **Debbie H. Stevens , Esq.**
*in her official capacity as Chair of*                          (See above for address)
*the Vermont State Board of*                                    *ATTORNEY TO BE NOTICED*
*Education*

                                                               **Jonathan T. Rose , Esq.**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Kate T. Gallagher**
                                                               (See above for address)
                                                               *TERMINATED: 02/23/2024*

                                                               **Patrick T. Gaudet , Esq.**
                                                               (See above for address)
                                                               *TERMINATED: 05/20/2026*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Samuel B. Stratton , Esq.**
                                                               Office of the Vermont Attorney
                                                               General
                                                               109 State Street
                                                               Montpelier, VT 05609
                                                               781-507-3019
                                                               Email: sam.stratton@vermont.gov
                                                               *ATTORNEY TO BE NOTICED*

**Defendant**

**Christine Bourne**                           represented by    **Pietro J. Lynn , Esq.**
*in her official capacity as Windsor*                           Lynn, Lynn, Blackman &
*Southeast Supervisory Union*                                   Manitsky, P.C.
*Superintendent*                                               76 St. Paul Street, Suite 400
*TERMINATED: 01/05/2026*                                        Burlington, VT 05401
                                                               (802) 860-1500
                                                               Fax: (802) 860-1580
                                                               Email: plynn@lynnlawvt.com

JA.011

*ATTORNEY TO BE NOTICED*

**Sean Toohey , Esq.**
Lynn, Lynn, Blackman &
Manitsky, P.C.
76 St. Paul Street, Suite 400
Burlington, VT 05401
(802) 860-1500
Fax: (802) 860-1580
Email: stoohey@lynnlawvt.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| **Hartland School Board** *TERMINATED: 01/05/2026* | represented by | **Pietro J. Lynn , Esq.** (See above for address) *ATTORNEY TO BE NOTICED* |
|---|---|---|
| | | **Sean Toohey , Esq.** (See above for address) *ATTORNEY TO BE NOTICED* |

**Defendant**

| **Randall Gawel** *in his official capacity as Orange East Supervisory Union Superintendent* *TERMINATED: 01/05/2026* | represented by | **Pietro J. Lynn , Esq.** (See above for address) *ATTORNEY TO BE NOTICED* |
|---|---|---|
| | | **Sean Toohey , Esq.** (See above for address) *ATTORNEY TO BE NOTICED* |

**Defendant**

| **Waits River Valley (Unified #36 Elementary) School Board** | represented by | **Pietro J. Lynn , Esq.** (See above for address) *ATTORNEY TO BE NOTICED* |
|---|---|---|
| | | **Sean Toohey , Esq.** (See above for address) *ATTORNEY TO BE NOTICED* |

**Defendant**

| **Jay Nichols** *in his official capacity as the Executive Director of The Vermont* | represented by | **Jane H. Torcia , Esq.** Gordon Rees Scully Mansukhani Suite 1700 |
|---|---|---|

JA.012

*Principals' Association*
*TERMINATED: 04/29/2026*

One Financial Plaza
755 Main Street
Hartford, CT 06103
860-780-5717
Email: jtorcia@grsm.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Steven J. Zakrzewski , Esq.**
Gordon & Rees LLP
Suite 1700
One Financial Plaza, 755 Main
Street
Hartford, CT 06103
860-494-7511
Email: szakrzewski@grsm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Zoie Saunders**
*in her official capacity as Interim Secretary of the Vermont Agency of Education*

represented by **Debbie H. Stevens , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jonathan T. Rose , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kate T. Gallagher**
(See above for address)

**Patrick T. Gaudet , Esq.**
(See above for address)
*TERMINATED: 05/20/2026*
*ATTORNEY TO BE NOTICED*

**Samuel B. Stratton , Esq.**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|

JA.013

| | | |
|---|---|---|
| 11/21/2023 | 1 | COMPLAINT against Heather Bouchey, Christine Bourne, Randall Gawel, Hartland School Board, Jay Nichols, Jennifer Deck Samuelson, Waits River Valley (Unified #36 Elementary) School Board filed by T. S., Christopher Goodwin, Dawna Slarve, Mid Vermont Christian School, K. S., A. G., Bethany Goodwin, Nathaniel Slarve, M. G.. Summons issued. LR 73 Forms issued. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Civil Cover Sheet)(drg) (Entered: 11/21/2023) |
| 11/21/2023 | 2 | CORPORATE DISCLOSURE STATEMENT pursuant to Local Rule 7.1(a) by Mid Vermont Christian School (drg) (Entered: 11/21/2023) |
| 11/21/2023 | 3 | MOTION for Appearance Pro Hac Vice of Katherine L. Anderson, Esq. filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Declaration of Katherine Anderson, # 2 Certificates of Good Standing)(jh) (Entered: 11/22/2023) |
| 11/21/2023 | 4 | MOTION for Appearance Pro Hac Vice of Jacob E. Reed, Esq. filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Declaration of Jacob Reed (Unsigned), # 2 Certificate of Good Standing)(jh) (Entered: 11/22/2023) |
| 11/21/2023 | 5 | MOTION for Appearance Pro Hac Vice of Ryan Tucker, Esq. filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Declaration of Ryan Tucker, # 2 Certificates of Good Standing)(jh) (Entered: 11/22/2023) |
| 11/28/2023 | 6 | ORDER granting 3 Motion for Admission Pro Hac Vice of Katherine L. Anderson, Esq.; granting 4 Motion for Admission Pro Hac Vice of Jacob E. Reed, Esq.; granting 5 Motion for Admission Pro Hac Vice of Ryan Tucker, Esq. Signed by Judge Kevin J. Doyle on 11/28/2023. (This is a text-only Order.) (drg) (Entered: 11/28/2023) |
| 12/12/2023 | 7 | WAIVER OF SERVICE Returned Executed: Heather Bouchey waiver sent on 11/27/2023, answer due 1/26/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/12/2023 | 8 | WAIVER OF SERVICE Returned Executed: Jennifer Deck Samuelson waiver sent on 11/27/2023, answer due 1/26/2024.(Tierney, Michael) (Entered: 12/12/2023) |

JA.014

| | | |
|---|---|---|
| 12/12/2023 | 9 | WAIVER OF SERVICE Returned Executed: Waits River Valley (Unified #36 Elementary) School Board waiver sent on 11/30/2023, answer due 1/29/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/12/2023 | 10 | WAIVER OF SERVICE Returned Executed: Randall Gawel waiver sent on 11/30/2023, answer due 1/29/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/12/2023 | 11 | WAIVER OF SERVICE Returned Executed: Hartland School Board waiver sent on 11/30/2023, answer due 1/29/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/12/2023 | 12 | WAIVER OF SERVICE Returned Executed: Christine Bourne waiver sent on 11/30/2023, answer due 1/29/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/12/2023 | 13 | WAIVER OF SERVICE Returned Executed: Jay Nichols waiver sent on 11/30/2023, answer due 1/29/2024.(Tierney, Michael) (Entered: 12/12/2023) |
| 12/19/2023 | 14 | MOTION for Preliminary Injunction filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Memorandum in Support, # 2 Index of Exhibits, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Declaration of Vicky Fogg, # 16 Declaration of Nathaniel and Dawna Slarve, # 17 Declaration of Christopher Goodwin, # 18 Declaration of Bethany Goodwin)(Tucker, Ryan) (Entered: 12/19/2023) |
| 12/19/2023 | 15 | ORDER: On or before 12/28/2023, Plaintiffs shall return executed their Magistrate Judge Assignment Form in accordance with Local Rule 73(c). Signed by Judge Kevin J. Doyle on 12/19/2023. (drg) (Entered: 12/19/2023) |
| 12/20/2023 | 16 | CONSENT to Direct Assignment by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Tucker, Ryan) (Entered: 12/20/2023) |
| 12/29/2023 | 17 | NOTICE OF APPEARANCE by Kate T. Gallagher on behalf of Heather Bouchey, Jennifer Deck Samuelson.(Gallagher, Kate) (Entered: 12/29/2023) |
| 12/29/2023 | 18 | CONSENT to Direct Assignment by Heather Bouchey, Jennifer Deck Samuelson (Gallagher, Kate) (Entered: 12/29/2023) |

JA.015

| | | |
|---|---|---|
| 12/30/2023 | 19 | MOTION for Extension of Time to File Response/Reply as to 14 MOTION for Preliminary Injunction filed by Heather Bouchey, Jennifer Deck Samuelson(Gallagher, Kate) (Entered: 12/30/2023) |
| 01/02/2024 | 20 | NOTICE OF APPEARANCE by Pietro J. Lynn, Esq on behalf of Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board.(Lynn, Pietro) (Entered: 01/02/2024) |
| 01/02/2024 | 21 | NOTICE OF APPEARANCE by Sean Toohey, Esq on behalf of Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board.(Toohey, Sean) (Entered: 01/02/2024) |
| 01/02/2024 | 22 | OBJECTION to Direct Assignment by Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board (Lynn, Pietro) (Entered: 01/02/2024) |
| 01/02/2024 | 23 | CASE Reassigned to Chief Judge Geoffrey W. Crawford. Judge Kevin J. Doyle no longer assigned to the case. (drg) (Entered: 01/02/2024) |
| 01/02/2024 | 24 | RESPONSE to 19 MOTION for Extension of Time to File Response/Reply as to 14 MOTION for Preliminary Injunction filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve. (Tucker, Ryan) (Entered: 01/02/2024) |
| 01/04/2024 | 25 | STIPULATED MOTION for Extension of Time to File Answer re 1 Complaint filed by Heather Bouchey, Jennifer Deck Samuelson(Gallagher, Kate) (Entered: 01/04/2024) |
| 01/29/2024 | 26 | RESPONSE in Opposition re 14 MOTION for Preliminary Injunction filed by Heather Bouchey, Jennifer Deck Samuelson. (Attachments: # 1 Declaration of Samuelson, # 2 Declaration of Bouchey, # 3 Exhibit A, # 4 Exhibit B)(Gallagher, Kate) (Entered: 01/29/2024) |
| 01/31/2024 | 27 | RESPONSE in Opposition re 14 MOTION for Preliminary Injunction filed by Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board. (Lynn, Pietro) (Entered: 01/31/2024) |

JA.016

| 01/31/2024 | 28 | MOTION to Dismiss Case for Lack of Jurisdiction filed by Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F) (Lynn, Pietro) Modified on 2/1/2024 to clarify attachments (sjl). (Entered: 01/31/2024) |
| --- | --- | --- |
| 01/31/2024 | 29 | NOTICE OF APPEARANCE by Steven J. Zakrzewski, Esq on behalf of Jay Nichols.(Zakrzewski, Steven) (Entered: 01/31/2024) |
| 01/31/2024 | 30 | MEMORANDUM in Opposition re: 14 MOTION for Preliminary Injunction by Jay Nichols (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Zakrzewski, Steven) (Attachment 5 replaced on 2/1/2024) (sjl). (Entered: 01/31/2024) |
| 02/01/2024 | 31 | ORDER granting 19 MOTION for Extension of Time to File Response/Reply as to 14 MOTION for Preliminary Injunction. Response due January 31, 2024; Reply due February 21,2024. Signed by Chief Judge Geoffrey W. Crawford on 2/1/2024. (This is a text-only Order.) (jal) (Entered: 02/01/2024) |
| 02/01/2024 | 32 | ORDER granting 25 MOTION for Extension of Time to Answer re 1 Complaint; Heather Bouchey and Jennifer Deck Samuelson answers due February 15, 2024. Signed by Chief Judge Geoffrey W. Crawford on 2/1/2024. (This is a text-only Order.) (jal) (Entered: 02/01/2024) |
| 02/01/2024 | 33 | NOTICE OF APPEARANCE by Patrick T. Gaudet, Esq on behalf of Heather Bouchey, Jennifer Deck Samuelson.(Gaudet, Patrick) (Entered: 02/01/2024) |
| 02/01/2024 | 34 | NOTICE OF DOCKET ENTRY CORRECTION re: 30 Memorandum in Opposition re: 14 Motion for Preliminary Injunction filed by Jay Nichols. Exhibit E has been replaced to correct illegible PDF headers. The corrected document is now attached to 30 and this entry. (sjl) (Entered: 02/01/2024) |
| 02/01/2024 | 35 | STIPULATED MOTION for Extension of Time to File Answer *Nunc Pro Tunc* re 1 Complaint filed by Jay Nichols(Zakrzewski, Steven) Modified on 2/2/2024 to clarify text (sjl). (Entered: 02/01/2024) |
| 02/02/2024 | 36 | ORDER granting 35 MOTION for Extension of Time to Answer re 1 Complaint; Jay Nichols answer due February 15, 2024. Signed by Chief Judge Geoffrey W. Crawford on 2/2/2024. (This is a text-only Order.) (jal) (Entered: 02/02/2024) |
| 02/06/2024 | 37 | MOTION for Extension of Time to File Response/Reply as to 28 MOTION to Dismiss Case for Lack of Jurisdiction *and to File a Single* |

JA.017

| | | |
|---|---|---|
| | | *20-Page Reply in Support of Motion for Preliminary Injunction* filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve(Reed, Jacob) (Entered: 02/06/2024) |
| 02/07/2024 | 38 | ORDER granting 37 MOTION for Extension of Time to File Response/Reply as to 28 MOTION to Dismiss Case for Lack of Jurisdiction and to File a Single 20-Page Reply in Support of Motion for Preliminary Injunction. The court will schedule a single hearing on the motions for preliminary injunction and to dismiss after briefing is complete on both motions. Signed by Chief Judge Geoffrey W. Crawford on 2/7/2024. (This is a text-only Order.) (jal) (Entered: 02/07/2024) |
| 02/15/2024 | 39 | MOTION to Dismiss Case for Lack of Jurisdiction filed by Heather Bouchey, Jennifer Deck Samuelson (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Gallagher, Kate) (Attachments 1-4 replaced on 2/16/2024) (sjl). (Entered: 02/15/2024) |
| 02/15/2024 | 40 | MOTION to Dismiss 1 Complaint filed by Jay Nichols (Zakrzewski, Steven) Modified on 2/16/2024 to clarify text and link entries (sjl). (Entered: 02/15/2024) |
| 02/16/2024 | 41 | NOTICE OF DOCKET ENTRY CORRECTION re: 39 MOTION to Dismiss Case for Lack of Jurisdiction filed by Heather Bouchey, Jennifer Deck Samuelson. Exhibits A-D have been replaced to correct illegible PDF headers. The corrected documents are now attached to 39 and this entry. (Attachments: # 1 Exhibit B, # 2 Exhibit C, # 3 Exhibit D) (sjl) (Entered: 02/16/2024) |
| 02/21/2024 | 42 | REPLY to Response to 14 MOTION for Preliminary Injunction filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Declaration of Vicky Fogg, # 5 Declaration of Christopher Goodwin) (Tucker, Ryan) (Entered: 02/21/2024) |
| 02/23/2024 | 43 | NOTICE of Attorney Substitution by Jonathan T. Rose, Esq as to Heather Bouchey, Jennifer Deck Samuelson(Rose, Jonathan) (Entered: 02/23/2024) |
| 03/04/2024 | 44 | NOTICE of Hearing re: 14 MOTION for Preliminary Injunction, 28 & 39 MOTION to Dismiss Case for Lack of Jurisdiction, and 40 MOTION to Dismiss 1 Complaint. Motion Hearing set for 4/19/2024 at 9:30 AM in Burlington Courtroom 110 before Chief Judge Geoffrey W. Crawford. (eh) (Entered: 03/04/2024) |

JA.018

| | | |
|---|---|---|
| 03/15/2024 | 45 | RESPONSE in Opposition re 28 MOTION to Dismiss Case for Lack of Jurisdiction , 39 MOTION to Dismiss Case for Lack of Jurisdiction , 40 MOTION to Dismiss 1 Complaint filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Reed, Jacob) (Entered: 03/15/2024) |
| 03/28/2024 | 46 | STIPULATED MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Dismiss Case for Lack of Jurisdiction filed by Heather Bouchey, Jennifer Deck Samuelson(Rose, Jonathan) (Entered: 03/28/2024) |
| 03/29/2024 | 47 | REPLY to Response to 28 MOTION to Dismiss Case for Lack of Jurisdiction filed by Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board. (Lynn, Pietro) (Entered: 03/29/2024) |
| 03/29/2024 | 48 | ORDER granting 46 MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Dismiss Case for Lack of Jurisdiction. Time extended to April 5, 2024. Signed by Chief Judge Geoffrey W. Crawford on 3/29/2024. (This is a text-only Order.) (jal) (Entered: 03/29/2024) |
| 03/29/2024 | 49 | REPLY to Response to 40 MOTION to Dismiss 1 Complaint filed by Jay Nichols. (Zakrzewski, Steven) Modified on 4/1/2024 to clarify text (sjl). (Entered: 03/29/2024) |
| 04/05/2024 | 50 | REPLY to Response to 39 MOTION to Dismiss Case for Lack of Jurisdiction filed by Heather Bouchey, Jennifer Deck Samuelson. (Attachments: # 1 Index of Exhibits, # 2 Supplemental Declaration of Samuelson, # 3 Exhibit A, # 4 Supplemental Declaration of Bouchey, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit 1)(Rose, Jonathan) (Attachment 2 replaced to re-size document and docket text clarified on 4/9/2024) (eh). (Entered: 04/05/2024) |
| 04/19/2024 | 51 | MINUTE ENTRY for proceedings held before Chief Judge Geoffrey W. Crawford: Motion Hearing held on 4/19/2024 re 14 MOTION for Preliminary Injunction, 28 MOTION to Dismiss Case for Lack of Jurisdiction, 39 MOTION to Dismiss Case for Lack of Jurisdiction, and 40 MOTION to Dismiss 1 Complaint. R. Tucker, Esq., D. Cortman, Esq., J. Reed, Esq., and M. Tierney, Esq. present for plaintiffs. J. Rose, Esq. and P. Gaudet, Esq. present for defendants Heather Bouchey and Jennifer Deck Samuelson. P. Lynn, Esq. present for defendants Christine Bourne, Hartland School Board, Randall Gawel, and Waits River Valley (Unified #36 Elementary) School |

JA.019

| | | |
|---|---|---|
| | | Board. S. Zakrzewski, Esq. present for defendant Jay Nichols. Court makes inquiries and counsel make statements. ORDERED: 14 MOTION for Preliminary Injunction, 28 MOTION to Dismiss Case for Lack of Jurisdiction, 39 MOTION to Dismiss Case for Lack of Jurisdiction, and 40 MOTION to Dismiss 1 Complaint are taken under advisement. (Court Reporter: Johanna Masse) (eh) (Entered: 04/19/2024) |
| 04/23/2024 | 52 | NOTICE *of Request to Defendant Nichols* by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Exhibit 1) (Tucker, Ryan) (Entered: 04/23/2024) |
| 05/02/2024 | 53 | NOTICE *of Response to* 52 NOTICE of Request to Defendant Nichols by Jay Nichols. (Attachments: # 1 Exhibit 1) (Zakrzewski, Steven) Modified on 5/6/2024 to clarify text/link entries (sjl). (Entered: 05/02/2024) |
| 05/06/2024 | 54 | NOTICE *of Reply* re 53 by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Exhibit 1) (Tucker, Ryan) Modified on 5/6/2024 to link entries (sjl). (Entered: 05/06/2024) |
| 05/16/2024 | 55 | RESPONSE *Objection to Plaintiffs' Letter Request for Preliminary Injunction* re 54 NOTICE of Reply re 53 by Jay Nichols. (Zakrzewski, Steven) Modified on 5/16/2024 to clarify text (sjl). (Entered: 05/16/2024) |
| 05/28/2024 | 56 | TRANSCRIPT of Motions Hearing held on 4/19/2024 before Judge Geoffrey W. Crawford. Court Reporter/Transcriber Johanna Masse, telephone number 802-951-8102. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/21/2024. Redacted Transcript Deadline set for 7/1/2024. Release of Transcript Restriction set for 8/29/2024. (sjl) Modified on 5/28/2024 to correct text (sjl). (Entered: 05/28/2024) |
| 06/11/2024 | 57 | ORDER denying 14 Motion for Preliminary Injunction. The court will rule separately on the pending motions to dismiss. Signed by Chief Judge Geoffrey W. Crawford on 6/11/2024. (sjl) (Entered: 06/11/2024) |
| 06/21/2024 | 58 | NOTICE of Dismissal *of Plaintiffs T.S., K.S., Nathaniel Slarve, and Dawna Slarve* by K. S., T. S., Dawna Slarve, Nathaniel Slarve (Attachments: # 1 Declaration of Dawna Slarve)(Tucker, Ryan) (Entered: 06/21/2024) |

JA.020

| | | |
|---|---|---|
| 06/21/2024 | 59 | NOTICE OF APPEAL as to 57 Order on 14 Motion for Preliminary Injunction by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School. (Filing fee $ 605 receipt number BVTDC-1937316) (Tucker, Ryan) (Entered: 06/21/2024) |
| 06/21/2024 | 60 | MOTION For Injunction Pending Appeal filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School (Attachments: # 1 Memorandum in Support, # 2 Declaration of Christopher Goodwin)(Tucker, Ryan) (Entered: 06/21/2024) |
| 06/24/2024 | 61 | ORDER: re 60 MOTION For Injunction Pending Appeal: Response due July 3, 2024; Reply due July 10, 2024. Signed by Chief Judge Geoffrey W. Crawford on 6/24/2024.(This is a text-only Order.) (jal) (Entered: 06/24/2024) |
| 06/24/2024 | 62 | NOTICE of Hearing re: 60 MOTION For Injunction Pending Appeal . Motion Hearing set for 7/12/2024 at 2:00 PM in Burlington Courtroom 110 before Chief Judge Geoffrey W. Crawford. (eh) (Entered: 06/24/2024) |
| 06/26/2024 | 63 | JOINT MOTION for Adjudication of Motion for Injunction Pending Appeal on the Papers filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School(Cortman, David) (Entered: 06/26/2024) |
| 06/27/2024 | 64 | ORDER granting 63 JOINT MOTION for Adjudication of Motion for Injunction Pending Appeal on the Papers. Signed by Chief Judge Geoffrey W. Crawford on 6/27/2024. (This is a text-only Order.) (jal) (Entered: 06/27/2024) |
| 07/02/2024 | 65 | RESPONSE in Opposition re 60 MOTION For Injunction Pending Appeal filed by Heather Bouchey, Christine Bourne, Randall Gawel, Hartland School Board, Waits River Valley (Unified #36 Elementary) School Board. (Lynn, Pietro) (Entered: 07/02/2024) |
| 07/03/2024 | 66 | MEMORANDUM in Opposition re: 60 MOTION For Injunction Pending Appeal by Jay Nichols (Zakrzewski, Steven) (Entered: 07/03/2024) |
| 07/10/2024 | 67 | REPLY to Response to 60 MOTION For Injunction Pending Appeal filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School, K. S., T. S., Dawna Slarve, Nathaniel Slarve. (Cortman, David) (Entered: 07/10/2024) |
| 07/15/2024 | 68 | ORDER: re 60 MOTION For Injunction Pending Appeal. The court will schedule a video hearing concerning the limited issue of Plaintiffs' |

JA.021

| | | |
|---|---|---|
| | | participation in co-educational activities. Signed by Chief Judge Geoffrey W. Crawford on 7/15/2024. (sjl) (Entered: 07/15/2024) |
| 07/17/2024 | 69 | TRANSMITTED Index on Appeal, Circuit No. 24-1704, re: 59 Notice of Appeal. (kac) (Entered: 07/17/2024) |
| 07/23/2024 | 70 | ORDER: The court requests that prior to the hearing on Monday, July 29, 2024, the plaintiff Mid-Vermont Christian Academy submit a list of the school competitions and activities sponsored by the Vermont Principals Association that it believes its students could join even if a transgender student from another school participates. Signed by Judge Geoffrey W. Crawford on 7/23/2024. (This is a text-only Order.) (jal) (Entered: 07/23/2024) |
| 07/23/2024 | 71 | NOTICE of Hearing re: 60 MOTION For Injunction Pending Appeal. Motion Hearing set for 7/29/2024 at 1:30 PM via videoconference before Judge Geoffrey W. Crawford. (eh) (Entered: 07/23/2024) |
| 07/26/2024 | 72 | NOTICE *of Request to Plaintiff* re Order (Doc. 70) by Jay Nichols (Attachments: # 1 Exhibit 1) (Zakrzewski, Steven) Modified on 7/26/2024 to clarify text/link entries (sjl). (Entered: 07/26/2024) |
| 07/26/2024 | 73 | MOTION for Appearance Pro Hac Vice of Jeremiah J. Galus (Filing fee $ 150 receipt number AVTDC-1952312) filed by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School (Attachments: # 1 Declaration of Jeremiah J. Galus, # 2 Certificate of Good Standing)(Cortman, David) (Entered: 07/26/2024) |
| 07/29/2024 | 74 | NOTICE *of Plaintiffs' List of Co-Educational Competitions and Activities* by A. G., M. G., Bethany Goodwin, Christopher Goodwin, Mid Vermont Christian School re 70 Order, (Cortman, David) (Entered: 07/29/2024) |
| 07/29/2024 | 75 | MINUTE ENTRY for proceedings held before District Judge Geoffrey W Crawford: Motion Hearing held on 7/29/2024 re 60 MOTION For Injunction Pending Appeal filed by Mid Vermont Christian School, Christopher Goodwin, A. G., Bethany Goodwin, M. G.. J. Reed, Esq. and G. Wade, Esq. present for plaintiffs. J. Rose, Esq. and P. Gaudet, Esq. present for defendants Heather Bouchey and Jennifer Deck Samuelson. P. Lynn, Esq. present for defendants Christine Bourne, Hartland School Board, Randall Gawel, and Waits River Valley (Unified #36 Elementary) School Board. S. Zakrzewski, Esq. present for defendant Jay Nichols. Court makes inquiries and counsel make statements re: 60 MOTION For Injunction Pending Appeal. Court makes findings. ORDERED: 73 MOTION for Appearance Pro Hac Vice of Jeremiah J. Galus is granted. Court to issue order re: 60 |

JA.022

| | | |
|---|---|---|
| | | MOTION For Injunction Pending Appeal (Court Reporter: Sunnie Donath) (eh) (Entered: 07/29/2024) |
| 07/30/2024 | 76 | ORDER denying 60 Motion For Injunction Pending Appeal for the reasons stated in 68 Order. Signed by District Judge Geoffrey W Crawford on 7/29/2024. (eh) (Entered: 07/30/2024) |
| 08/09/2024 | 77 | TRANSCRIPT filed for date(s) of 7/29/2024 before Judge Geoffrey W. Crawford as to 59 Notice of Appeal. Court Reporter/Transcriber Sunnie Donath, telephone number 802-747-3140. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER Redaction Request due 9/3/2024. Redacted Transcript Deadline set for 9/12/2024. Release of Transcript Restriction set for 11/12/2024. (sjl) (Entered: 08/09/2024) |
| 08/29/2024 | 78 | TRANSMITTED Supplemental Index on Appeal, Circuit No. 24-1704, re: 59 Notice of Appeal. (kac) (Entered: 08/29/2024) |
| 11/05/2024 | 79 | MOTION for Appearance Pro Hac Vice of Jane Torcia (Filing fee $ 150 receipt number AVTDC-1991454) filed by Jay Nichols (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Zakrzewski, Steven) Modified on 11/5/2024 to clarify attachments (sjl). (Entered: 11/05/2024) |
| 11/07/2024 | 80 | ORDER granting 79 MOTION for Admission Pro Hac Vice of Jane Torcia. Signed by District Judge Geoffrey W Crawford on 11/7/2024. (This is a text-only Order.) (jal) (Entered: 11/07/2024) |
| 11/15/2024 | 81 | NOTICE OF APPEARANCE by Jane H. Torcia, Esq on behalf of Jay Nichols.(Torcia, Jane) (Entered: 11/15/2024) |
| 04/23/2025 | 82 | NOTICE OF APPEARANCE by Debbie H. Stevens, Esq on behalf of Heather Bouchey, Jennifer Deck Samuelson.(Stevens, Debbie) (Entered: 04/23/2025) |
| 09/23/2025 | 83 | NOTICE of Hearing: Status Conference set for 11/5/2025 at 1:30 PM in Burlington Courtroom 110 before District Judge Geoffrey W. Crawford. (eh) (Entered: 09/23/2025) |
| 09/30/2025 | 84 | MANDATE of USCA, Circuit No. 24-1704, as to 59 Notice of Appeal; the order of the district court is REVERSED and case is REMANDED for further proceedings and with instructions. (Attachments: # 1 Opinion)(kac) Text clarified on 9/30/2025 (law). (Entered: 09/30/2025) |

JA.023

| | | |
|---|---|---|
| 10/06/2025 | 85 | REVISED NOTICE of Hearing: Status Conference set for 11/5/2025 at **1:00 PM** in Burlington Courtroom 110 before District Judge Geoffrey W. Crawford. (eh) (Entered: 10/06/2025) |
| 10/31/2025 | 86 | MOTION for Leave to File *Amended Verified Complaint* filed by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin (Attachments: # 1 Amended Verified Complaint - Redlined Version, # 2 Amended Verified Complaint, # 3 Exhibit 1, # 4 Exhibit 2, # 5 Exhibit 3, # 6 Exhibit 4, # 7 Exhibit 5, # 8 Exhibit 6, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Exhibit 14, # 17 Exhibit 15, # 18 Exhibit 16) (Cortman, David) (Attachment 12 replaced, attachments clarified, and Additional attachment(s) added on 11/3/2025: # 19 Index of Exhibits) (sjl). (Entered: 10/31/2025) |
| 11/03/2025 | 87 | NOTICE OF DOCKET ENTRY CORRECTION re: 86 MOTION for Leave to File *Amended Verified Complaint.* Exhibit 10 has been replaced to remove illegible PDF headers and is now attached to 86 and this entry. The Index of Exhibits having been received is now attached to 86 and this entry. (Attachments: # 1 Index of Exhibits) (sjl) (Entered: 11/03/2025) |
| 11/04/2025 | 88 | PROPOSED PRELIMINARY INJUNCTION. (sjl) (Entered: 11/04/2025) |
| 11/05/2025 | 89 | PRELIMINARY INJUNCTION ORDER. In accord with the decision of the Second Circuit in the appeal of the denial of a preliminary injunction in *Mid Vermont Christian School et al v. Saunders et al*, 151 F. 4th 86 (2d Cir. 2025), the court GRANTS Plaintiffs' motion for a preliminary injunction insofar as it seeks Mid Vermont's reinstatement to full membership in the Vermont Principals Association pending the resolution of this case. Signed by District Judge Geoffrey W. Crawford on 11/5/2025. (sjl) (Entered: 11/05/2025) |
| 11/05/2025 | 90 | MINUTE ENTRY for proceedings held before District Judge Geoffrey W. Crawford: Status Conference via video conference held on 11/5/2025. R. Tucker, Esq., G. Wade, Esq., J. Reed, Esq., and M. Tierney, Esq. present for Plaintiffs. J. Rose, Esq. and P. Gaudet, Esq. present for state defendants. S. Toohey, Esq. present for school defendants. S. Zakrzewski, Esq. present with Jay Nichols. Court makes inquiries about 88 Proposed Preliminary Injunction and trial timing; counsel make statements. Court makes findings. ORDERED: Court to docket Preliminary Injunction Order immediately. Parties to file a joint briefing schedule by 11/19/2025. Court to schedule a hearing on 86 MOTION for Leave to File *Amended Verified Complaint* in early |

JA.024

| | | |
|---|---|---|
| | | December. (Court Reporter: Johanna Masse) (eh) (Entered: 11/05/2025) |
| 11/14/2025 | 91 | RESPONSE in Opposition re 86 MOTION for Leave to File *Amended Verified Complaint* filed by Heather Bouchey, Jennifer Deck Samuelson. (Gaudet, Patrick) (Entered: 11/14/2025) |
| 11/14/2025 | 92 | MEMORANDUM in Opposition re: 86 MOTION for Leave to File *Amended Verified Complaint* by Jay Nichols (Zakrzewski, Steven) (Entered: 11/14/2025) |
| 11/14/2025 | 93 | RESPONSE in Opposition re 86 MOTION for Leave to File *Amended Verified Complaint* filed by Christine Bourne, Hartland School Board, Randall Gawel, Waits River Valley (Unified #36 Elementary) School Board. (Toohey, Sean) (Entered: 11/14/2025) |
| 11/18/2025 | 94 | NOTICE of Hearing re: 86 MOTION for Leave to File *Amended Verified Complaint*. Motion Hearing set for 12/17/2025 at 1:30 PM via video conference before District Judge Geoffrey W. Crawford. (eh) (Entered: 11/18/2025) |
| 11/19/2025 | 95 | JOINT STATUS REPORT by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin. (Cortman, David) (Entered: 11/19/2025) |
| 11/26/2025 | 96 | REPLY to Response to 86 MOTION for Leave to File *Amended Verified Complaint* filed by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin. (Cortman, David) (Entered: 11/26/2025) |
| 12/17/2025 | 97 | MINUTE ENTRY for proceedings held before District Judge Geoffrey W. Crawford: Motion Hearing held on 12/17/2025 re 86 MOTION for Leave to File *Amended Verified Complaint*. Present by video: Ryan Tucker and David Cortman, Esqs. for pltfs; Jonathan Rose and Patrick Gaudet, Esqs. for defts Jennifer Deck Samuelson and Zoie Saunders; Steven Zakrzewski, Esq. for deft Jay Nichols. Present in person: Sean Toohey, Esq. for defts Christine Bourne, Randall Gawel, Hartland School Board and Waits River School Board. Statements by counsel. ORDERED: motion taken under advisement. (Court Reporter: Johanna Masse) (law) (Entered: 12/17/2025) |
| 12/22/2025 | 98 | ORDER granting 86 MOTION for Leave to File Amended Verified Complaint. Signed by District Judge Geoffrey W. Crawford on 12/19/2025. (sjl) (Entered: 12/22/2025) |
| 01/05/2026 | 99 | MOTION to Dismiss for Failure to State a Claim/*Lack of Jurisdiction* filed by Waits River Valley (Unified #36 Elementary) School Board. |

JA.025

| | | |
|---|---|---|
| | | (Toohey, Sean) Text clarified on 1/5/2026 (law). (Entered: 01/05/2026) |
| 01/05/2026 | 100 | AMENDED VERIFIED COMPLAINT against Zoie Saunders, Jennifer Deck Samuelson, Waits River Valley (Unified #36 Elementary) School Board, Jay Nichols filed by Christopher Goodwin, Mid Vermont Christian School, A. G., Bethany Goodwin, M. G. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16)(Cortman, David) Defendants clarified on 1/5/2026 (law). (Entered: 01/05/2026) |
| 01/16/2026 | 101 | STIPULATED MOTION for Extension of Time to File Answer re 100 AMENDED VERIFIED COMPLAINT filed by Jennifer Deck Samuelson, Zoie Saunders (Gaudet, Patrick) Modified on 1/20/2026 to clarify event/text (sjl). (Entered: 01/16/2026) |
| 01/16/2026 | 102 | NOTICE OF APPEARANCE by Samuel B. Stratton, Esq on behalf of Jennifer Deck Samuelson, Zoie Saunders.(Stratton, Samuel) (Entered: 01/16/2026) |
| 01/20/2026 | 103 | ORDER granting 101 MOTION for Extension of Time to Answer re 1 Complaint; All Defendants' answers due March 9, 2026. Signed by District Judge Geoffrey W. Crawford on 1/20/2026. (This is a text-only Order.) (jal) (Entered: 01/20/2026) |
| 01/20/2026 | 104 | STIPULATED MOTION for Leave to Exceed Page Limit *for Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction* filed by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin, Nathan Partington, O. P. (Cortman, David) Filers clarified on 5/26/2026 (law). (Entered: 01/20/2026) |
| 01/20/2026 | 105 | MOTION for Preliminary Injunction *with Request for Oral Argument/Hearing* filed by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin, Nathan Partington, O. P. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Nathan Partington, # 3 Declaration of Vicky Fogg, # 4 Exhibit 1)(Cortman, David) Text clarified on 1/20/2026 (law). Filers clarified on 5/26/2026 (law). (Entered: 01/20/2026) |
| 01/21/2026 | 106 | ORDER granting 104 MOTION to Exceed Page Limit for Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction. Signed by District Judge Geoffrey W. Crawford on 1/21/2026. (This is a text-only Order.) (jal) (Entered: 01/21/2026) |

| | | |
|---|---|---|
| 01/22/2026 | 107 | WAIVER OF SERVICE Returned Executed: Jennifer Deck Samuelson waiver sent on 1/8/2026, answer due 3/9/2026.(Cortman, David) (Entered: 01/22/2026) |
| 01/22/2026 | 108 | WAIVER OF SERVICE Returned Executed: Zoie Saunders waiver sent on 1/8/2026, answer due 3/9/2026.(Cortman, David) (Entered: 01/22/2026) |
| 01/27/2026 | 109 | STIPULATED MOTION for Extension of Time to File Response/Reply as to 105 MOTION for Preliminary Injunction filed by Jennifer Deck Samuelson, Zoie Saunders(Stratton, Samuel) (Entered: 01/27/2026) |
| 01/27/2026 | 110 | ORDER granting 109 MOTION for Extension of Time to File Response as to 105 MOTION for Preliminary Injunction. Time extended to February 20, 2026. Signed by District Judge Geoffrey W. Crawford on 1/27/2026. (This is a text-only Order.) (jal) (Entered: 01/27/2026) |
| 02/02/2026 | 111 | STIPULATED MOTION for Extension of Time to File Response/Reply as to 99 MOTION to Dismiss for Failure to State a Claim/*Lack of Jurisdiction*, 105 MOTION for Preliminary Injunction filed by Waits River Valley (Unified #36 Elementary) School Board (Lynn, Pietro) (Entered: 02/02/2026) |
| 02/03/2026 | 112 | ORDER granting 111 MOTION for Extension of Time to File Response/Reply as to 99 MOTION to Dismiss for Failure to State a Claim/Lack of Jurisdiction and 105 MOTION for Preliminary Injunction. Time extended to February 11, 2026, to respond to 99 MOTION to Dismiss for Failure to State a Claim/Lack of Jurisdiction. Time extended to February 20, 2026, to respond to 105 MOTION for Preliminary Injunction. Signed by District Judge Geoffrey W. Crawford on 2/3/2026. (This is a text-only Order.) (jal) Text clarified on 2/3/2026 (law). (Entered: 02/03/2026) |
| 02/04/2026 | 113 | STIPULATED MOTION to Extend Deadline to Respond re 100 Amended Verified Complaint filed by Jay Nichols. (Zakrzewski, Steven) Text modified on 2/4/2026 (cdc). (Entered: 02/04/2026) |
| 02/04/2026 | 114 | ORDER granting 113 STIPULATED MOTION to Extend Deadline to Respond re 100 Amended Verified Complaint. Time extended to April 15, 2026. Signed by District Judge Geoffrey W. Crawford on 2/4/2026. (This is a text-only Order.) (jal) (Entered: 02/04/2026) |
| 02/05/2026 | 115 | NOTICE of Hearing: Status Conference re: potential consolidation pursuant to FRCP 65(a)(2) set for 2/10/2026 10:00 AM **via** |

JA.027

| | | |
|---|---|---|
| | | **videoconference** before District Judge Geoffrey W. Crawford.(law) (Entered: 02/05/2026) |
| 02/10/2026 | 116 | MINUTE ENTRY for proceedings held before District Judge Geoffrey W. Crawford: Status Conference held on 2/10/2026 by video conference. Jacob Reed and Ryan Tucker, Esqs. present for pltfs; Jonathan Rose and Samuel Stratton, Esqs. for deft Jennifer Deck Samuelson; Sean Toohey, Esq. for deft Waits River Valley (Unified #36 Elementary) School Board; and Steven Zakrzewski, Esq. for deft Jay Nichols. Court makes inquiries and statements by counsel re: potential consolidation pursuant to FRCP 65(a)(2) and scope of the record. Court to issue short written order. (recorded) (law) (Entered: 02/10/2026) |
| 02/10/2026 | 117 | ORDER: On February 10, 2026, the court held a status conference to discuss potential consolidation of the motion for preliminary injunction 105 with trial on the merits pursuant to F.R.Civ.P. 65(a)(2). Since neither plaintiffs nor the state defendants favored consolidation, the court will rule on the preliminary injunction and the pending motion to dismiss filed by the Waits River Valley school board 99 after briefing and a hearing. Signed by District Judge Geoffrey W. Crawford on 2/10/2026. (This is a text-only Order.)(jal) (Entered: 02/10/2026) |
| 02/11/2026 | 118 | RESPONSE in Opposition to 99 MOTION to Dismiss for Failure to State a Claim */Lack of Jurisdiction* filed by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin, Nathan Partington, O. P. (Cortman, David) Text clarified on 2/12/2026 (law). Filers clarified on 5/26/2026 (law). (Entered: 02/11/2026) |
| 02/17/2026 | 119 | STIPULATED MOTION for Leave to Exceed Page Limit *for Response in Opposition* re: 105 MOTION for Preliminary Injunction filed by Jennifer Deck Samuelson, Zoie Saunders.(Stratton, Samuel) Text clarified and link added on 2/17/2026 (law). (Entered: 02/17/2026) |
| 02/18/2026 | 120 | ORDER granting 119 MOTION to Exceed Page Limit for Response in Opposition re: 105 MOTION for Preliminary Injunction. Signed by District Judge Geoffrey W. Crawford on 2/18/2026. (This is a text-only Order.) (jal) (Entered: 02/18/2026) |
| 02/20/2026 | 121 | RESPONSE in Opposition re 105 MOTION for Preliminary Injunction filed by Waits River Valley (Unified #36 Elementary) School Board. (Toohey, Sean) (Entered: 02/20/2026) |
| 02/20/2026 | 122 | RESPONSE in Opposition re 105 MOTION for Preliminary Injunction filed by Jennifer Deck Samuelson, Zoie Saunders. (Stratton, Samuel) |

JA.028

| | | |
|---|---|---|
| | | (Entered: 02/20/2026) |
| 02/25/2026 | 123 | REPLY to Response to 99 MOTION to Dismiss for Failure to State a Claim/*Lack of Jurisdiction* filed by Waits River Valley (Unified #36 Elementary) School Board. (Toohey, Sean) (Entered: 02/25/2026) |
| 03/06/2026 | 124 | REPLY to State Defendants' Response to 105 MOTION for Preliminary Injunction filed by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin, Nathan Partington, O. P. (Cortman, David) Files clarified on 5/26/2026 (law). (Entered: 03/06/2026) |
| 03/06/2026 | 125 | REPLY to Defendant Waits River Valley School Board's Response to 105 MOTION for Preliminary Injunction filed by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin, Nathan Partington, O. P. (Cortman, David) Filers clarified on 5/26/2026 (law). (Entered: 03/06/2026) |
| 03/09/2026 | 126 | MOTION to Dismiss Case for Lack of Jurisdiction *and Failure to State a Claim of Official Capacity Claims in Amended Complaint* filed by Jennifer Deck Samuelson, Zoie Saunders.(Stratton, Samuel) Text clarified on 3/10/2026 (law). (Entered: 03/09/2026) |
| 03/09/2026 | 127 | MOTION to Dismiss for Failure to State a Claim *of Personal Capacity Claims in Amended Complaint* filed by Jennifer Deck Samuelson, Zoie Saunders. (Gaudet, Patrick) Text clarified on 3/10/2026 (law). (Entered: 03/09/2026) |
| 03/25/2026 | 128 | NOTICE of Hearing re: 99 MOTION to Dismiss for Failure to State a Claim/*Lack of Jurisdiction*, 127 MOTION to Dismiss for Failure to State a Claim *of Personal Capacity Claims in Amended Complaint*, 126 MOTION to Dismiss Case for Lack of Jurisdiction *and Failure to State a Claim of Official Capacity Claims in Amended Complaint*, 105 MOTION for Preliminary Injunction . Motion Hearing set for 5/8/2026 at 01:30 PM in Burlington Courtroom 110 before District Judge Geoffrey W. Crawford.(law) (Entered: 03/25/2026) |
| 04/08/2026 | 129 | RESPONSE in Opposition re 126 MOTION to Dismiss Case for Lack of Jurisdiction *and Failure to State a Claim of Official Capacity Claims in Amended Complaint* filed by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin, Nathan Partington, O. P. (Cortman, David) Filers clarified on 5/26/2026 (law). (Entered: 04/08/2026) |
| 04/08/2026 | 130 | RESPONSE in Opposition re 127 MOTION to Dismiss for Failure to State a Claim *of Personal Capacity Claims in Amended Complaint* |

JA.029

| | | |
|---|---|---|
| | | filed by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin, Nathan Partington, O. P. (Cortman, David) Filers clarified on 5/26/2026 (law). (Entered: 04/08/2026) |
| 04/16/2026 | 131 | TRANSCRIPT of Motion for Leave to File Amended Verified Complaint hearing held on December 17, 2025, before Judge Geoffrey W. Crawford. Court Reporter/Transcriber Johanna Masse, telephone number (802) 951-8102. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/11/2026. Redacted Transcript Deadline set for 5/21/2026. Release of Transcript Restriction set for 7/20/2026. (law) (Entered: 04/16/2026) |
| 04/21/2026 | 132 | ORDER: re 86 MOTION for Leave to File Amended Verified Complaint -- In preparation for the hearing on motion for Preliminary Injunction scheduled for May 8, 2026, the court requests that the state defendants provide a witness able to testify concerning the reasons for disqualification of independent schools on the list of ineligible independent schools dated September 25, 2025, and submitted as Doc. 86-13 at p. 35. The court also has general questions about the requirements for qualification as a therapeutic approved independent school and an independent school meeting education quality standards. Both are categories of independent schools in Section 21 of Act 73. Signed by District Judge Geoffrey W. Crawford on 4/21/2026. (This is a text-only Order.) (jal) (Entered: 04/21/2026) |
| 04/22/2026 | 133 | REPLY to Response to 126 MOTION to Dismiss Case for Lack of Jurisdiction *and Failure to State a Claim of Official Capacity Claims in Amended Complaint* filed by Zoie Saunders. (Stratton, Samuel) (Entered: 04/22/2026) |
| 04/22/2026 | 134 | REPLY to Response to 127 MOTION to Dismiss for Failure to State a Claim *of Personal Capacity Claims in Amended Complaint* filed by Zoie Saunders. (Gaudet, Patrick) (Entered: 04/22/2026) |
| 04/28/2026 | 135 | NOTICE of Dismissal *of Claims against Jay Nichols with prejudice* by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin.(Cortman, David) Text clarified on 4/29/2026 (law). (Entered: 04/28/2026) |
| 04/28/2026 | 136 | MOTION to Clarify re 132 Order filed by Jennifer Deck Samuelson, Zoie Saunders.(Stratton, Samuel) (Entered: 04/28/2026) |
| 04/29/2026 | 137 | ORDER on 136 Motion to Clarify re: 132 Order. Signed by District Judge Geoffrey W. Crawford on 4/29/2026. (lhg) (Entered: |

JA.030

| | | 04/29/2026) |
|---|---|---|
| 04/29/2026 | 138 | STIPULATION of Dismissal With Prejudice *of Defendant Jay Nichols* by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin (Cortman, David) (Entered: 04/29/2026) |
| 05/05/2026 | 139 | NOTICE *of Withdrawal of Michael J. Tierney, Esq.* by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin. (Tierney, Michael) (Entered: 05/05/2026) |
| 05/05/2026 | 140 | NOTICE *of Withdrawal Gretchen M. Wade, Esq.* by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin (Wade, Gretchen) (Entered: 05/05/2026) |
| 05/07/2026 | 141 | NOTICE *of Supplemental Declarations* by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin, O. P., Nathan Partington re 105 MOTION for Preliminary Injunction (Attachments: # 1 Declaration of David Young, # 2 Declaration of Dr. Micah Hayre, # 3 Declaration of Robert Congdon, Jr., # 4 Declaration of Brandon Damaska, # 5 Exhibit 1, # 6 Exhibit 2, # 7 Exhibit 3, # 8 Exhibit 4, # 9 Exhibit 5, # 10 Exhibit 6, # 11 Exhibit 7, # 12 Exhibit 8, # 13 Declaration of David Evans, # 14 Exhibit 1)(Cortman, David) (Additional attachment(s) added on 5/14/2026: # 15 Index of Exhibits) (law). Filers clarified on 5/26/2026 (law). (Entered: 05/07/2026) |
| 05/08/2026 | 142 | MINUTE ENTRY for proceedings held before District Judge Geoffrey W. Crawford: Motion Hearing held on 5/8/2026 re 99 MOTION to Dismiss for Failure to State a Claim/*Lack of Jurisdiction*, 105 MOTION for Preliminary Injunction, 126 MOTION to Dismiss Case for Lack of Jurisdiction *and Failure to State a Claim of Official Capacity Claims in Amended Complaint*, 127 MOTION to Dismiss for Failure to State a Claim *of Personal Capacity Claims in Amended Complaint*. Attys David Cortman, Jacob Reed, and Ryan Tucker present for pltfs; Attys Jonathan Rose and Samuel Stratton present for defts Jennifer Deck Samuelson and Zoie Saunders; and Atty Sean Toohey present for deft Waits River Valley School Board. Andrew Prowton, sworn and examined, on behalf of defts Jennifer Deck Samuelson and Zoie Saunders. Court's Exhibit 1 and Deft's Jennifer Deck Samuelson and Zoie Saunders Exhibit A were offered and marked. Statements by counsel re: pending motions. ORDERED: motions taken under advisement. (Court Reporter: Sunnie Donath) (lhg) (Entered: 05/11/2026) |
| 05/12/2026 | 143 | ORDER denying 105 Motion for Preliminary Injunction. Signed by District Judge Geoffrey W. Crawford on 5/12/2026. (law) (Additional |

JA.031

| | | |
|---|---|---|
| | | attachment(s) added on 5/13/2026: # 1 Court's Exhibit 1, # 2 State Defendants' Exhibit A) (law). (Entered: 05/12/2026) |
| 05/13/2026 | 144 | NOTICE OF DOCKET ENTRY UPDATE re: 143 Order on 105 Motion for Preliminary Injunction. Court's Exhibit 1 and State Defendants' Exhibit A have been added and are now attached to 143 , as well as this entry. (Attachments: # 1 State Defendants' Exhibit A) (law) (Entered: 05/13/2026) |
| 05/14/2026 | 145 | NOTICE OF DOCKET ENTRY CORRECTION re: 141 Notice of Supplemental Declarations to 105 MOTION for Preliminary Injunction filed by Mid Vermont Christian School, Christopher Goodwin, A. G., Bethany Goodwin, M. G. The required Index of Exhibits was not included at the time of filing. The index is now attached to 141 and this entry. (law) (Entered: 05/14/2026) |
| 05/20/2026 | 146 | NOTICE OF APPEAL as to 143 Order on 10 Motion for Preliminary Injunction by Mid Vermont Christian School, A. G., M. G., Christopher Goodwin, Bethany Goodwin, O. P., Nathan Partington. (Filing fee $ 605 receipt number AVTDC-2223504) (Cortman, David). Filers added on 5/26/2026 (law). (Entered: 05/20/2026) |
| 05/20/2026 | 147 | NOTICE of Withdrawal filed by Jennifer Deck Samuelson, Zoie Saunders.(Gaudet, Patrick) Text clarified on 5/21/2026 (law). (Entered: 05/20/2026) |
| 05/26/2026 | 148 | TRANSCRIPT filed for date(s) of May 8, 2026 before Judge Geoffrey W. Crawford as to 146 Notice of Appeal. Court Reporter/Transcriber Sunnie Donath, telephone number (802) 747-3140. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/22/2026. Redacted Transcript Deadline set for 6/29/2026. Release of Transcript Restriction set for 8/27/2026. (law) (Entered: 05/26/2026) |
| 06/02/2026 | 149 | TRANSMITTED Index on Appeal, Circuit No. 26-1416, re: 146 Notice of Appeal, (Attachments: # 1 Docket Sheet, # 2 Clerk's Certification)(kac) (Entered: 06/02/2026) |

**PACER Service Center**

**Transaction Receipt**

06/17/2026 15:30:51

JA.032

# EXHIBIT 1

JA.033



**LEADERSHIP | SUPPORT | OVERSIGHT**
(802) 828-1130 | education.vermont.gov

# MEMORANDUM

**TO:**       Vermont State Board of Education
**FROM:**   Daniel M. French, Ed.D.
**SUBJECT:** Recommendation for Conditional Approval of Mid Vermont Christian
              School and United Christian Academy
**DATE:**   February 1, 2023

I write to you to recommend conditional approval for two independent schools before you: Mid Vermont Christian School and United Christian Academy.

## Background

The Agency's Independent School team recommended approval of Mid Vermont Christian School and United Christian Academy because the review team found the school to meet all requirements of Rule 2200. Since the completion of the Site Review reports by that team, the schools were asked to complete the "Addendum for Independent School Applications – 2022", which includes 4 assurances that must be signed by the Head of School to affirm that the school meets four new sections of Rule 2200 that went into effect in May 2022. The first attestation on the addendum is: "The school complies with the Vermont Public Accommodations Act (Title 9 Vermont Statutes Annotated, Chapter 139) in all aspects of the school's admissions and operations."

Mid Vermont Christian School and United Christian Academy submitted amended addenda. The text of these addenda is as follows:

### Mid Vermont Christian School

> "The Mid Vermont Christian School is signing this form with the understanding that it must be read consistent with existing law and the U.S. and Vermont Constitutions. As a religious organization, the school has a statutory and constitutional right to make decisions based on its religious beliefs, including hiring and disciplining employees, associating with others, and in its admissions, conduct and operations policies and procedures. By signing this form, the Mid Vermont Christian School does not waive any such rights. To the extent Rule 2200's requirements conflict with any of the school's beliefs, including on marriage and sexuality, the school has not included that language in its handbook or online, nor can it affirm that particular aspect of the Vermont Public Accommodations Act."

**United Christian Academy**

"By signing below, we hereby affirm that we are the authorized officers/administrator of the applying independent school and we are signing this Addendum with the understanding that it must be read consistent with existing law, U.S. and State of Vermont Constitutions. As a Christian-based school we have a statutory and constitutional right to make decisions based on our religious beliefs, including those pertaining to marriage and sexuality. By signing below United Christian Academy does not waive any such rights. We believe that we have substantially complied with the requirements for approved independent schools. If there are any concerns, please contact the undersigned."

The Vermont Public Accommodations Act prohibits a school (if the school is a "place of public accommodation") from making admissions decisions that discriminate on the basis of protected class status. Protected classes are: race, creed, color, national origin, marital status, sex, sexual orientation, and gender identity. See 9 V.S.A. § 4502(a).

Though the schools' statements differ, both decline to provide assurances that the schools will comply with the Vermont Public Accommodations Act. In particular, both decline to provide assurance that they will comply with the Act's protection against discrimination on the basis of sexual orientation. It is not clear if the schools are also declining to provide assurance that they will comply with the Act's protection against marital-status discrimination. Mid Vermont Christian School's statement indicates that its handbook and website may not be consistent with the Act and suggests that it may not follow the Act "in its admissions, conduct and operations policies and procedures." United Christian Academy's statement is less clear as to the extent to which it intends to comply with the Act.

## Recommendation

It is my recommendation to the State Board Independent School Approval Committee that you conditionally approve these schools, subject to the condition that, by the March SBE meeting, the schools come into compliance with the requirements of State Board of Education Rule 2226.6, which requires that an applicant make a "demonstration that the school substantially complies with all statutory requirements for approved independent schools, with documentation of . . . [a]n assurance, signed by the Head of School, that the school complies with the Vermont Public Accommodations Act in all aspects of the school's admissions and operations." If either of the schools does not provide such an assurance by the deadline, the State Board would make a finding that the condition has not been met, and the school would not be approved. Based on AOE's research, this option is consistent with how other independent schools seeking State Board approval have been treated, as conditional approval has been granted to other independent schools that failed to meet a limited number of the requirements for approval.

VERMONT
AGENCY OF EDUCATION

Plaintiffs' Mot. for Prelim. Inj. Ex. 1,  Page 2 of 2   JA.035



**VERMONT**
**STATE BOARD OF EDUCATION**

1 National Life Drive, Davis 5, Montpelier, VT 05620-2501
(p) 802-828-1130 | (f) 802-828-6430 | education.vermont.gov

---

**State Board of Education**
**Independent School Approval Review Committee**

### Draft Meeting Minutes

Meeting Place: Virtual Teams Meeting/Video/Teleconference
Call in #: 1-802-828-7667
Conference ID: 794 189 100#

Date: February 1, 2023

## Present

**State Board of Education (SBE) Subcommittee Members:** Tom Lovett, Jenna O'Farrell, Patrick Brown and Lyle Jepson

Agency of Education (AOE): Maureen Gaidys, Pat Pallas Gray, Deborah Ormsby, Cassandra Ryan, Emily Simmons, Suzanne Sprague, Josh Souliere

Others: Donielle Albrecht, Jaime Kraybill, Megan Durling, Nathan Bradshaw, Vicky Fogg, Phil Lee, Kelly Boelens

## Call to Order/Roll Call/Amendments to the Agenda

Tom Lovett called the meeting to order at 1:01 p.m. and called roll. Tom moved to change the order of the agenda to include: Approval of Minutes, Public to be Heard, East Burke School, Champlain Valley Christian School, The Mill School, Executive Session, United Christian Academy, Mid Vermont Christian School, Public to be Heard, Adjournment. Jenna O'Farrell seconded the change to the order of the agenda, which passed unanimously.

## Approve Draft Meeting Minutes from January 4, 2023 Meeting

Jenna O'Farrell made a motion to approve the minutes from the January 4th, 2023 meeting. Patrick Brown seconded the motion, which passed unanimously.

**Public to be Heard –** No public chose to be heard.

## Independent School Approvals

East Burke School, East Burke, Vermont

Josh Souliere reported on behalf of AOE staff. A second site review was conducted to specifically address issues found in the first review relating to financial capacity. The second visit pointed out that deficiencies had been addressed with technical assistance from the

Agency of Education. Based upon the report, the Secretary recommends a one-year renewal. The school serves grades 8-12. Enrollment started at 12 for 2022-2023. There are two full-time staff members. In addition, they have a visiting artist and counselor. A part-time administrative assistant has very recently been hired.

Nathan Bradshaw, from East Burke School, pointed out that enrollment is currently 11. It is a school of choice for students with a maximum enrollment of 18. Application for enrollment is in narrative form. Staff discuss the application with the parent/guardian and student in an individual way. They have an enrollment policy under consideration at an upcoming School Board meeting. AOE staff were complementary of staff and the school.

The school has received a VEDA forgivable loan that has provided a financial bridge as the state has emerged from COVID. Student enrollment has rebounded. Projected future tuition revenues will sustain. A sliding scale wage agreement is in place with staff, which has resulted in a sustainable financial structure.

A motion was made by Lyle Jepson and seconded by Patrick Brown to recommend to the full State Board of Education renewal of general education for grades 8-12 for a period of two years through June 2025 for the East Burke School, East Burke, Vermont. This is a conditional approval with the understanding that the school will report their financial condition to the Agency of Education no later than May 1, 2024. The report of financial condition will outline financial projections for sustainability through June 2025. The motion passed unanimously.

<u>Champlain Valley Christian School, Vergennes, Vermont</u>

Josh Souliere explained that the school has met the standards required for a K-8 school and staff are recommending a five-year renewal. The addendum of assurances has been signed. There were 47 students enrolled at the time of the visit. They anticipate more than 50 in 2023-2024. They do not take any public tuition funding. All students are private pay. The school provides differentiated instruction. They do not have a special educator. Kelly Boelens provides additional support. SLP services are provided from LEAs for several students. There are five full-time and four part-time staff members. All are qualified in their area of instruction.

A motion was made by Lyle Jepson and seconded by Jenna O'Farrell to recommend to the full State Board of Education renewal of general education for ages K-8 for a period of five years for Champlain Valley Christian School, Vergennes, Vermont. The motion passed unanimously.

<u>The Mill School, Winooski, Vermont</u>

Josh Souliere indicated that the Agency recommends a two-year renewal based upon findings associated with compulsory attendance requirements and maintenance of a register of daily attendance of its enrolled students.

Donielle Albrecht from the Mill School responded to questioning concerning attendance and daily scheduling. Morning check-in was discussed. Several students travel from a distance to the school. An adult always checks in the students. The process has been updated recently with color coding indicating reasons for absence, tardiness, etc. She feels confident that they have remediated the issue of student monitoring of attendance.

State Board of Education
SBE IS School Approval Review Committee
February 1, 2023 – Draft Minutes

Page 2 of 5



Plaintiffs' Mot. for Prelim. Inj. Ex. 1,  Page 4 of 7    JA.037

Ready or Not Ready is how they determine availability to learn. There are multiple rooms where students can be "not available". Students rely upon transportation set up by the school. Each student has a customized plan of attendance. There is a new Director Position that provides administrative support that was not in place before.

A motion was made by Lyle Jepson and seconded by Patrick Brown to recommend to the full State Board of Education that the Mill School, Winooski, Vermont receive both a renewal of current general education and special education for three years through June of 2026. The motion passed unanimously.

## Motion to enter Executive Session

Tom Lovett moved that the Board finds that the premature general public knowledge of confidential attorney-client communications made for the purpose of providing professional legal services to the body would clearly place the Board at a substantial disadvantage. This motion was seconded by Lyle Jepson and passed unanimously.

At 2:03 p.m. Tom Lovett moved that the Board go into executive session to receive confidential attorney-client communications made for the purpose of providing professional legal services to the body pursuant to 1 V.S.A. Section 313(a)(1)(F). Jenna O'Farrell seconded the motion, which passed unanimously.

Tom Lovett made motion to exit executive session at 2:32 p.m. The motion was seconded by Lyle Jepson and passed unanimously. The Committee reconvened.

## Independent School Approvals

United Christian Academy, Newport, Vermont

Josh Souliere outlined the visit to United Christian Academy. The school is K–12 and provides differentiated instruction. The school substantially complies with the expectations of the rules. The AOE staff recommends a two-year approval.

Emily Simmons, AOE staff attorney, outlined a change in the Secretary's recommendation, which includes the condition that the school sign and submit the attestation that the school is in compliance with the Public Accommodations Act. The Secretary recommends that the school be given until March 15, 2023 to comply with this requirement in order to receive Initial Approval.

In response to questions, United Christian Academy staff explained that all students are private pay. Active shooter and shelter in place policies are in place. They are working on operationalizing these procedures based upon state recommendations. Currently there are 64 students  There are 21 staff, of which there are 11 full-time and 10 part-time.

A motion was made by Tom Lovett and seconded by Patrick Brown to recommend to the full State Board of Education that Initial Approval of general education for grades K-12 be approved for a period of five years through 2027 for the United Christian Academy, Newport, Vermont. The motion passed unanimously.

Tom Lovett moved and Lyle Jepson seconded the Secretary's recommendation that United Christian Academy be conditionally approved for an initial approval period of two years, subject to the condition that, by the March SBE meeting, the school comes into compliance with the

State Board of Education
SBE IS School Approval Review Committee
February 1, 2023 – Draft Minutes

Page 3 of 5



requirements of State Board of Education Rule 2226.6, which requires that an applicant make a "demonstration that the school substantially complies with all statutory requirements for approved independent schools, with documentation of . . . [a]n assurance, signed by the Head of School, that the school complies with the Vermont Public Accommodations Act in all aspects of the school's admissions and operations." If the school does not provide such an assurance by the deadline, the State Board would make a finding that the condition has not been met, and the school would not be approved. Based on AOE's research, this option is consistent with how other independent schools seeking State Board approval have been treated, as conditional approval has been granted to other independent schools that failed to meet a limited number of the requirements for approval. The motion passed unanimously.

A United Christian Academy staff member asked for clarification of "compliance with" the Public Accommodations Act. Emily Simmons read from the Secretary's recommendation. The memo was put in the chat.


<u>Mid Vermont Christian School, White River Jct., Vermont</u>

Josh Souliere outlined that the school meets the requirements for grades K-12. The Agency recommends a five-year renewal. The school is a member of the Association of Christian Schools International. There are 114 students Pre-K to 12. There are 14 full-time and 11 part-time instructors.

Tom Lovett indicated that this would also be conditional on the same signed assurance as outlined in the Secretary's memo.

Discussion took place regarding serving special needs students. Local LEAs continue to test students but do not have staff to support students. Therefore, the school has hired staff in collaboration with the LEA. Out of State students attend from neighboring New Hampshire. New Hampshire students are all private pay.

Tom Lovett moved and Lyle Jepson seconded the Secretary's recommendation that Mid Vermont Christian School be conditionally approved for a period of five years through 2027, subject to the condition that, by the March SBE meeting, the school comes into compliance with the requirements of State Board of Education Rule 2226.6, which requires that an applicant make a "demonstration that the school substantially complies with all statutory requirements for approved independent schools, with documentation of . . . [a]n assurance, signed by the Head of School, that the school complies with the Vermont Public Accommodations Act in all aspects of the school's admissions and operations." If the school does not provide such an assurance by the deadline, the State Board would make a finding that the condition has not been met, and the school would not be approved. Based on AOE's research, this option is consistent with how other independent schools seeking State Board approval have been treated, as conditional approval has been granted to other independent schools that failed to meet a limited number of the requirements for approval.  The motion passed unanimously.

It was recommended that the school follow up with staff at the Agency of Education with questions.

---



VERMONT
STATE BOARD OF EDUCATION

## Public to be Heard

Kelly Bushey, from Connected Circles, indicted that a student has been disenrolled from his public school because he cannot be successful there. She believes the approval process and timeline has pushed the student out. Ms. Bushey indicated that he is now a student drop out. Prior to the process, the student was enrolled 80% of the time. As of February 1st, she has not heard anything from the Agency of Education on her application for approval. She will submit written testimony to the AOE. An outline of AOE work indicates that Connected Circles application is still being reviewed by Agency staff and has not been moved to the Secretary of Education.

## Adjourn

Jenna O'Farrell moved to adjourn the meeting. Patrick Brown seconded the motion. The meeting adjourned at 3:15 p.m.

Minutes prepared by Lyle Jepson.



State Board of Education
SBE IS School Approval Review Committee
February 1, 2023 – Draft Minutes

Page 5 of 5

VERMONT
STATE BOARD OF EDUCATION

Plaintiffs' Mot. for Prelim. Inj. Ex. 1,  Page 7 of 7   JA.040

**Exhibit B**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MID VERMONT CHRISTIAN SCHOOL, on )
behalf of itself and its students and its students' )
parents; A.G. and M.G., by and through their )
parents and natural guardians, Chris and Bethany )
Goodwin; CHRISTOPHER GOODWIN, )
individually; BETHANY GOODWIN, individually; )       Civil Case No.: 2:23-cv-00652
T.S. and K.S., by and through their parents and )
natural guardians, Nathaniel and Dawna Slarve; )
NATHANIEL SLARVE, individually; and )
DAWNA SLARVE, individually; )
 )
           Plaintiffs, )
    v. )
 )
HEATHER BOUCHEY, in her official capacity as )
Interim Secretary of the Vermont Agency of )
Education; JENNIFER DECK SAMUELSON, in )
her official capacity as Chair of the Vermont State )
Board of Education; CHRISTINE BOURNE, in her )
official capacity as Windsor Southeast Supervisory )
Union Superintendent; HARTLAND SCHOOL )
BOARD; RANDALL GAWEL, in his official )
capacity as Orange East Supervisory Union )
Superintendent; WAITS RIVER VALLEY )
(UNIFIED #36 ELEMENTARY) SCHOOL )
BOARD; and JAY NICHOLS, in his official )
capacity as the Executive Director of The Vermont )
Principals' Association, )
 )
           Defendants. )

**DECLARATION OF RANDALL GAWEL**

1. My name is Randall Gawel.  I am over 18 years of age and have personal knowledge of the information set forth herein.

2. I am Superintendent of the Orange East Supervisory Union ("OESU").

1

JA.041

Doc ID: bcf179d87f52a5a2ee1c55fa79e981c0b9011840

3.  Pursuant to the Town Tuitioning Program, OESU mailed tuition payment for the 2023/2024 school year to Mid Vermont Christian School ("Mid Vermont") for students T.P. and D.P. in September 2023.

4.  After receipt of the check, Mid Vermont sent an e-mail to OESU indicating that Mid Vermont is not an Approved Independent School for purposes of the Town Tuitioning Program, and inquiring how OESU would like to proceed.  *See* Ex. D.

5.  OESU requested return of the check, pending guidance from the State regarding Mid Vermont's Town Tuitioning Program status.

6.  On January 4, 2024, the State sent a letter via e-mail to Mid Vermont, ccing OESU, stating that Mid Vermont is an Approved Independent School.  *See* Ex. F.

7.  After receiving the January 4, 2024 e-mail from the State, OESU sent back the tuition check to Mid Vermont for T.P. and D.P.'s 2023/2024 attendance.

I, Randall Gawel, hereby declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct.

Dated in  1/30/24  on this  30  day of January, 2024.

By:  *Randall Gawel*
Randall Gawel

2

JA.042
Doc ID: bcf179d87f52a5a2ee1c55fa79e981c0b9011840

**Dropbox Sign**                                                     Audit trail

| | |
|---|---|
| **Title** | Gawel Declaration |
| **File name** | Gawel Declaration- Ex. B.pdf |
| **Document ID** | bcf179d87f52a5a2ee1c55fa79e981c0b9011840 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

**SENT**
01 / 30 / 2024
11:34:06 UTC-5
Sent for signature to Randall Gawel (randall.gawel@oesu.org)
from kathryn.bean@oesu.org
IP: 71.173.72.110

**VIEWED**
01 / 30 / 2024
11:52:27 UTC-5
Viewed by Randall Gawel (randall.gawel@oesu.org)
IP: 64.223.247.90

**SIGNED**
01 / 30 / 2024
11:53:52 UTC-5
Signed by Randall Gawel (randall.gawel@oesu.org)
IP: 64.223.247.90

**COMPLETED**
01 / 30 / 2024
11:53:52 UTC-5
The document has been completed.

Powered by **Dropbox Sign**

JA.043

**Exhibit D**

**From:**
**Sent:**              Fwd: Mid Vermont Christian School Tuition
**To:**
**Subject:**

---------- Forwarded message ---------

-------------------------------------------------------------------------

From: **Vicky Fogg** <headofschool@mvcs.info>
Date: Tue, Oct 3, 2023 at 2:22 PM
Subject: Partington's tuition money
To: Lisa Thompson <lisa.thompson@oesu.org>
Cc: Lauren Sharkey <mvcsfinances@mvcs.info>, Vicky Fogg <headofschool@mvcs.info>

Dear Lisa,

Mid Vermont Christian School (MVCS) is in receipt of the tuition payment for **REDACTED**. Because MVCS was not granted "approved independent school" status by the AOE, we were surprised to receive these funds and have therefore set that money aside. We need clarity on MVCS's school status and how those funds should be handled.

1

JA.044

. Earlier this year, MVCS submitted an Addendum for Independent School Applications with an amendment that said in part that to the extent any of the state's requirements conflicted with the school's beliefs, including on marriage and sexuality, MVCS had not included that language in its handbook or online, nor could it affirm that particular aspect of the Vermont Public Accommodations Act. Specifically, because of MVCS's religious beliefs and exercise, it could not at that time, nor can it currently, affirm to comply with the Vermont Public Accommodations Act's prohibition on sexual orientation or gender identity discrimination in its admissions and operations. In response to MVCS's Addendum submission, the AOE denied our status as an "approved independent school" and instead confirmed we were a "recognized school" in August.

We are asking both the AOE and Waits River Valley School to confirm if MVCS is eligible to receive tuition funding. If not, what should we do with the funding we received?

Thank you,

Vicky Fogg

--

Vicky Fogg
Head of School



"May the God who gives endurance and encouragement give you the same attitude of mind toward each other that Christ Jesus had, so that with one mind and one voice you may glorify the God and Father of our Lord Jesus Christ." Romans 15:5-6

Tel: 802-295-6800   Fax: 802-295-3748
Headofschool@mvcs.info | www.mvcs.info
399 West Gilson Avenue

,

---------------------------------------------------------------------------------

**Randy Gawel, Superintendent**
*Pronouns: He/Him/His*
**Orange East Supervisory Union**
**(802) 222-5216**

*"Noli timere." Seamus Heaney*

2

JA.045

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| MID VERMONT CHRISTIAN SCHOOL, on behalf of itself and its students and its students' parents; A.G. and M.G., by and through their parents and natural guardians, Chris and Bethany Goodwin; CHRISTOPHER GOODWIN, individually; BETHANY GOODWIN, individually; T.S. and K.S., by and through their parents and natural guardians, Nathaniel and Dawna Slarve; NATHANIEL SLARVE, individually; and DAWNA SLARVE, individually; <br>      Plaintiffs, <br><br> v. <br><br> HEATHER BOUCHEY, in her official capacity as Interim Secretary of the Vermont Agency of Education; JENNIFER DECK SAMUELSON, in her official capacity as Chair of the Vermont State Board of Education; CHRISTINE BOURNE, in her official capacity as Windsor Southeast Supervisory Union Superintendent; HARTLAND SCHOOL BOARD; RANDALL GAWEL, in his official capacity as Orange East Supervisory Union Superintendent; WAITS RIVER VALLEY (UNIFIED #36 ELEMENTARY) SCHOOL BOARD; and JAY NICHOLS, in his official capacity as the Executive Director of The Vermont Principals' Association; <br>      Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil No. 2:23-cv-00652 |

## SUPPLEMENTAL DECLARATION OF JENNIFER DECK SAMUELSON

I, Jennifer Samuelson, hereby declare as follows:

1.     This declaration supplements my previous Declaration dated January 28, 2024, and filed with the Court on January 29, 2024.

JA.046

2. As of the date of this Declaration, Mid Vermont Christian School ("MVCS") remains an approved independent school. I understand that MVCS has received town tuition program payments for the current school year.

3. As of the date of this Declaration, the Board of Education has not taken any action on MVCS's application since February 15, 2023, when it voted to postpone consideration of the application. A true and accurate copy of the Board's February 15, 2023 meeting minutes reflecting that action is attached as **Exhibit A**.

4. As a result of the postponement, MVCS remains an approved independent school entitled to receive town tuition program payments by virtue of Board Rule 2223.6, which provides that "[a]pproval of a school completing a timely application for further approval shall extend until the Board acts on further approval."

5. As discussed in my January 28 Declaration, the Agency of Education is not providing recommendations to the Board with respect to approval of *any* renewal applications—including MVCS's—until it has completed a technical assistance review to assist independent schools with compliance with certain Board rules related to special education. At this time, we still anticipate that this technical assistance review will not be completed until late spring or early summer.

6. Consistent with its general practice with respect to all independent school renewal applications, the Board will not take any further action on MVCS's application until it receives a recommendation from the Agency. Typically, the process is that the Agency makes a recommendation as to a school's application. The school receives a copy of that recommendation and then has 30 days to respond. Next the recommendation is presented to the Board's 2200 Approvals Committee. The Committee then gives both the Agency and the school

JA.047

a chance to be heard before arriving at a recommendation as to how the Board should proceed on the school's application. The Board then takes final action and votes on the Committee's recommendation at a subsequent meeting of the full Board.

7. The Board is currently in the process of updating its Rule Series 2200, which are the rules at issue in the above-captioned case. That process is taking place in a manner consistent with the formal rulemaking process required by Vermont law. A set of proposed updates to the rules was filed with the Vermont Secretary of State on October 13, 2023 and public hearings on the proposed updates took place in November 2023.

8. The Board is presently working on revisions to Rule Series 2200 that incorporate public comments received. Once those revisions are finalized, the Board will submit them to Vermont's Legislative Committee on Administrative Rules for review pursuant to the statutory rulemaking process.

9. While updates to Rule Series 2200 have not yet been finalized, I anticipate that the updates will include changes to the nondiscrimination provisions at issue in the above-captioned litigation. The Board's proposed updates are part of the public record.

I hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge.

Executed this 4th day of April 2024, in ____Winhall____, Vermont.

Jennifer Deck Samuelson

3

JA.048

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF VERMONT**

| | |
|---|---|
| **MID VERMONT CHRISTIAN SCHOOL**, on behalf of itself and its students and its students' parents; **ABEL GOODWIN**; **M.G.**, by and through her parents and natural guardians, Christopher and Bethany Goodwin; **CHRISTOPHER GOODWIN**, individually; **BETHANY GOODWIN,** individually; **O.P.**, by and through his father and natural guardian, Nathan Partington; and **NATHAN PARTINGTON**, individually, <br><br> Plaintiffs, <br><br> v. <br><br> **ZOIE SAUNDERS,** in her official capacity as Secretary of the Vermont Agency of Education and in her individual capacity; **JENNIFER DECK SAMUELSON**, in her official capacity as Chair of the Vermont State Board of Education and in her individual capacity; **WAITS RIVER VALLEY (UNIFIED #36 ELEMENTARY) SCHOOL BOARD**; and **JAY NICHOLS**, in his official capacity as the Executive Director of The Vermont Principals' Association and in his individual capacity, <br><br> Defendants. | Case No. 2:23-CV-00652 <br><br><br> **AMENDED VERIFIED COMPLAINT** |

JA.049

**INTRODUCTION**

1.      This civil rights action seeks to protect a Christian school and its students and parents from unconstitutional religious discrimination and hostility.

2.      The State of Vermont has adopted its own orthodoxy on human sexuality and gender. Simply put, the State believes sex is mutable and biological differences do not matter.

3.      The State is entitled to its own views, but it is not entitled, nor is it constitutional, to force private, religious schools across the state to follow that orthodoxy as a condition to participating in Vermont's tuitioning program and the State's athletic association, nor can the State gerrymander out and exclude all religious schools from public benefits.

4.      A "State need not subsidize private education. But once a State decides to do so, it cannot disqualify some private schools solely because they are religious." *Carson v. Makin*, 596 U.S. 767 (2022) (quoting *Espinoza v. Montana Dep't of Revenue,* 591 U.S. 464, 487 (2020)).

5.      But that is exactly what Defendants have done. Vermont—through its Agency and Board of Education ("the State") and the Vermont Principal's Association ("VPA")—requires religious schools like Mid Vermont Christian School to follow (and affirm compliance with) laws, rules, and policies that prevent those schools from operating consistently with their religious beliefs about sexuality and

2

JA.050

gender. And the State, through a new law—Act 73—now gerrymanders out and excludes all religious schools from public benefits.

6.     This case involves two ways that Defendants burden, discriminate against, and penalize religious schools in Vermont, including Mid Vermont Christian and its students and their parents.

***Exclusion from Public Benefits***

7.     First, Vermont has yet again excluded all private religious schools and their families from receiving generally available public benefits—including town tuition, dual enrollment, and early college funds.

8.     This religious discrimination is nothing new in Vermont. For decades, the State categorically banned religious schools from receiving public funds. It claimed that its state constitution prohibited public dollars from going to religious schools, even though the decisions were based on parental choice. *See Chittenden Town Sch. Dist. v. Dep't of Educ.,* 738 A.2d 539 (Vt. 1999).

9.     In 2021, the Second Circuit finally put an end to that religious discrimination, holding that religious schools were "entitled to [town tuition] funding to the same extent as parents who choose secular schools for their children, regardless of [their] religious affiliation or activities." *In re A.H.,* 999 F.3d 98, 108 (2d Cir. 2021).

10.     Also in 2021, the Second Circuit held that students at religious schools could not be excluded from Vermont's Dual Enrollment Program. *A.H. by & through Hester v. French,* 985 F.3d 165, 184 (2d Cir. 2021).

3

JA.051

11.     The Supreme Court then handed down *Carson v. Makin*, holding that "Maine's 'nonsectarian' requirement for its otherwise generally available tuition assistant payments violates the Free Exercise Clause of the First Amendment." 596 U.S. at 789.

12.     The mandate from *In re A.H.*, *A.H. v. French*, and *Carson* was clear: stop excluding religious schools from public benefits.

13.     After decades of exclusion, Mid Vermont Christian was finally eligible for public benefits starting in the 2022–2023 academic year.

14.     But then the State came up with a new strategy to exclude religious schools. This time, schools had to agree to comply with certain nondiscrimination strings (via Board of Education Rule 2200) to be eligible for town tuition funding. State officials adopted this requirement knowing that it would weed-out many, if not all, religious schools in the state.

15.     When Mid Vermont Christian told the State that it had admissions, conduct, and employment practices that conflicted with the new nondiscrimination strings, the Agency of Education demoted Mid Vermont to a "Recognized Independent School" (which cannot receive public benefits), prompting this lawsuit.

16.     After this case was filed, the Agency of Education reversed course, telling Mid Vermont it could receive public funding until the Board of Education made a "final determination" on the school's 2023 application for approval.

JA.052

17.     But the Board of Education never actually made a decision on Mid Vermont's 2023 application. Instead, the State stalled until the legislature could pass a new law that would again exclude all religious schools from public benefits.

18.     That law—Act 73—was enacted on July 1, 2025. A true and accurate copy of Act 73 is attached as Exhibit 1.

19.     Act 73 bars all religious approved independent schools in the state from receiving public benefits, including town tuition funds. All 15 religious schools that were eligible for funding last year are now excluded from public funding.

20.     Act 73 imposes new requirements on approved independent schools to be eligible for public funding. Those schools must now: (1) be located in a school district (or supervisory union with a school district) that does not operate a public school, (2) have had at least 25% of their enrollment be publicly funded during the 2023–2024 school year, and (3) comply with class-size minimums regardless of school size.

21.     The combination of these requirements creates a de facto religious exclusion.

22.     For instance, religious schools were *categorically excluded* from public funding for decades until the Second Circuit ended that discrimination in 2021. Religious schools only became eligible starting in the 2022—2023 school year. Religious schools couldn't meet the 25% publicly-funded enrollment requirement just one year after finally getting in the door.

5

JA.053

23.     But at least 45 secular approved independent schools remain eligible for public funding.

24.     This includes 18 "favored" secular approved independents schools, like Vermont's largest private schools such as Burr & Burton Academy, St. Johnsbury Academy, and Lyndon Institute.

25.     The State will claim it is not excluding religious schools because they are religious. But that's pretense. The First Amendment "protects against governmental hostility which is masked, as well as overt," and "forbids subtle departures from neutrality." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993) (citation modified).

26.     Indeed, "the effect of a law in its real operation is strong evidence of its object." *Id.* at 535.

27.     Act 73's effect is that certain, favored secular schools remain eligible for public benefits, while Vermont's religious schools are, once again, left out.

28.      Act 73 is an attempted work-around to the *French* cases and *Carson*, creates a religious gerrymander, and effectively returns Vermont to the *Chittenden Town*-era.

29.     Although the means may be different, this religious discrimination is still "odious to our Constitution." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 467 (2017).

30.     Act 73 also substantially interferes with Nathan Partington's religious development of his son, O.P., because the Act denies him a public benefit he would

6

JA.054

otherwise receive but for the fact that he chooses to send O.P. to Mid Vermont to receive a Christian education.

31.  This Court should enjoin the provisions of Act 73 that operate as a de facto religious exclusion and permit Mid Vermont and its students and their families—including the Partingtons—to receive public funding.

32.  Moreover, the State still seeks to impose Rule 2200's nondiscrimination strings on Mid Vermont as a condition to being a fully "approved" independent school.

33.  Since this case was filed, the State amended Rule 2200 to now include a caveat that schools need only comply with the nondiscrimination strings insofar as they are "consistent with [the school's] constitutional and statutory rights." Yet, despite this qualifier, the Board of Education still has not issued a final decision on Mid Vermont's application to be an approved independent school.

34.  Because Rule 2200's nondiscrimination strings burden and interfere with Mid Vermont's religious exercise, the Court should also enjoin Rule 2200's nondiscrimination strings as applied to Mid Vermont Christian.

***Vermont Principles Association Hostility and Burden on Religious Exercise***

35.  Second, two-and-a-half years ago, the VPA kicked Mid Vermont Christian out of the State's athletic association—and refused to allow the school back in—because the school operates its *own* athletic program consistent with its religious beliefs about sexuality and gender.

7

JA.055

36. Although the VPA has a girls fairness policy that prohibits boys from competing on girls' teams, the VPA's gender identity policies allow biological males to compete on girls' teams if the male "identifies" as a girl. In those situations, the VPA treats the male as a girl for purposes of the fairness policy.

37. The problem is that the VPA demanded Mid Vermont Christian do the same and view biological males as girls if they so identify, despite the VPA's girls fairness policy.

38. When Mid Vermont Christian reluctantly forfeited a girls' high school basketball game against a team that had a biological male playing for them, the VPA kicked the school out of the association.

39. Mid Vermont Christian forfeited and accepted the loss because it believed that forcing its female athletes to compete against a male in girls' basketball would violate its religious convictions by making it complicit in the idea that males can become females.

40. Despite 28 years of prior participation in the league, Mid Vermont Christian could not compete in *any* VPA athletics, and was effectively blacklisted from all State-sponsored events in the state. The VPA initially wouldn't even allow the school and its students to participate in co-ed academic competitions like the Geo-Bee, Science and Math Fair, and Debate and Forensics League—all because the school believes biological boys are boys and cannot affirm otherwise.

41. As a result of the expulsion, the boys and girls who chose to attend Mid Vermont Christian lost out on playing competitive sports in the state and

8

participating in academic competitions in the VPA—thus harming not only the school but its student-athletes, including Plaintiffs Abel Goodwin and M.G.

42. Mid Vermont Christian brought this case, seeking a preliminary and permanent injunction ordering reinstatement in the VPA, among other things.

43. The Second Circuit Court of Appeals recently held that the VPA likely violated the Free Exercise Clause by expelling Mid Vermont because the VPA's "decision was indeed accompanied by official expressions of hostility to religion." *Mid Vermont Christian Sch. v. Saunders*, 151 F.4th 86, 93 (2d Cir. 2025).

44. The Second Circuit explained the hostility was evident in several ways: "[t]he VPA's Executive Director publicly castigated Mid Vermont—and religious schools generally—while the VPA rushed to judgment on whether and how to discipline the school. In upholding the expulsion, the VPA doubled down on that hostility by challenging the legitimacy of the school's religious beliefs. And ... the punishment imposed was unprecedented, overbroad, and procedurally irregular." *Id.* at 95.

45. The Second Circuit directed the entry of a preliminary injunction ordering "Mid Vermont's reinstatement to full membership in the VPA pending resolution of this case." *Id.* at 96.

46. This Amended Complaint does not amend or change the allegations that form the substantive basis for the preliminary injunction against the VPA.

47. So while the preliminary injunction protects Mid Vermont Christian's membership as the case proceeds, Plaintiffs seek permanent relief.

9

JA.057

48.     Because being denied participation in public benefit programs harms Mid Vermont Christian *and* its students and their parents, the school raises claims on their behalf as well. *See Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary,* 268 U.S. 510 (1925); *Runyon v. McCrary,* 427 U.S. 160, 175 n.13 (1976).

49.     Defendants have thus put Plaintiffs to an impossible Hobson's Choice: (1) abandon their religious beliefs, character, and practices and adopt and follow the State's gender identity rules so they can participate in school athletics and public benefit programs, or (2) adhere to their religious beliefs, character, and practices, face possible expulsion from the VPA, lose valuable public benefits, and inevitably lose students necessary to keep its doors open.

## JURISDICTION AND VENUE

50.     This action raises federal questions under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

51.     This Court has original jurisdiction over the claims asserted in this Complaint under 28 U.S.C. § 1331, which provides jurisdiction for claims raising questions of federal law, and 28 U.S.C. § 1343(a), which provides jurisdiction for claims seeking vindication of civil rights protected by federal law.

52.     This Court has authority to award the requested (1) declaratory relief under 28 U.S.C. § 2201 & 2202 and Fed. R. Civ. P. 57; (2) injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and (3) damages (nominal, compensatory, and punitive), costs, and attorney's fees under 42 U.S.C. §§ 1983 and 1988.

JA.058

53.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, the effects of the challenged law are felt here, Defendants reside here, and Defendants can and do perform official duties here.

## PARTIES

**A.     Mid Vermont Christian School.**

54.     Plaintiff Mid Vermont Christian School is a private, Christian, pre-K through 12th grade school located in Quechee, Vermont. It was founded in 1987.

55.     Many families choose to send their children to Mid Vermont Christian precisely because of its Christian character and education.

56.     Families in some school districts that do not have a public high school desire to send their students to Mid Vermont Christian. Mid Vermont Christian has students attending school this year who have previously participated in the state's Town Tuition Program and desire to continue participating in the program for this year and years to come.

57.     Mid Vermont Christian also has students who previously participated in Vermont's Dual Enrollment and Early College Programs, and students who desire to continue participating in those programs for this year and years to come.

58.     Mid Vermont Christian also excels in academics and athletics. Its students frequently outperform public school students in SAT testing. And both its girls' and boys' basketball teams participated in the State VPA playoffs in the 2022–2023 season. Plaintiff M.G. is playing on the girls' team this year.

11

JA.059

59.     Families like the Goodwins and Partingtons send their children to Mid Vermont Christian because of Mid Vermont Christian's academic programs, athletic offerings, and Christian-based instruction and beliefs.

60.     Mid Vermont Christian holds sincere religious beliefs that drive and form the foundation for everything it does, including academics and athletics.

61.     Mid Vermont Christian's sincerely held religious beliefs are rooted in the Holy Bible, which Mid Vermont Christian believes is inspired by God and is the authority on all issues of faith and life.

62.     Students and families that choose the school are aware of the school's religious beliefs and many share the school's beliefs and choose the school precisely for that reason.

63.     Mid Vermont Christian sincerely believes it must holistically educate its students in and through a biblical worldview, teaching them to love and serve God above all else and to spread His Gospel and teachings.

64.     At Mid Vermont Christian, "God is central to all knowledge and learning." Mid Vermont Christian School Website Pages at 12, a true and accurate copy of which is attached as Exhibit 2.

65.     The school's purpose is "to glorify God by preparing each student for college, career, and Christian ministry through a program of academic excellence established in Biblical truth." *Id.* at 2.

66.     "The Word of God is integrated into each classroom and each subject" and Mid Vermont Christian seeks to prepare its graduates "to continue to grow in

JA.060

their personal relationship with Jesus Christ, going out into the world to serve Him with all their intelligence, skills, and being." *Id.* at 16, 22.

67.   To these ends, Mid Vermont Christian inculcates biblical truths through everything it does—from academics to athletics and everything in between. It teaches these truths not only by focusing on them in the classroom, but also by exemplifying them to its students and the world.

68.   So the school cannot facilitate any event that would give the appearance to its students and families that the school does not adamantly hold the beliefs it professes or that would undermine its beliefs.

69.   Mid Vermont Christian also sincerely believes that every person must be afforded compassion, love, kindness, respect, and dignity and treated with the love of Christ, regardless of their beliefs.

70.   Mid Vermont Christian holds sincere religious beliefs on biblical marriage, sexuality, and gender. Mid Vermont Christian sincerely believes that God wonderfully and immutably creates each person as male or female, that rejection of one's biological sex is a rejection of the image of God within that person, that the term marriage has only one meaning—the uniting of one man and one woman in a single, exclusive union, as delineated in Scripture—and that God intends sexual intimacy to occur only between a man and a woman who are married to each other.

71.   Mid Vermont Christian's religious beliefs—including its beliefs on marriage, sexuality, and gender—guide all aspects of the school's operation, as demonstrated by the school's rules and policies.

13

JA.061

72. Mid Vermont Christian requires that all employees agree with and abide by all of Mid Vermont Christian's religious beliefs, including those on biblical marriage, sexuality, and gender.

73. Mid Vermont Christian requires all students to adhere to its internal rules and policies.

74. For instance, Mid Vermont Christian is committed to serving students who may question their sexuality or gender and will not dismiss any such students because they experience such thoughts or feelings.

75. But due to its religious beliefs, Mid Vermont Christian requires all students to dress, use restrooms/locker rooms, use pronouns, and play on athletic teams based on their biological sex.

76. Mid Vermont Christian also believes that by competing against a boy who identifies as a girl on a girls' sports team (or a girl who identifies as a boy on a boys' sports team), it would be affirming that sex is mutable, in violation of its beliefs.[1]

77. And Mid Vermont Christian believes that engaging in such competition would cause it to be complicit in furthering the falsity that sex is mutable, in violation of its beliefs.

---

[1] The same situation is not present in co-ed sports because the classification of the competition itself recognizes that it is open to both males and females.

14

JA.062

78.   Simply put, Mid Vermont Christian's religious education *is* its religious exercise. Anything that impedes, prohibits, or undermines the former, burdens the latter.

**B.   The Goodwins.**

79.   Plaintiff Abel Goodwin was previously a member of Mid Vermont Christian's varsity boys' basketball and track teams. Abel previously sued by and through his parents and natural guardians, Chris Goodwin and Bethany Goodwin. Abel is no longer a minor child.

80.   Plaintiff M.G., a minor child, is a student who is a member of Mid Vermont Christian's girls' basketball team this school year. Because M.G. is a minor, she sues by and through her parents and natural guardians, Chris Goodwin and Bethany Goodwin.

81.   Plaintiff Chris Goodwin is the father of Abel and M.G. He sues on behalf of himself and his children. Mr. Goodwin is the head coach of Mid Vermont Christian's girls' varsity basketball team.

82.   Plaintiff Bethany Goodwin is the mother of Abel and M.G. She sues on behalf of herself and her children.

83.   Plaintiffs Abel Goodwin, M.G., Chris Goodwin, and Bethany Goodwin are collectively referred to as "the Goodwins" unless the context indicates otherwise.

84.   The Goodwins reside in Quechee, Vermont.

JA.063

85.    Before graduating, Abel was enrolled at Mid Vermont Christian and played on Mid Vermont Christian's varsity boys' basketball and track teams. Abel was a senior in high school when this lawsuit was first filed.

86.    Abel's sister, M.G., is in tenth grade this year at Mid Vermont Christian.

87.    Abel played, and M.G. plays, on Mid Vermont Christian's sports teams because Mid Vermont Christian is a Christian school with athletes who share their personal and family's beliefs and values. Mid Vermont Christian is also close to the Goodwins' home.

88.    M.G. desires to continue playing on Mid Vermont Christian sports teams that compete in the VPA.

89.    The Goodwins hold sincere religious beliefs that are rooted in the Holy Bible.

90.    The Goodwins share the same religious beliefs as Mid Vermont Christian, including the belief that by competing against (or on the same team as) a boy who identifies as a girl on a girls' sports team (or a girl who identifies as a boy on a boys' sports team), it would be affirming that sex is mutable, which violates their beliefs about sexuality and gender.

91.    The reason the Goodwins choose to attend Mid Vermont Christian is because of the Christian education Mid Vermont Christian provides.

92.    Chris and Bethany Goodwin believe sending M.G. to a public or secular private school would expose her to worldly influences and ideas that are contrary to

16

JA.064

their religious beliefs and would thus substantially interfere with the religious upbringing of M.G.

## C.   The Partingtons.

93.   Plaintiff O.P. is a seventh-grade student at Mid Vermont Christian. Because O.P. is a minor, he sues by and through his father and natural guardian, Nathan Partington.

94.   Plaintiff Nathan Partington sues on his own behalf and on behalf of his son, O.P.

95.   Plaintiffs Nathan Partington and O.P. are collectively referred to as "the Partingtons" unless the context indicates otherwise.

96.   The Partingtons are Christians, hold sincere religious beliefs that are rooted in the Holy Bible, and share Mid Vermont's religious beliefs.

97.   Specifically, Nathan believes the Bible instructs him to raise his children to share his Christian faith and to ensure his children believe in, and follow, Jesus Christ.

98.   Nathan seeks to teach his children to hold a Biblical worldview.

99.   Nathan believes that his religion compels him to send his children to a Christian school so that they can receive a Christian education.

100.   Nathan believes that sending O.P. to a public or secular private school would expose him to worldly influences and ideas that are contrary to their religious beliefs and would thus substantially interfere with the religious upbringing of O.P.

17

JA.065

101. The Partingtons reside in West Topsham, Vermont, which is located in the Waits River Valley School District, part of the Orange East Supervisory Union.

102. The Waits River Valley School District is a sending district; it does not operate a public high school and instead tuitions its high school students elsewhere.

103. Nathan currently pays out-of-pocket for O.P. to attend Mid Vermont Christian because he is in seventh grade. Paying out-of-pocket for O.P. to attend Mid Vermont is financially difficult for Nathan and he likely could not afford to continue paying out-of-pocket once O.P. reaches high school.

104. Nathan's middle child is a senior at Mid Vermont Christian.

105. Nathan's middle child received town tuition funds from the Waits River Valley School District for the 2023–2024 (after filing this lawsuit) and 2024–2025 school years.

106. Nathan's middle child is grandfathered-in under Act 73 and continues to receive town tuition funds for the current (2025–2026) school year.

107. And because Nathan's middle child is grandfathered-in to receive town tuition funds, he is also able to participate in the Dual Enrollment Program this year.

108. But O.P. will not be eligible to use town tuition funds at Mid Vermont Christian once he reaches ninth grade because—as explained below—Act 73 excludes Mid Vermont Christian from being able to receive such funding.

JA.066

109.    Nor will O.P. be eligible for dual enrollment or early college funding while in high school because—as explained below—he will not be eligible for town tuition funding while attending Mid Vermont.

**D.    Defendants.**

110.    Defendant Zoie Saunders is the Secretary of the Vermont Agency of Education.. Secretary Saunders is sued in both her official and individual capacities.

111.    Secretary Saunders' duties include supervising and directing the execution of laws relating to public schools and ensuring compliance with such laws. 16 V.S.A. § 212.

112.    Secretary Saunders is responsible for supervising the expenditure and distribution of all money appropriated by Vermont for public schools under Title 16 of the Vermont Statutes. *Id.*

113.    Defendant Jennifer Deck Samuelson is the Chair of the Vermont State Board of Education, which has supervision over, and management of, the Agency of Education. She is sued in both her official and individual capacities.

114.    The State Board of Education "act[s] in accordance with legislative mandates," *id.* § 164, and has authority to make final decisions about town tuition disputes, *id.* § 828(c).

115.    Defendants Saunders and Samuelson are collectively referred to as "the State" unless the context indicates otherwise.

19

JA.067

116.   The State decides which schools are approved as "independent schools" and has the authority to enforce compliance with the law by stripping public funding from school districts.

117.   In summer 2023, the State denied Mid Vermont Christian's application for approved independent status and instead designated Mid Vermont Christian as a recognized school.

118.   The State later reversed course after the filing of this lawsuit and permitted Mid Vermont Christian to receive public funding until Act 73 was passed.

119.   Now, due to Act 73, Plaintiffs are not capable of receiving town tuition, dual enrollment, or early college funds.

120.   Defendants Saunders and Samuelson—through the Agency and Board of Education—enforce and apply Act 73, including the provisions that exclude religious schools like Mid Vermont.

121.   Defendant Waits River Valley (Unified #36 Elementary) School Board bears the responsibility for providing education for children who live within its district, including O.P. 16 V.S.A. § 822(a)(1).

122.   Defendant Waits River Valley (Unified #36 Elementary) School Board bears the legal burden of funding an education to students who reside in the district, including O.P. 16 V.S.A. § 824(a).

123.   The Waits River Valley (Unified #36 Elementary) School Board initially paid at least two Mid Vermont Christian families' tuition requests for the 2023-2024 school year, but the School Board then recouped those payments because

JA.068

Mid Vermont Christian was not approved as an "independent school" by the State. The Waits River Valley School Board later reversed course after this lawsuit was filed and paid Mid Vermont tuition for the 2023–2024 school year.

124. The Waits River Valley (Unified #36 Elementary) School District does not maintain a public high school and so pays tuition for its resident-students to attend high school elsewhere.

125. Defendant Jay Nichols is Executive Director of the VPA, an association of Vermont schools and school leaders that oversees sports and other activities in Vermont for its 270-plus member schools. Defendant Nichols is sued both in his official and individual capacities.

126. As Executive Director, Defendant Nichols is the "chief executive officer" of the VPA and has the "powers, duties, and responsibilities usually associated with the office." One of those powers, duties, and responsibilities is enforcing VPA policies. VPA Bylaws art. 6, § 1, a true and accurate copy of which is attached as Exhibit 3.

127. Defendant Nichols is referred to as the "VPA" unless the context indicates otherwise.

128. The VPA is a state actor.

129. The VPA is a state actor in part because it "includes most public schools located within the State [of Vermont], acts through their representatives, draws its officers from them, is largely funded by their dues and income received in their stead, and has historically been seen to regulate in lieu of the [Agency] of

21

JA.069

Education's exercise of its own authority." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 290–91, 298–302 (2001) (holding that the TSSAA is a state actor).

130. The VPA oversees sports and activities for its 270-plus member schools in Vermont.

131. The VPA currently oversees several dozen sports and activities in Vermont.

132. The VPA is the only sports association that includes both public and private middle and high schools in Vermont.

133. The VPA controls scheduling, participation in, and the rules for VPA sports competitions.

134. A majority of middle schools in Vermont and all high schools, including all public high schools, in Vermont are members of the VPA.

135. Over 95% of the VPA's member schools are public schools.

136. Defendant Jay Nichols, Executive Director of the VPA, is the former Superintendent of Schools of the Franklin Northeast Supervisory Union, which serves seven public schools in Vermont.

137. The VPA member schools, including its public school members, are represented in the VPA by the principal or a designee of the principal of each school. The principal or designee that represents each school is "entitled to vote for that school on activity matters and also to serve on committees related to activities." VPA Bylaws art. 3, § 1.

JA.070

138. The VPA Executive Council is "the governing body" of the VPA. The VPA members, including its public school members, select the members of the Executive Council, including the VPA's President and President-elect. The Executive Council approves the Executive Director of the VPA. *Id.* art. 6, §§ 1, 3.

139. Twelve out of the thirteen current members of the Executive Council (92%), including the VPA's President and President-elect, are principals, former principals, or other senior administrators of public schools.

140. VPA policies are established by the VPA's members, including its public school members.

141. The VPA Executive Council has "the authority to appoint any necessary committees and delegate responsibilities to those committees," including the VPA's Activity Standards Committee. *Id.* art. 3, § 3.

142. The VPA's Activity Standards Committee, which includes nine VPA members, votes on "[a]ll policies governing student activities ... subject to the approval by the Executive Council." *Id.* art. 7, § 2.

143. All members of the 2022–2023 Activity Standards Committee were principals, athletic directors, or other senior administrators of public schools. Defendant Nichols likewise attends Activity Standards Committee meetings.

144. There were no private schools represented on the 2022–2023 Activity Standards Committee, and upon information and belief, there are no private schools represented now.

23

JA.071

145. In 2022, over 89% of the VPA's annual revenue ($1,793,104) came from membership dues from its predominately public-school members ($423,946) and from admissions to, sales at, and sponsorship for VPA-regulated sports and activities ($1,176,372 collectively).

146. In charging for admissions, the VPA "exercises the authority of the predominantly public schools to charge for admission to their games; the [VPA] does not receive this money from the schools, but enjoys the schools' moneymaking capacity as its own." *Brentwood Acad.*, 531 U.S. at 299.

147. The VPA works hand-in-hand with the Agency in various ways.

148. For example, the Agency's "Continuing Best Practices for Schools Regarding Transgender and Gender Nonconforming Students" states that "[p]articipation in competitive athletic activities and sports will be resolved on a case-by-case basis" and that "[s]chools should refer to the Vermont Principal's Association Activities/Athletics Policies: Article 1 Section 2." *See* Vermont Agency of Education's Continuing Best Practices for Schools Regarding Transgender and Gender Nonconforming Students at 6, a true and accurate copy of which is attached as Exhibit 4.

149. And a goal of the VPA Executive Council is to "[c]ollaborate with [the Vermont Agency of Education] to support Principals."[2]

---

[2] *About the VPA*, Vermont Principals' Association, https://perma.cc/9KN9-8QMZ.

24

150.    The Agency also promotes VPA resources and events on its website.[3]

151.    The Vermont Legislature, moreover, has delegated important public functions and duties to the VPA:

a. "When a school district hires a principal or a career technical center director who has not been employed previously in that capacity, the superintendent serving the district, *in consultation with the Vermont Principals' Association*, shall work to ensure that the new principal or technical center director receives mentoring supports during at least the first two years of employment. Mentoring supports shall be consistent with best practices, research-based approaches, or other successful models, and *shall be identified jointly by the Vermont Principals' Association* ...." 16 V.S.A. § 245(a) (emphasis added).

b. "The Secretary of Education or designee, *assisted by members of the Vermont Principals' Association selected by that association*, ... shall develop statewide guidelines, forms, and other materials, and update them when necessary, that are designed to educate coaches, youth athletes, and the parents and guardians of youth athletes regarding [concussions]." 16 V.S.A. § 1431(b) (emphasis added).

c. The Secretary of the Agency of Education shall "establish an Advisory Council to review and coordinate school and statewide activities relating to the prevention of and response to harassment, hazing, and bullying. ... The Council shall include ... *the Executive Director of the Vermont Principals' Association or designee*." 16 V.S.A. § 570(d)(2) (emphasis added).

d. "Prior to appointing a member [of the Vermont Standards Board for Professional Educators], the Governor shall consult with the State Board of Education and, as appropriate, ... *the Vermont Principals Association* ...." 16 V.S.A. § 1693(b) (emphasis added).

---

[3] *See, e.g.*, *Vermont Principals Association Sanctions First Lego League and First Technical Challenge as a School Activity*, (Feb. 24, 2015), https://perma.cc/HLN9-FJM6; *Employment*, State of Vt. Agency of Educ., https://perma.cc/U4CM-G3PT; *Weekly Field Memo, Volume 13, Issue 18*, State of Vt. Agency of Educ., https://perma.cc/VV2G-9P3V; *Weekly Field Memo, Volume 17, Issue 2*, State of Vt. Agency of Educ., https://perma.cc/27LV-9J82; *Weekly Field Memo, Volume 13, Issue 37*, State of Vt. Agency of Educ., https://perma.cc/4MNG-HYX9; *Weekly Field Memo, Volume 13, Issue 25*, State of Vt. Agency of Educ., https://perma.cc/ASU3-JKUX.

JA.073

152. Defendant Nichols is also the current Chair of the Commission on the Future of Public Education in Vermont, a Commission created by the Vermont General Assembly.

153. In short, the VPA is pervasively entwined with the State.

154. Defendants are entities and individuals acting under color of state law and therefore are subject to liability under 42 U.S.C. § 1983.

155. Plus, Defendants Saunders, Samuelson, and Nichols were and are personally involved in the deprivation of Plaintiffs' constitutional rights.

156. Defendants Saunders and Samuelson are directly involved in the enforcement of Rule 2200 and Act 73 as applied to Plaintiffs and know that Rule 2200 and Act 73 unlawfully deprive Plaintiffs of public benefits in violation of the First and Fourteenth Amendments.

157. Defendant Nichols was directly involved in the hostility exhibited toward Plaintiffs' religious beliefs and knew that such religious hostility violated Plaintiffs' First and Fourteenth Amendment rights.

158. Plaintiffs' constitutional rights to receive public benefits and to be free from government hostility to religion were clearly established at the time of Defendants Saunders', Samuelson's, and Nichol's unconstitutional actions.

159. Plaintiffs' constitutional rights to receive public benefits were clearly established especially in light of the Supreme Court's decisions in *Carson*, 596 U.S. 767, *Espinoza,* 591 U.S. 464, and *Trinity Lutheran,* 582 U.S. 467, and the Second Circuit's decisions in *In re A.H.*, 999 F.3d 98, and *A.H. v. French*, 985 F.3d 165.

26

JA.074

160.   And Plaintiffs' constitutional right to be free from government hostility to religion was clearly established in light of the Supreme Court's decision in *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617 (2018).

161.   Reasonable officials in Defendants Saunders', Samuelson's, and Nichols' shoes would have known that their actions as applied to Plaintiffs violate Plaintiffs' constitutional rights.

162.   Defendants Saunders', Samuelson's, and Nichols' deprivation of Plaintiffs' constitutional rights were motivated by evil motive or intent, and involved reckless and callous indifference to Plaintiffs' federally protected rights.

163.   Defendants Saunders and Samuelson intentionally violated Plaintiffs' First and Fourteenth Amendment rights by excluding them from public benefits despite the Second Circuit Court of Appeals repeatedly holding that Vermont cannot exclude religious schools and their students from Vermont's public benefit programs.

164.   And Defendant Nichols intentionally violated Plaintiffs' First and Fourteenth Amendment rights by acting with religious hostility and permanently expelling Mid Vermont from all VPA activities.

27

JA.075

## FACTUAL ALLEGATIONS

A.  **Vermont targets and intentionally excludes all religious schools—including Mid Vermont Christian—from Vermont's public benefit programs.**

1.  **Overview of the relevant benefit programs.**

*Private schools in Vermont.*

165.  Vermont provides two basic statuses for independent (private) schools: approved independent schools or recognized schools. 16 V.S.A. § 166.

166.  "Approved independent schools" are private schools that meet certain educational quality and curriculum requirements established by the Vermont State Board.

167.  Before the enactment of Act 73, approved independent schools were eligible to participate in the Town Tuition Program, Dual Enrollment Program, and other public benefit programs.

168.  The requirements to be an approved independent school are set forth in Vermont Rule Series 2200 ("Rule 2200"). *See* Vt. Admin. Code 7-1-3:2220, *et seq.* (2024).

169.  "Recognized schools" are private schools that are not eligible to participate in the Town Tuition Program, Dual Enrollment Program, or other public benefit programs in the state.

170.  The approved independent school designation is conferred by the State Board and recognized by the Agency of Education.

28

JA.076

*Town Tuition Program.*

171.  In Vermont, some school districts do not operate public high schools. Under Vermont's Town Tuition Program, these districts use public funds to pay for students residing in the district to attend independent schools or public schools elsewhere.

172.  Specifically, Vermont school districts must either maintain their own high school or "provide for the high school education of its students by paying tuition to a public high school, an approved independent high school, or an independent school meeting education quality standards, to be selected by the parents or guardians of the student, within or outside the State." 16 V.S.A. § 822(a)(1).

173.  The Town Tuition Program was created to give parents flexibility and choice: when a school district doesn't operate a school, the "parents or guardians" of a student choose where to go. *Id.*

174.  While the Town Tuition Program is administered by school boards of the individual school districts, ultimate oversight authority in individual cases is vested in the Vermont State Board of Education. 16 V.S.A. § 828.

175.  The State Board supervises and manages Vermont's Agency of Education.

176.  Districts that pay tuition for their students instead of maintaining a public high school are called "sending districts." Under the Town Tuition Program, sending districts directly pay the amount of tuition on behalf of their students to the

JA.077

public school or the private independent school of each student's choice. 16 V.S.A. §
824.

177.   Students that live in sending districts and attend school at a different
public school or approved independent school are called "town tuitioned" or "publicly
tuitioned" students.

### *Dual Enrollment Program.*

178.   In addition to the Town Tuition Program, Vermont enacted the so-
called "Flexible Pathways Initiative" which offers several public benefits available
to Vermont students. *Id.* § 941.

179.   The Flexible Pathways Initiative exists to create more postsecondary
opportunities for Vermont students and to help increase college retention and
completions rates. *Id.* § 941(a).

180.   One Flexible Pathways Initiative Program is the Dual Enrollment
Program, which helps high school students obtain college credit.

181.   Vermont's Dual Enrollment Program permits students in grades 11 or
12 to take up to two postsecondary courses while still in high school "for which
neither the student nor the student's parent or guardian shall be required to pay
tuition." 16 V.S.A. § 944(b)(2).

182.   Students who wish to participate in the Dual Enrollment Program
must be enrolled at either a public school, an approved independent school that is
designated as the public secondary school for the student's district of residence, an

30

JA.078

approved independent school in which the student's district of residence pays publicly funded tuition on behalf of the student, or is home-schooled. *Id.* § 944(b)(1).

183. In other words, students who attend an approved independent school are eligible to participate in the Dual Enrollment Program *if* they are a publicly tuitioned student.

### *Early College Program.*

184. Another Flexible Pathways Initiative—the Early College Program—aims to help high school seniors get a head-start on their college careers. *Id.* § 946.

185. The Early College Program requires the Secretary of Education to pay college tuition for students in grade 12 that apply and are accepted to the "Vermont Academy of Science and Technology," or "an early college program ... that is developed and operated or overseen by the University of Vermont, by one of the Vermont State Colleges, or by an accredited private postsecondary school located in Vermont and that is approved for operation by the Secretary." *Id.* § 946(a).

186. For students to be eligible under the statute, they must (1) "be enrolled as a full-time student in the institution receiving the payment for the academic year for which payment is made," (2) "not be enrolled concurrently in a secondary school operated by the student's district of residence or to which the district pays tuition on the student's behalf," and (3) "not be included in the average daily membership of any school district for the academic year for which payment is made" unless an exception applies that permits to student to be counted in the daily membership. *Id.* § 946 (c).

31

187.    Although the Early College Program statute does not impose any requirement on students during their junior (grade 11) year, the Agency of Education has created its own rule that for a student to be eligible, he or she "[m]ust have been a publicly funded student or in an approved Home Study program during their junior year."[4]

188.    Per the Agency of Education, like with Dual Enrollment, students at approved independent schools must be publicly tuitioned to participate in the Early College Program.

### 2.    Vermont's history of discriminating against religious schools.

189.    For decades, Vermont banned religious schools and their students from receiving public benefits, including town tuition and dual enrollment funds.

190.    The root of Vermont's religious school ban took several forms: state supreme court decisions interpreting the federal Establishment Clause; a state supreme court decision interpreting Vermont's Compelled Support Clause; Vermont Agency of Education regulations and guidance; and now, complete overhaul of Vermont's Town Tuition Program.

191.    But the result always stayed the same: private religious schools could not participate in Vermont's publicly funded education programs.

192.    For instance, in 1961, the Vermont Supreme Court held that the South Burlington Town School District, which did not have a high school, violated the

---

[4] *Early College*, Vermont Agency of Education, https://perma.cc/9BVB-KCSD.

JA.080

federal Establishment Clause by paying tuition for students to attend two Catholic high schools. *Swart v. S. Burlington Town Sch. Dist.*, 167 A.2d 514, 521 (Vt. 1961), *abrogated by Campbell v. Manchester Bd. of Sch. Directors*, 641 A.2d 352 (Vt. 1994).

193.    As a result, for the next 30-plus years, private religious schools could not receive tuition funds from sending school districts.

194.    In 1994, the Vermont Supreme Court abrogated *Swart* by applying the now-defunct *Lemon* test to hold that it did not violate the Establishment Clause for a public school district to reimburse tuition for a student who attended an out-of-state Episcopal school. *Campbell,* 641 A.2d at 361.

195.    After *Campbell,* sending towns briefly paid for tuition to religious schools.[5]

196.    That inclusion of religious schools didn't last long.

197.     Just five years later, in 1999, the Vermont Supreme Court held that it violated Chapter I, Article 3 of the Vermont Constitution—the "Compelled Support Clause"—for a public school board to pay town tuition funds to Mount Saint Joseph Academy, a religious school. *Chittenden Town*, 738 A.2d at 562.

198.    The Vermont Compelled Support Clause states that "no person ought to, or of right can be compelled to attend any religious worship, or erect or support any place of worship, or maintain any minister, contrary to the dictates of conscience." Vt. Const., ch. I, art. 3.

---

[5] School voucher programs based on individual private choice do not violate the Establishment Clause. *Zelman v. Simmons-Harris*, 536 U.S. 639, 663 (2002).

JA.081

199. The Vermont Supreme Court equated "religious worship" with "religious education" and concluded that it violated the Compelled Support Clause to pay tuition to religious schools unless there were "adequate safeguards against the use of such funds" for religious education. *Chittenden Town*, 738 A.2d at 532, 542.

200. For the subsequent two decades, the Agency of Education directed school districts to deny tuition payments under the Town Tuition Program for students who chose to attend religious schools.

201. Vermont simply categorically excluded all religious schools from public benefits, including the Town Tuition and Dual Enrollment Programs. *In re A.H.*, 999 F.3d at 103.

202. As a result, families in sending districts were banned from using town tuition funds at religious schools.

203. In 2021, however, the United States Court of Appeals for the Second Circuit held that Vermont's refusal to provide town tuition funding to religious schools was unconstitutional. *Id.* at 108.

204. The Second Circuit concluded that religious schools "have been deprived of a public benefit as a result of the state's and the school districts' decades-long policy of unconstitutional religious discrimination" and that religious schools were "entitled to [town tuition] funding to the same extent as parents who choose secular schools for their children, regardless of [their] religious affiliation or *activities.*" *Id.* (emphasis added).

34

JA.082

205.    The same year, the Second Circuit also held that excluding religious school students from the Dual Enrollment Program violated the First Amendment. *A.H. v. French*, 985 F.3d at 184.

206.    Then, in 2022, the Supreme Court decided *Carson v. Makin*, affirming that the government could not "exclude otherwise eligible schools on the basis of their religious exercise." 596 U.S. at 789. In *Carson,* the Supreme Court held that Maine's tuition assistance program, which was substantially the same as the Town Tuition Program, violated the Free Exercise Clause of the First Amendment. *Id.*

207.    Following those decisions, in 2022, Former Secretary French issued "guidance" to Vermont superintendents explaining that "[i]n light of the U.S. Supreme Court's decision in *Carson v. Makin*, ... [s]chool districts may not deny tuition payments to religious approved independent schools or religious independent schools that meet educational quality standards." Sep. 13, 2022 Guidance from Secretary French at 1, a true and accurate copy of which is attached as Exhibit 5.

208.    It took several federal lawsuits and a binding Supreme Court decision to force Vermont to treat religious schools equally in the Town Tuition and Dual Enrollment Programs.

209.    After years of discrimination, starting in the 2022–2023 academic year, religious schools—including Mid Vermont Christian—were finally able to participate in the Town Tuition and Dual Enrollment Programs.

210.    Religious schools' ability to participate was, again, short lived.

JA.083

### 3. After *Carson* and the *French* cases, Vermont concocts a new way to exclude religious schools.

211. Immediately after the *Carson* decision, several Vermont legislators and public officials publicly expressed disdain towards religious schools because Vermont could no longer exclude them from public funding.

212. For example, the same day *Carson* was decided, Rebecca Holcombe—Vermont's Secretary of Education from 2014 to 2018, former candidate for governor, and current state representative—ranted about the decision, complained that religious schools indoctrinate students, and compared the funding of religious schools to church and state relations in Afghanistan:

36

JA.084



JA.085

**Rebecca Holcombe** @RHolcombeVT · Jun 21, 2022

5/ We already have provisions in state law for statewide public school choice. In addition, private school "choice" districts have the right to designate a subset of schools, including private schools, to serve as the "public schools" for their district.

💬 2        🔁 1        ♡ 7        ᵢₗₗ        🔖 ⬆️

**Rebecca Holcombe** @RHolcombeVT · Jun 21, 2022

6/ But when school districts don't do this, taxpayers in other districts have no choice about the fact that their tax dollars now fund religious indoctrination and stigmatization of LGTBQ people (including in schools that exclude students).

💬 2        🔁 4        ♡ 10        ᵢₗₗ        🔖 ⬆️

**Rebecca Holcombe** @RHolcombeVT · Jun 21, 2022

7/ I support people's freedom to practice their own beliefs. I also support Vermont's constitutional protection of freedom of conscience, including freedom from compelled support of religion.

💬 1        🔁 1        ♡ 11        ᵢₗₗ        🔖 ⬆️

**Rebecca Holcombe** @RHolcombeVT · Jun 21, 2022

8/ But I grew up in places like Afghanistan, and saw first hand the risks of mixing church and state. Separation of church and state protects our ability to work together on shared civic purposes, without hopelessly entangling government in people's individual consciences.

💬 1        🔁 2        ♡ 12        ᵢₗₗ        🔖 ⬆️

**Rebecca Holcombe** @RHolcombeVT · Jun 21, 2022

9/ If that weren't enough, over & over, I'm hearing people say that relentlessly rising property taxes threaten their ability to stay in their homes.
Sending our education dollars out of state and to schools with selective enrollment & no public mission makes that problem worse.

💬 2        🔁 1        ♡ 12        ᵢₗₗ        🔖 ⬆️

**Rebecca Holcombe** @RHolcombeVT · Jun 21, 2022

10/ It reduces how much we can spend right here at home in our communities on inclusive schools that create a bright future for all our kids.
Are we in this together or not?
VT can't have it both ways.
Public dollars should support public purposes.
#Epluribusunum
#Bettertogether

38

JA.086

Rebecca Holcombe (@RHolcombeVT), X (June 21, 2022, at 11:08 ET),

https://x.com/RHolcombeVT/status/1539264005327536128.

213.    She also retweeted and thanked Rory Thibault—then a candidate for

Vermont Attorney General—who unabashedly tweeted that "[p]ublic education

funds have no place supporting religious schools that discriminate or push bigotry"

and said he would stand with Holcombe "to fight this decision." Rebecca Holcombe

(@RHolcombeVT), X (June 21, 2022, at 10:08 ET),

https://x.com/RHolcombeVT/status/1539430002286010370.

214.    This wasn't Holcombe's first time attacking religious schools.

215.    A few days after the Second Circuit ordered the payment of town

tuition funds to students at Rice Memorial High School, Holcombe personally

called-out several Christian schools, including Mid Vermont Christian, and implied

that funding such schools was part of a "national effort to get taxpayers to fund

private, religious education." Rebecca Holcombe (@RHolcombeVT), X (Jan. 28, 2021,

at 1:35 ET), https://x.com/RHolcombeVT/status/1354860545166499840.

216.    Holcombe further ridiculed religious schools about their sincerely held

beliefs on marriage and sexuality. In October 2022, she bragged on X that she

"reminded two VT school board members in districts that don't operate high schools

that they DON'T have to pay vouchers to homophobic schools"—meaning religious

schools that hold fundamental Christian beliefs about marriage. Rebecca Holcombe

(@RHolcombeVT), X (Oct. 11, 2022, at 10:17 ET),

https://x.com/RHolcombeVT/status/1580019745319157762.

39

JA.087

217.    Two days later, she again tweeted her idea that school districts could designate certain schools to receive town tuition funds, instead of "pay[ing] vouchers to homophobic or exclusionary schools." Rebecca Holcombe (@RHolcombeVT), X (Oct. 13, 2022, at 7:30 ET), https://x.com/RHolcombeVT/status/1580702423613685763.

218.    Others backed Holcombe's hostility towards religious schools.

219.    State Senator Ruth Hardy also said that religious schools shouldn't receive any public funds and explained how *Carson* made it more difficult to exclude religious schools:

> Unfortunately, because of the actions of the United States Supreme Court [in *Carson*], they have drawn certain lines in the sand that *make it very, very difficult to parse between different types of private schools*. ... So we are in a position where we really, really need to say that we are only providing taxpayer public funds to public schools.[6]

220.    While running for office in 2024, Senator Hardy also unequivocally said that Vermont "needs to stop" "subsidizing private and religious schools with public tax dollars."[7]

221.    After *Carson* and the *French* cases, Vermont officials sought to find an alternative way to exclude religious schools from public benefits.

---

[6] Howard Weiss-Tisman, *Vermont school choice system scrutinized as Legislature responds to U.S. Supreme Court decision*, https://perma.cc/WYD7-B8S5 (emphasis added).

[7] Ruth Hardy, VTDigger, https://perma.cc/GLX6-KDAW.

JA.088

222. The next effort involved changes to Rule 2200, which sought to again withhold funding from religious schools because of their religious beliefs and exercise.

223. The revised rule was a direct response to *Carson* and *French.*

224. This time, instead of barring religious schools from the Town Tuition and Dual Enrollment Programs simply because of their religious identity, the State imposed new nondiscrimination strings, via Rule 2200, to schools seeking approved independent status.

225. The State made compliance with the Vermont Public Accommodations Act and the Vermont Fair Employment Practices Act a condition for obtaining approved independent school status.

226. Specifically, schools applying for initial approval or renewal as approved independent schools had to provide in their application:

> "(1) A statement of nondiscrimination, posted on the school's website and included in the school's application materials, that is consistent with the Vermont Public Accommodations Act ... and the Vermont Fair Employment Practices Act"; and

> "(2) An assurance, signed by the Head of School, that the school complies with the Vermont Public Accommodations Act in all aspects of the school's admissions and operations."

Vt. Admin. Code 7-1-3:2226.6 (2022) (amended July 4, 2024).

227. And to participate in the Town Tuition Program, the State Board had to find that "[t]he school substantially complie[d] with all statutory requirements for approved independent schools and the Board's rules for approved independent

41

schools including nondiscrimination in admissions and operations." *Id.* § 3:2227.8 (2022).

228.   The Vermont Public Accommodations Act provides that "[a]n owner or operator of a place of public accommodation ... shall not, because of the ... marital status, sex, sexual orientation, or gender identity of any person, refuse, withhold from, or deny to that person any of the accommodations, advantages, facilities, and privileges of the place of public accommodation." 9 V.S.A. § 4502(a).

229.   And the Vermont Fair Employment Practices Act prohibits, among other things, employers from discriminating against employees or potential employees "because of ... religion ... sexual orientation, [and] gender identity." 21 V.S.A. § 495.

230.   The State thus required Mid Vermont Christian to comply with the Vermont Public Accommodations Act's and Fair Employment Practices Act's prohibition on religion, sexual orientation, and gender identity discrimination in its operations, admissions, and employment in order to receive approved independent status. [8]

---

8 Mid Vermont Christian disputes that it is a place of public accommodation, as it is not a school "offered to the general public." 9 V.S.A. § 4501. Instead, the services it provides are customized and selective in nature. *Fulton v. City of Phila.*, 593 U.S. 522, 539 (2021). Further, even if applicable to Mid Vermont Christian, the statute does not apply when the health or safety of others is at risk. 9 V.S.A. § 4502(h). Such was the case here. And further, the law contains numerous categorical exemptions. See 9 V.S.A. § 4502(d) (permitting small lodging facilities to discriminate based on sex or marital status); 9 V.S.A. § 4502(l) (exempting religious organizations with respect to weddings). In addition, the school disputes that it is

42

JA.090

231.    Consequently, Mid Vermont Christian had to affirmatively agree not to "discriminate" on the basis of religion, sexual orientation, or gender identity as a condition to receiving public benefits.

232.    The State knew that many, if not all, religious schools would not be able to affirm compliance with these laws because they had religiously-based policies that conflicted with them.

233.    After the 2022 changes to Rule 2200 were finalized, each school seeking initial approval or renewal as an independent school was "required to affirm compliance with [these new] provisions" by signing an addendum to their application. *See* January 5, 202[3] Mid Vermont Christian Addendum for Independent School Applications, a true and accurate copy of which is attached as Exhibit 6.

234.    To clarify that Mid Vermont Christian would continue to adhere to its religious beliefs, Mid Vermont Christian signed the Addendum, but with the following amendment:

> The Mid Vermont Christian School is signing this form with the understanding that it must be read consistent with existing law and the U.S. and Vermont Constitutions. As a religious organization, the school has a statutory and constitutional right to make decisions based on its religious beliefs, including hiring and disciplining employees, associating with others, and in its admissions, conduct, and operations policies and procedures. By signing this form, the Mid Vermont Christian School does not waive any such rights. To the

---

subject to the Fair Employment Practices Act, as it is a religious educational institution. See 21 V.S.A. § 495(e).

43

> extent Rule 2200's requirements conflict with any of the
> school's beliefs, including on marriage and sexuality, the
> school has not included that language in its handbook or
> online, nor can it affirm that particular aspect of the
> Vermont Public Accommodations Act.

*Id.*

235.   A few weeks after Mid Vermont submitted its Application Addendum, Defendant Nichols offered "public statements" that "evinced hostility toward Mid Vermont's religious beliefs." *Mid Vermont Christian,* 151 F.4th at 94.

236.   There, "Nichols testified before Vermont's House Education Committee just two days after Mid Vermont's [basketball game] forfeit—but three weeks before the VPA announced the expulsion. Advocating for a bill that would block private, religious schools from receiving public funding, Nichols urged the House Education Committee to 'do the right thing' and pass 'legislation that doesn't continue to allow misuses of taxpayer dollars to effectively discriminate against many of our children.' In so doing, Nichols offered 'official expressions of hostility to religion' that were 'inconsistent with what the Free Exercise Clause requires.' *Id.* (citations omitted).

237.   Defendant Nichols further "listed examples of how religious schools 'don't follow the same rules as public schools, at least on the most important issues.'" *Id.* (citation omitted). Referencing Mid Vermont's Application Addendum, Nichols "mentioned that 'two religious schools have refused to sign an assurance that they would follow State Board rules regarding non-discrimination,' noting that 'it doesn't take a rocket scientist to see that these schools and their far right supporters are gearing up for another lawsuit.'" *Id.* (citation modified).

JA.092

238. After receiving Mid Vermont Christian's Addendum, the Agency stated that to be approved Mid Vermont Christian had to submit an Addendum without revision. Defendant Samuelson further stated that Mid Vermont Christian was not compliant with Agency rules and told the school it had to choose what its next course of action was going to be.

239. In response, Mid Vermont Christian sent the State Board a letter explaining the inapplicability of the Vermont Public Accommodations Act and why it included language on the assurance form. The Board then refused to make a decision on Mid Vermont's application, resulting in the denial of Mid Vermont Christian as an approved independent school capable of participating in the State's Town Tuition Program, Dual Enrollment Program, or any public benefits associated with that distinction.

240. This denial was confirmed via email on July 6, 2023, when the Agency sent Mid Vermont Christian a memorandum (dated April 24, 2023) and form to be completed so that it could be considered a "recognized school" (and therefore able to operate) for the 2023-24 school year.

241. Recognized schools are not allowed to participate in the State's public benefits programs, including the Town Tuition or Dual Enrollment Programs.

242. Mid Vermont Christian told the Agency that it should be granted *approved* independent school status so that it could participate in the Town Tuition and Dual Enrollment Programs.

JA.093

243.   But on August 3, 2023, the Agency of Education told Mid Vermont that it "consider[ed] the school for 2023-2024 to be a Recognized Independent School … ." Agency of Education August 3, 2023 Status Letter, a true and accurate copy of which is attached as Exhibit 7.

244.   The Agency refused to renew Mid Vermont Christian's status as an approved independent school because Mid Vermont Christian's religious beliefs and practices prevented it from agreeing to comply in full with Rule 2200's nondiscrimination strings.

245.   Rule 2200's nondiscrimination strings required Mid Vermont Christian to adhere to the Vermont Public Accommodations Act and Vermont Fair Employment Practices Act in all aspects of the school's admissions and operations.

246.   To comply with the new requirements, Mid Vermont Christian would have had to change its policies in a way that conflict[ed] with its religious beliefs and would have had to hire individuals who do not share and live out its religious beliefs.

247.   Mid Vermont Christian has employment, admissions, and internal operations policies that are based on Mid Vermont Christian's religious beliefs regarding marriage, sexuality, and gender. For example, employees of Mid Vermont Christian must agree with and abide by the school's beliefs, including those on marriage and sexuality. And, while students who are questioning their sexuality and gender are welcome to attend Mid Vermont Christian, the school expects all students to adhere to all school policies, including the school's policies on bathroom

46

JA.094

and locker room usage, pronoun usage, dress codes, and participation in athletics that are based on Mid Vermont Christian's religious beliefs.

248.   The school could not change its policies or post the State's desired policies without violating its religious beliefs and free speech rights.

249.   Mid Vermont Christian raised the issue and requested a religious exemption from the Agency of Education.

250.   Yet the Agency refused to grant Mid Vermont Christian a religious exemption to Rule 2200's nondiscrimination strings.

251.   Mid Vermont Christian was thus denied designation as an approved independent school eligible to receive public benefits solely because Mid Vermont Christian would not violate its religious beliefs on marriage, sexuality, and gender.

252.   Mid Vermont Christian satisfied all other conditions and requirements necessary to obtain approved independent school status.

253.   As a result of Mid Vermont's demotion to a Recognized Independent School, in October 2023 the Hartland and Waits River Valley School Districts required Mid Vermont Christian to return previously sent town tuition funds for several students.

254.   The School Districts said they asked for "clear guidance from the [Agency] on this matter," but upon information and belief, the Agency never responded to the School Boards or their superintendents before this case was filed. *See* Gawel and Bourne October 4, 2023 Emails to Vicky Fogg, true and accurate copies of which are attached as Exhibit 8.

JA.095

255.   Mid Vermont Christian complied and returned the tuition funds.

256.   The Agency never responded to Mid Vermont Christian before this case was filed.

257.   Because the State demoted  Mid Vermont Christian, the school was denied public funding and had to file this lawsuit so it could receive that funding without surrendering its religiously-based policies.

**4.       Developments since the first Complaint.**
***The State backtracks after getting sued and then changes Rule 2200.***

258.   After Mid Vermont sued, the State took a litigation tactic to undo its unconstitutional actions.

259.   Over a month after Mid Vermont Christian filed this case, the Agency of Education suddenly sent Mid Vermont Christian a letter saying that because the Board of Education never officially acted on its approved independent school application, the school therefore remained eligible to receive public tuition funds until the Board acted on the application. *See* January 4, 2024 AOE Letter, a true and accurate copy of which is attached as Exhibit 9.

260.   This was the first time Mid Vermont Christian heard anything about its approval status since the Agency of Education told Mid Vermont in August 2023 that it was a "Recognized Independent School" rather than an Approved Independent School.

261.   Defendant Samuelson then testified via declaration in this case that she expected the Board of Education to act on Mid Vermont's application after it received a recommendation from the Agency of Education, likely in "late spring or

48

JA.096

early summer [of 2024]." *See* Samuelson Declaration at 2, a true and accurate copy of which is attached as Exhibit 10.

262.    Despite these in-Court representations, the Vermont Agency of Education never made a subsequent recommendation to the Board of Education on Mid Vermont Christian's application for approved independent status.

263.    The Vermont Board of Education never acted on Mid Vermont Christian's January 2023 application for approved independent status.

264.    Instead, the State stalled until it promulgated a new Rule 2200 series in July 2024.

265.    Under the revised rule, approved independent schools must "meet[ ] the requirements of Sections 2223 (Requirements to Operate as an Approved Independent School) and 2224 (Application and Reapplication for Approval; Approval Process)" of Rule 2200. Vt. Admin. Code 7-1-3:2222.

266.    The 2024 version of Rule 2200 also changed the eligibility requirements for an approved independent school to receive public tuition. Now, approved independent schools must also "meet[ ] the requirements of Section 2229 (Approval to Receive Public Tuition; Special Education Approval and 2231 (Written Agreements Required." *Id.* § 7-1-3:2222.

267.    The 2024 version of Rule 2200 still requires schools to comply with the Vermont Public Accommodations and Fair Employment Practices Acts, but it contains a new *constitutional qualifier*: a school must only comply "to the fullest extent consistent with its constitutional and statutory rights." *Id.* § 7-1-3:2223.2.1;

49

*see also id.* § 7-1-3:2223.4(c) (requiring school assurance that it complies with nondiscrimination provisions "to the fullest extent consistent with the school's statutory and constitutional rights").

268.   Although this constitutional qualifier was a welcome sign for Mid Vermont Christian, because the Board never made a decision on approval, it remains unclear as to its precise meaning of what it permits.

269.   Depending on the meaning of the constitutional qualifier, Mid Vermont Christian meets all of the requirements under Rule 2200 to receive public tuition.

270.   And Mid Vermont Christian meets the requirements of Sections 2229 (Approval to Receive Public Tuition; Special Education Approval) and 2231 (Written Agreements Required), making it eligible under Rule 2200 for public tuition.

271.   In fact, the Agency's February 2025 Independent School Directory listed Mid Vermont as an "approved independent school eligible for public funding." *See* February 2025 & September 2025 Independent School Directories at 8, true and accurate copies of which are attached as Exhibit 11.[9]

272.   In March 2025, the Agency of Education required independent schools to submit a new application for approval.

273.   Mid Vermont Christian submitted that application by the deadline.

---

[9] The Agency published a new Independent School Directory in September 2025 after the passage of Act 73. Both the February and September Directories are included in Exhibit 11.

274. As it did with its prior application addendum in January 2023 (Exhibit 6), Mid Vermont Christian submitted a "clarifier" with its new application in March 2025 to reserve its rights.

275. Mid Vermont's clarifier explained that the school complied with Rule 2200—and the underlying nondiscrimination laws—"to the full extent consistent with its constitutional and statutory rights." Mid Vermont 2025 Application Clarifier, a true and accurate copy of which is attached as Exhibit 12.

276. To date, Mid Vermont Christian has not received any communication from either the Agency or Board of Education about its recent (March 2025) application for independent school approval.

277. Before 2022, Mid Vermont Christian was excluded from the Town Tuition Program for decades because of Vermont's prior policy against funding "religious schools." And it took the filing of this federal lawsuit in November 2023 for Mid Vermont to receive town tuition funding for the 2023–2024 school year.

278. Mid Vermont Christian was finally hopeful, after years of discrimination and litigation, that it would be able to equally participate in the Town Tuition Program without having to abandon its religious character, status, or practices.

279. But that hope was quickly eviscerated when Vermont passed Act 73—which excludes all religious approved independent schools in the state from receiving public funding.

JA.099

***Act 73 creates a religious gerrymander and discriminates against religious approved independent schools in Vermont.***

280.   In the wake of *Carson*, *French*, and this lawsuit, the State wasted no time crafting yet another workaround to bar religious schools from receiving public funding.

281.   This time, the State did so by overhauling the entire Town Tuition Program in Act 73, which was signed by Governor Phil Scott on July 1, 2025.

282.   Act 73 changes the Town Tuition Program to exclude religious schools from town tuition funds.

283.   For instance, several legislators made it publicly—and unequivocally—known that they sought to prevent religious schools from receiving such funds.

284.   In late 2024, the Friends of Vermont Public Education—a group opposed to funding for private schools—sent a questionnaire to candidates for the Vermont legislature. The questionnaire asked, "Should taxpayer money fund religious schools?"[10]

285.   Nearly every candidate that responded answered in the negative, despite *Carson* and the *French* cases holding that religious schools cannot be excluded from public benefits.

286.   For example, Representative Angela Arsenault said that "the Supreme Court ruling in Carson v. Makin complicates things for us given our tuitioning

---

[10] *Candidate Questionnaire*, Friend of Vermont Public Education, https://perma.cc/WYM6-AFM2.

52

JA.100

system in Vermont. We need to figure out how to stop sending public dollars to religious schools" that followed their religiously-based policies. *Supra*, n.10.

287.    Candidate Kate McCann's answer was loud and clear: "Hell No." *Supra*, n.10.

288.    Representative Rebecca Holcombe—who previously bashed the *Carson* decision and religious schools, *supra* ¶ 212—responded "absolutely not" and again insulted the Court and religious schools. Referring to *Carson*, she exclaimed that "the radical US Supreme Court is threatening the freedom of conscience of VT taxpayers" and the legislature needed "to move aggressively to protect the freedom of conscience of taxpayers." And she said funding religious schools was the same as "funding homophobia" and "discrimination." *Supra*, n.10.

289.    Representative Troy Headrick also answered "no" and foreshadowed the legislature's gameplan to exclude religious schools, which ultimately would be accomplished by Act 73: "We must amend the process by which religious schools have been included as recipients of Vermont's Town Tuition Program. Given recent federal distinctions, this may not be a straightforward task." *Supra*, n.10.

290.    Knowing the State couldn't blatantly exclude just religious schools, the legislature worked to gerrymander them out by re-defining which approved independent schools could receive public tuition.

291.    Before Act 73, a sending district could pay tuition "to a public school" or "*an approved independent school*" among other options. 16 V.S.A. § 828 (2024) (emphasis added).

JA.101

292. This was consistent with Vermont's mandate that school districts either "maintain one or more approved high schools" or pay "tuition to a public high school, *an approved independent high school*, or an independent school meeting education quality standards, to be selected by the parents or guardians of the student, within or outside the State." 16 V.S.A. § 822 (emphasis added).

293. But under Act 73, a school district can only pay tuition to: "(1) a public school located in Vermont; (2) an approved independent school" *that meets certain factors* (*see infra* ¶ 295); (3) "an approved independent school meeting education quality standards; (4) a tutorial program approved by the State Board; (5) an approved education program; (6) a public school located in another state; (7) or a therapeutic approved independent school located in Vermont or another state or country that is approved under the laws of that state or country." Act 73, § 21(a)(1), (2), (3), (4), (5), (6), and (7).

294. In sum, Act 73 no longer permits all "approved independent schools" to receive public tuition.

295. Act 73 adds *new*, *additional* factors that approved independent schools must meet to receive public tuition. An approved independent school seeking to participate in the Town Tuition Program must now:

> (A) be in Vermont;
>
> (B) been approved as an independent school on or before July 1, 2025;
>
> (C) be "located within either:

JA.102

> (i) a supervisory district that does not operate a public school for some or all grades as of July 1, 2024; or
>
> (ii) a supervisory union with one or more member school districts that does not operate a public school for some or all grades as of July 1, 2024";

(D) had at least 25 percent of its student enrollment composed of publicly tuitioned students for the 2023–2024 school year; and

(E) comply with the minimum class size requirements of 16 V.S.A. § 165(a)(9), unless granted a waiver from the State Board.

*Id.* § 21(a)(2)(A), (B), (C), (D), and (E).

296.    Subsection (a)(2)(C) thus imposes a *geographic restriction* on approved independent schools. To be eligible, the school must effectively be located within a "non-operating" school district or supervisory union that contains a "non-operating" school district—*i.e.*, a district that does not operate a public school for some or all grades.

297.    The geographic restriction eliminates approved independent schools located in Vermont's more heavily-populated areas.

298.    Act 73's geographic restriction excludes most religious schools in Vermont because they are located in more-heavily populated areas, such as Burlington and Rutland. And the geographic restriction benefits the large, secular schools located in Vermont's more-rural areas, such as large private academies like Burr & Burton Academy, St. Johnsbury Academy, Lyndon Institute, and Thetford Academy.

299.    For example, Burr and Burton Academy, which enrolls over 700 high school students, is located in the Bennington-Rutland Supervisory Union—a

55

JA.103

supervisory union which contains three non-operating school districts. Many of Burr and Burton Academy's students are public funded and the Academy advertises that families residing in sending districts "do not need any form of financial aid as the sending town tuition is paid through state property taxes."[11]

300.   Similarly, St. Johnsbury Academy enrolls over 600 publicly funded students (over 900 total) and the Lyndon Institute, over 300 publicly funded students (over 400 total). Both are located in non-operating school districts.[12]

301.   Subsection (a)(2)(D) imposes a *public-funding floor*. To be eligible, 25% of an independent school's enrollment during the 2023–2024 school year must had been publicly funded students.

302.   The public-funding floor eliminates approved independent schools who enroll smaller ratios of publicly tuitioned students, including the religious schools that just recently became eligible in 2022.

303.   The public-funding floor benefits the approved independent schools that have been able to participate in the Town Tuition Program for several years.

304.   The 25% public-funding floor is an arbitrary line that does not further any legitimate governmental purpose.

---

[11] *Tuition at Burr and Burton*, Burr & Burton Academy, https://perma.cc/J6C5-VCVK.

[12] Alison *Novak, Independent Schools Rebuff School Districts' Request for a Tuition Break*, Seven Days, https://perma.cc/9FGG-XDB7.

JA.104

305.    The public-funding floor was created by Vermont legislators so that certain, favored, secular approved independent schools would continue to be able to receive town tuition funding and religious schools could not.

306.    For example, the first version of the bill passed by the Vermont House of Representatives contained a requirement that approved independent schools needed at least 51% of their student enrollment to be composed of publicly tuitioned students to be eligible for town tuition funding.

307.    But the public-funding floor was lowered to 25% by a Conference Committee, which included two senators with ties to secular approved independent schools that remain eligible for funding under Act 73.

308.    One of those senators, Seth Bongartz (the Chair of the Senate Education Committee), was a longtime board member at Burr and Burton Academy—an eligible school under Act 73.

309.    Another senator on the Conference Committee, Scott Beck (the Senate minority leader), is an educator, dorm counselor, and coach at St. Johnsbury Academy—an eligible school under Act 73.

310.    In fact, one organization filed ethics complaints with the Vermont Senate against Bongartz and Beck, claiming that they used their positions on the

57

Conference Committee to ensure their schools received favorable treatment under the new law.[13]

311.   The ethics complaint claimed that Bongartz "fought" to lower the public funding floor from the House bills' 51% down to 25%, to ensure certain approved independent schools remained eligible. *Supra*, n.13.

312.   None of Vermont's religious schools satisfy the public funding floor.

313.   That's partly because religious schools in Vermont were categorically barred from participating in the Town Tuition Program for over two decades until the Second Circuit finally ended that discrimination in *In re A.H.*, 999 F.3d 98.

314.   Because religious schools could not participate in the Town Tuition Program until the 2022–2023 academic year, none were able to build-up their enrollments to reach 25% publicly tuitioned students just one year later, for the 2023–2024 year.

315.   Knowing that religious schools would not be able to meet the 25% public-funding floor in just their second full year of eligibility, Vermont legislators and officials selected 2023–2024 as the year in which schools had to satisfy the public-funding floor.

---

[13] Corey McDonald, *Complaints allege Vermont senators with private school ties violated ethics rules during education bill negotiations*, VT Digger (June 30, 2025), https://perma.cc/J8F7-N3JQ.

316.    For example, some religious schools are located in non-operating districts/unions and thus satisfy the geographic restriction. But they still are excluded because they do not meet Act 73's public-funding floor.

317.    Lastly, subsection (A)(2)(E) imposes a *class size requirement*. To be eligible schools must comply with the following minimum class size averages: 10 students for first-grade; 12 students for grade two through five; 15 students for grades six through eight; and 18 students for grades nine through 12. Multiage classrooms for grades kindergarten through eight are also limited to two grade levels per classroom. *See* 16 V.S.A. § 165(a)(9)(A).[14]

318.    But the Board of Education has a mechanism for granting waivers from the class size requirement "due to geographic isolation" or if the school develops "an implementation plan" to meet the requirement. *Id.* § 165(a)(9)(B).

319.    The class size requirement thus benefits large approved independent schools, like the historic academies, and penalizes Vermont's religious schools, which typically have smaller class sizes.

320.    The combination of the geographic restriction, public-funding floor, and class size requirement eliminates any possibility of religious approved independent schools being able to receive town tuition funding.

---

[14] The class size requirement is effective July 1, 2026.

59

JA.107

321.   The geographic restriction, public-funding floor, and class size requirement operate as a de facto religious exclusion.

322.   Act 73 thus creates a gerrymander of religious schools, ensuring that they can no longer receive public tuition funds.

323.   Fifteen religious schools were eligible to receive town tuition funds during the 2024–2025 school year. *See* Exhibit 11 at 3–13 (listing fifteen religious schools as eligible for public funding as of February 2025).

324.   Upon information and belief, 12 religious schools actually received town tuition funds during the 2024–2025 school year.

325.    Now, because of Act 73, *none* of those 15 religious schools, including Mid Vermont Christian, are eligible to receive funding for the 2025–2026 school year and beyond.[15] *See* Exhibit 11 at 34–40 (listing the same fifteen religious schools as ineligible to receive public funds as of September 2025).

326.   Yet 45 secular independent schools remain eligible. *See id.* at 2–33.

327.   This includes 18 favored, secular approved independent schools that remain eligible.[16] *Id.*

328.   This also includes 27 secular "therapeutic approved independent" schools, which are automatically eligible for tuition funding and exempt from Act

---

[15] Act 73 grandfathers-in students that received town tuition funds for the 2024–2025 school year and students enrolled by June 30, 2025. Those students can continue to receive such funding at their current school until they graduate. Act 73, § 22. Mid Vermont Christian has two grandfathered students.

[16] *Act 73 of 2025*, Vermont Agency of Education, https://perma.cc/UL5Z-CNPJ.

JA.108

73's geographic restriction, public-funding floor, and class-size requirements. *Id.*; *see also* Act 73, § 21(a)(7).

329.    Moreover, independent schools meeting education quality standards, tutorial programs approved by the Board of Education, approved education programs, and public schools in other states, all remain eligible for tuition funding and are exempt from Act 73's geographic restriction, public-funding floor, and class-size requirements. Act 73 § 21(a)(3), (4), (5), and (6).

330.    At least four approved education programs and four approved tutorial programs thus remain eligible for public funding. *See* Exhibit 11 at 41–42.

331.    Accordingly, of the approved independent schools that were eligible for public tuition as of February 2025, 45 secular schools remain eligible; whereas all 15 religious schools are now ineligible.

332.    The chart below summarizes Act 73's sweeping and gerrymandered impact on Vermont's religious schools:

|  | Pre-Act 73 (as of February 2025) | Post-Act 73 |
|---|---|---|
| Religious Schools Eligible for Public Funding | 15 | 0 |
| Secular Schools Eligible for Public Funding | 61 | 45 |
| Approved Education Programs Eligible for Public Funding | 5 | 4 |
| Approved Tutorial Programs Eligible for Public Funding | 4 | 4 |

JA.109

333. Act 73 targets and intentionally excludes Vermont's religious schools from being able to receive public funding.

334. The intent and design to exclude religious schools through Act 73 was purposeful, intentional, and invidious.

335. Mid Vermont Christian cannot satisfy Act 73's geographic restriction, public-funding floor, and class size requirement and is now forever barred—absent a change in law or judicial relief—from receiving town tuition funds.

336. And because religious schools (including Mid Vermont) are now excluded from town tuition funds—via Act 73—their students are automatically barred from participating in the Dual Enrollment Program because the payment of town tuition is a gateway to participating in Dual Enrollment. *See* 16 V.S.A. § 944(b)(1)(A)(III) (students are eligible if they are enrolled in "an approved independent school in Vermont to which the student's district of residence pays publicly funded tuition on behalf of the student").

337. What's more, the Agency of Education has now barred religious school students (including those at Mid Vermont) from being able to participate in the Early College Program.

338. The Agency has imposed its own rule—not found in the underlying statute, 16 V.S.A. § 946, nor Agency regulations—that students can only participate

62

JA.110

in the Early College Program if they were a "publicly funded student or in an approved Home Study program during their junior year."[17]

339.   Because Act 73 now bars religious schools from receiving public tuition funds, their students are also prohibited from participating in the Early College Program.

340.   Thus Act 73's religious exclusion also causes religious school students to be excluded from both the Dual Enrollment and Early College Programs.[18]

341.   In sum, Act 73 gerrymanders and excludes Mid Vermont Christian (and all other religious schools) from at least three public benefit programs: the Town Tuition, the Dual Enrollment, and the Early College Programs.

342.   Yet at least 45 secular schools—and their students—can continue to receive these public benefits.

***Excluding Vermont's religious schools from public benefits is not rationally related to, and does not advance, Act 73's purpose.***

343.   Act 73's stated goal is "[t]o ensure each student is provided substantially equal educational opportunities that will prepare them to thrive in a 21st-century world." Act 73, § 1(b)(1); *see also id.* § 1(a)(4) ("the State's responsibility to ensure substantially equal educational opportunities for all Vermont students.").

---

[17] *Early College*, Vermont Agency of Education, https://perma.cc/9BVB-KCSD.

[18] In fact, the Agency of Education deemed at least two Mid Vermont students ineligible for the Early College Program for the 2025–2026 school year. But because their university sent them paperwork saying that they were admitted into the Early College Program, the university decided to cover their tuition once the Agency of Education denied Early College funding for those students.

JA.111

344. To reach that goal, the Vermont legislature enacted Act 73 with the "intent ... to work strategically, intentionally, and thoughtfully to ensure that each incremental change made to Vermont's public education system provides strength and support to its only [state-] constitutionally required governmental service." *Id.* § 1(b)(1).

345. The Act further lists other legislative "intents" that will purportedly improve Vermont's education system. *See id.* § 1(b).

346. None of the other listed "intents" pertain whatsoever to the quality of education offered by approved independent schools or religious schools.

347. In fact, the term "approved independent schools" does not appear in Section 1 of Act 73 at all.

348. Nevertheless, Section 21 results in the exclusion of all religious approved independent schools from Vermont's public benefit programs.

349. Act 73's gerrymandering and exclusion of religious schools does not remotely advance or further the law's purpose of providing "substantially equal educational opportunities." *Id.* § 1(b)(1).

350. Act 73's gerrymandering and exclusion of religious schools is not even rationally related to the law's purpose of providing "substantially equal educational opportunities." *Id.*

351. In fact, Section 21 undermines Act 73's stated purpose because it results in *fewer* educational opportunities being available to many Vermont students.

JA.112

352. Before Act 73, students in sending districts *had the option and choice* to decide whether to attend a public school, a secular approved independent school, or a religious approved independent school.

353. Now, due to Act 73, those same students have fewer options.

354. Religious schools are no longer an option for many students.

355. Excluding all religious schools, effective immediately, is not an "incremental change" to Vermont's education system and does not "strength[en] and support" the education of Vermont students. *Id.* § 1(b)(1).

356. Excluding all religious schools from Vermont public benefits is not rationally related, let alone narrowly tailored, to accomplishing Act 73's purposes.

357. Act 73's de facto religious exclusion cannot withstand any level of judicial scrutiny.

**B.    Vermont also excluded Mid Vermont Christian and its athletes from Vermont sports because of their religious beliefs and exercise.**

358. Not only has Vermont excluded Mid Vermont Christian from the Town Tuition Program because of Mid Vermont Christian's religious beliefs and practices, but it has also excluded Mid Vermont Christian from all middle school and high school sports for the same reason.

359. In May 2023, the VPA expelled Mid Vermont Christian from participating in *any* middle school and high school sports, thereby punishing the school and the 12- to 18-year-old student-athletes and their families, simply because they and their school exercise their religious beliefs.

JA.113

### 1. The VPA governs Vermont sports and academic competitions.

360.   Participation in VPA sports and academic competitions is limited to teams from VPA member schools. *See* VPA Athletic Policies at 8 a true and accurate copy of which is attached as Exhibit 13.[20] Only students enrolled in VPA member schools can participate in VPA sports and other activities.

361.   Accordingly, if Mid Vermont Christian is not a member of the VPA, the school and its students cannot participate in any VPA sports or academic competitions. That includes students at Mid Vermont Christian who historically were able to join teams at VPA member schools in sports that Mid Vermont Christian did not offer.

362.   Students at VPA member schools whose schools do not offer particular sports can participate in such sports at other VPA member schools through the VPA's "Member-to-Member Program." *See id.* 42–45.

### 2. The VPA's policies penalize Mid Vermont Christian and its students for their religious beliefs.

363.   The VPA's "Commitment to Racial, Gender-Fair, and Disability Awareness" policy states that the VPA and its member schools "are committed to creating an environment in our activities and programs that promotes respect for

---

[20] The VPA updated its Athletic Policies since the initial filing of this case in November 2023. However, the relevant VPA policies at issue have not changed. Both the prior and current versions are attached as Exhibit 13.

66

JA.114

and appreciation of racial, gender, sexual orientation, religious and ethnic differences, and is disability aware." *Id.* at 4–5.

364.    The VPA's "Policy on Gender Identity" also states that "[t]he VPA is committed to providing all students with the opportunity to participate in VPA activities in a manner consistent with their gender identity." *Id.*.

365.    This policy is based on "the Vermont Agency of Education Best Practices For Schools For Transgender and Gender Nonconforming Students" (*see* Ex. 4) and the Vermont Public Accommodations Act. *Id.*

366.    That VPA policy prohibits "discrimination based on a student's actual or perceived sex and gender." *Id.*

367.    The VPA defines "gender identity" as "an individual's actual or perceived gender identity ... regardless of the individual's assigned sex at birth." *Id.*

368.    The VPA also enforces the Vermont Public Accommodations Act against member schools, and compliance with the Vermont Public Accommodations Act is a requisite for membership. *See id.* (pointing to the Vermont Public Accommodations Act as prohibiting discrimination, including "based on a student's actual or perceived sex and gender.").

369.    The VPA policies also require that sports seasons be scheduled to "maximize gender equity." *Id.* at 35.

370.    Collectively, these VPA policies are referred to as the VPA's "gender identity policies."

371.    The VPA also has a "girls fairness policy" that provides, in part:

67

JA.115

> *Interscholastic athletics involving mixed (boys/girls) competition is prohibited* except in those instances where the member school does not offer equivalent (same) activities for girls. ...
>
> *Therefore, boys shall not try out for traditional girls' sports and be eligible for state competition*. For purposes of this policy, the following activities are identified as girl's sports: field hockey, softball, girls soccer, girls basketball, girls golf, girls gymnastics, girls hockey, girls lacrosse, girls alpine and nordic skiing, girls tennis, girls track and field, girls snowboarding, girls volleyball and girls ultimate. *This policy recognizes traditional boys-dominated sports and the need to protect opportunities for girl athletes.*

*Id*. at 29–30 (emphasis added).

372.   Despite the VPA's girls fairness policy, the VPA allows biological males to compete in girls' sporting events under the VPA's gender identity policies.

373.   The VPA's gender identity policies thus conflict with its girls fairness policy.

374.   The only way to reconcile the two policies is for the VPA to believe that biological boys who "identify" as female are, in fact, females, and thus their competition in girls' sports does not violate the VPA's girls fairness policy.

375.   VPA's gender identity policies require: (1) Mid Vermont Christian to assign athletes to its own athletic teams based on the athletes' chosen gender identity (rather than biological sex); and (2) Mid Vermont Christian's girls' athletic teams to compete against biological males, despite the VPA's girls fairness policy (and vice-versa).

68

JA.116

376.    Forcing Mid Vermont Christian and its students—including Plaintiff M.G.—to do these things violates their religious beliefs and exercise.

377.    Moreover, forcing Mid Vermont Christian's female athletes to compete against biological males (via the VPA's gender identity policies) raises safety concerns for the school's female athletes, as reflected by the VPA's girls fairness policy.

378.    For instance,  a high school girl in North Carolina suffered severe head and neck injuries resulting in long-term concussion symptoms after a biological male on the other team spiked a volleyball in her face. This story was widely reported in the media and known to Mid Vermont Christian.[21]

### 3.    The VPA expelled—and denied readmission to—Mid Vermont Christian because of the school's religious beliefs and exercise.

379.    The Mid Vermont Christian girls' 2022-2023 varsity basketball team qualified for and was scheduled to compete in the 2023 VPA Division 4 Girls' State Basketball Tournament.

380.    The first-round playoff opponent for Mid Vermont Christian was the Long Trail School in Dorset, Vermont.

---

[21] Alec Schemmel, *Injured volleyball player speaks out after alleged transgender opponent spiked ball at her*, ABC 13 News (Apr. 20, 2023), https://perma.cc/6QW3-4KLL.

JA.117

381.    Due to the VPA's gender identity policies, a biological male at Long Trail was permitted to compete in VPA high school girls' basketball games during the 2022-2023 season. The male was over six feet tall.[22]

382.    As noted, Mid Vermont Christian's religious beliefs teach that an individual's status as male or female is determined by biological sex, not his or her perceived gender identity.

383.    Concerned about the situation, the apparent violation of the VPA's girls fairness policy, and the safety of its female athletes, Mid Vermont Christian contacted the VPA to discuss the game against Long Trail.

384.    Multiple news stories regarding the Long Trail girls' basketball team underscored Mid Vermont Christian's concerns. The biological male on Long Trail's team is taller than any girl on Mid Vermont Christian's team. Available video of the biological male playing basketball, which showed the athlete repeatedly blocking girls' shots, throwing elbows, and knocking girls down further underscored Mid Vermont Christian's concerns.

385.    Before the game, consistent with the VPA's girls fairness policy, Mid Vermont Christian asked the VPA that its girls' team not have to play against the male.

---

[22] *Mid Vermont Christian Forfeits Tournament Game Over Opponents Transgender Player*, Stateline Sports Network (Feb. 27, 2023), https://perma.cc/QK5B-RGDN; Aaron Warner, *David vs. Goliath, dressed as a girl*, Vermont Daily Chronicle (Feb. 23, 2023), https://perma.cc/WX7D-WSW2; Tom Haley, *Mountain Lions roar back to top PHS*, Rutland Herald (Feb. 7, 2023), https://perma.cc/GKU6-9NDG.

JA.118

386.   In response to Mid Vermont Christian's concerns, the VPA stated it would not honor Mid Vermont Christian's request because doing so would violate the Vermont Public Accommodations Act, the Agency of Education's Best Practices For Schools Regarding Transgender And Gender Nonconforming Students, and the VPA's gender identity policies.

387.   Because its girls' basketball team was being asked to play against a biological male—in violation of the VPA's girls fairness policy and its own religious convictions—Mid Vermont Christian decided to forfeit the playoff game.

388.   In response, the VPA made "an immediate determination of ineligibility" and expelled Mid Vermont Christian from the Association, penalizing the school for its religious beliefs about sex and gender. *See* Mar. 13, 2023 VPA Press Release and Ineligibility Determination Letter at 1, a true and accurate copy of which is attached as Exhibit 14.

389.   The VPA's termination letter to Mid Vermont Christian stated that the school violated the VPA's gender identity policies, which were "aligned with Vermont state law"—which meant the Vermont Public Accommodations Act. *Id.*

390.   As a result, the VPA barred Mid Vermont Christian and *all* of its students from competing in *any* VPA sports or activities, not just girls' basketball.

391.   On multiple prior occasions, other Vermont schools have forfeited VPA-sponsored athletic events without any apparent repercussions from the VPA.[23] That

---

[23] Michael Mawson, *Spaulding football forfeits Friday night's game against Mount Anthony*, Bennington Banner, (Sept. 9, 2022), https://perma.cc/E2PG-HF8A; Alex

71

includes at least three instances of schools forfeiting due to their refusal to play against a player with a COVID-19 exemption.[24]

392.   Worse still, on February 22, 2023, while commenting on a potential bill that could impact the Town Tuition Program during a Vermont House Education Committee hearing, Defendant Nichols showed hostility toward Mid Vermont Christian's religious beliefs. Nichols criticized Mid Vermont Christian for allegedly supporting "blatant discrimination under the guise of religious freedom." Jay Nichols Testimony re. H.258 at 2, a true and accurate copy of which is attached as Exhibit 15.

393.   In March 2023, the VPA sent a letter to Mid Vermont Christian reiterating that the school's religious beliefs and practices did not meet the expectations of its gender identity policies and that the school was ineligible to participate in VPA activities going forward.

394.   Following the decision, Defendant Nichols explained that it was the VPA's way or no way: "If you don't want to follow VPA rules, that's fine. ... But then

---

Abrami, *Vermont high school football: Missisquoi forced to forfeit game*, Burlington Free Press, (Sept. 14, 2018), https://perma.cc/FLB4-84R8.

[24] Austin Danforth, *Nobody would play Woodstock—until a policy change allowed Hartford to step up*, Burlington Free Press, (Feb. 25, 2021), https://perma.cc/MQ6C-DSW5.

JA.120

you're just not a VPA member. It's fairly simple. That's really all we're gonna really say about it."[25]

395.    Moreover, despite Mid Vermont Christian raising its concerns with the VPA prior to the playoff game, the VPA falsely told the media that it first learned of the school's rationale for forfeiting the game through the school's statement to *Valley News*.[26]

396.    The VPA also inaccurately told the media that the VPA offers no appeals process for schools that are barred from VPA sporting events.[27]

397.    Rather than engage in a conversation with Mid Vermont Christian, as the school requested, the VPA immediately expelled Mid Vermont Christian from all VPA activities and publicly mocked its beliefs while testifying before the Vermont House.

398.    On top of that, by immediately expelling Mid Vermont Christian from the VPA, the VPA failed to follow its own disciplinary action procedures, including the necessity of submitting a written notice of probable violation.

---

[25] Peter D'Auria, *Vermont religious school that refused to play team with trans player banned from sporting events*, VTDigger (Mar. 13, 2023), https://perma.cc/3LU5-2TY4.

[26] Tory Rich, *Mid Vermont Christian School to appeal ban from Vermont Principals Association*, Manchester Journal (Mar. 14, 2023), https://perma.cc/CB3K-TRTU; Tory Rich, *Mid Vermont Christian School ousted from Vermont Principals Association- sanctioned activities*, Bennington Banner (Mar. 13, 2023), https://perma.cc/M3RH-6GCL.

[27] D'Auria, *supra* note 25.

JA.121

399. When Mid Vermont Christian sought an appeal, the VPA's Activities Committee had to inform Defendant Nichols how to hold and conduct a proper appeal procedure.

400. After finally allowing Mid Vermont Christian to move through the appeals process, the school raised religious objections and concerns to the VPA's gender identify policies.

401. At no point during the appeal process did the VPA seriously consider Mid Vermont Christian's religious beliefs, exercise, and objections.

402. The VPA's Activity Standards Committee eventually held a hearing on Mid Vermont Christian's appeal, which the school attended. The Committee was comprised of nine VPA members, all of whom represent public schools.

403. The Activity Standards Committee unanimously denied Mid Vermont Christian's appeal and upheld the VPA's "penalty of expulsion," saying "[t]his case has nothing to do with beliefs." *See* VPA Activities Standards Committee Appeal Decision at 4–5, a true and accurate copy of which is attached as Exhibit 16.

404. The VPA also told Mid Vermont Christian that "[i]t is a myth that transgender students endanger others when they participate in high school sports or create unfair competition" and pointed to California as an example. *Id*. at 3.

405. But days later, a California high school sports governing body, the California Interscholastic Federation, came under fire from individuals and organizations, including the Independent Council on Women's Sports, when a

74

JA.122

biological male finished in second place in the varsity girls' 1,600-meter run finals, thereby securing a spot at the California State Track & Field Championships.[28]

406. And more recently, several California high school girls' volleyball teams are refusing to play against Jurupa Valley High School girls' volleyball team—because that team has a male player.[29]

407. The VPA's denial, and its failure to seriously consider Mid Vermont Christian's concerns, showed hostility toward the school's religious beliefs.

408. As of the date that this lawsuit was filed, Mid Vermont Christian and its students were expelled from the VPA and unable to compete in VPA middle school and high school athletics and other VPA activities.

409. Mid Vermont was forced to compete in the New England Association of Christian Schools while it was expelled from the VPA.

410. The New England Association of Christian Schools ("NEACS") contains members in Connecticut, Rhode Island, New Hampshire, Vermont, and Massachusetts.

411. The closest school to Mid Vermont in the NEACS is in Concord, New Hampshire, over one hour away.

---

[28] Ryan Gaydos, *Transgender California High School Runner's 2nd-place Finish in Girls Race Draws Backlash*, Fox News (May 21, 2023), https://perma.cc/84LB-6UMR.

[29] Jackson Thompson, *California HS girls' volleyball team with trans athlete sees 8th forfeit amid growing controversy*, Fox News (September 24, 2025), https://perma.cc/2PAY-JS5D.

JA.123

412. After missing out on spring 2023 sports and activities as well as the increased time and expense of traveling to NEACS for competition, Mid Vermont decided to reapply for membership in the VPA.

413. During the fall of 2023, Mid Vermont Christian asked the VPA how it could reapply for school membership in the VPA and requested any required forms as suggested by the VPA's website.

414. In response to Mid Vermont Christian's request, the VPA pointed the school back to its prior expulsion decision.

**4. The Second Circuit's preliminary injunction decision.**

415. After filing this case, Mid Vermont Christian moved for a preliminary injunction ordering the VPA to reinstate the school during the pendency of the case.

416. Mid Vermont Christian appealed the denial of that motion.

417. On September 9, 2025, the Second Circuit Court of Appeals reversed and "remanded for further proceedings and with instructions to grant Plaintiffs' motion for a preliminary injunction insofar as it seeks Mid Vermont's reinstatement in the VPA." *Mid Vermont Christian*, 151 F.4th at 96.

418. The Second Circuit held that Plaintiffs were "likely to succeed in showing that the VPA did not consider Mid Vermont's case with the neutrality that the Free Exercise Clause requires because it was hostile to Mid Vermont's religious views." *Id.* at 92.

419. The court pointed to three circumstances in the record that evidenced the VPA's hostility toward Mid Vermont's religious beliefs.

JA.124

420. First, the court found that Defendant Nichols made public statements that "evinced hostility toward Mid Vermont's religious beliefs," including his testimony before the House Education Committee relating to legislation that would "block private religious schools from receiving public funding." *Id.* at 94. He also called Mid Vermont's religious decision to forfeit the basketball game, "blatant discrimination under the guise of religious freedom." *Id.*

421. Second, the court found that the "VPA itself challenged the school's religious beliefs" by calling Mid Vermont's religious justification "wrong," which both "question[ed] Mid Vermont's religious *sincerity*" and "attacked the *validity* of Mid Vermont's objection." *Id.*

422. Third, the court explained that the VPA "violated" its "own norms" two ways: (1) it "had never before banned a school from all sporting events" but did so for Mid Vermont (including expulsion from academic competitions), and (2) "the VPA ignored the detailed procedural requirements governing its disciplinary process" and instead "rush[ed] to impose an 'immediate expulsion.'" *Id.* at 95.

423. All of this "support[ed] the inference that Mid Vermont's religious objection 'was not considered with the neutrality that the Free Exercise Clause requires.'" *Id.* (quoting *Masterpiece Cakeshop,* 584 U.S. at 639).

424. The court also held the remaining preliminary injunction factors were met and remanded for a preliminary injunction reinstating Mid Vermont "to full membership in the VPA pending the resolution of this case." *Id.* at 96.

JA.125

**C.    Defendants damaged, irreparably harmed, and continue to irreparably harm Plaintiffs.**

425.    Defendants actions against Mid Vermont Christian and its families, including the Goodwins and Partingtons, have damaged and irreparably harmed them.

*Rule 2200's and Act 73's harm to Plaintiffs.*

426.    Although Mid Vermont Christian meets all other requirements  to be an approved independent school under Rule 2200, that Rule's nondiscrimination strings violate Mid Vermont's religious beliefs and exercise and force the school to affirm the government's orthodoxy on marriage, sexuality, and gender.

427.    The State has not said that Rule 2200's constitutional qualifier means that Mid Vermont is compliant with the nondiscrimination strings.

428.    Rule 2200's nondiscrimination strings damage and irreparably harm Mid Vermont Christian insofar as the State applies them to Mid Vermont to deny the school approved independent status.

429.    In any event, Vermont enacted Act 73 to achieve the same result and ensure that no religious schools can receive town tuition funding.

430.    Tuition at Mid Vermont Christian is currently $18,000 per year for junior and senior high school students.

431.    Mid Vermont Christian does not satisfy Act 73's requirements and is banned from receiving public funds (apart from students grandfathered in).

JA.126

432. Act 73 irreparably harms Mid Vermont because the school is no longer an option for publicly funded students who would have otherwise enrolled at Mid Vermont but for the fact that they cannot use public tuition there.

433. Act 73 irreparably harms Mid Vermont because it is now more difficult for the school to recruit and enroll students who live in sending districts.

434. Act 73 irreparably harms Mid Vermont by causing the school to lose opportunities to minister and educate those students who would enroll at the school but for the fact that they cannot use public tuition there.

435. Act 73 irreparably harms Mid Vermont because there are families who reside in sending districts who desire to use town tuition funds at Mid Vermont Christian, but now cannot.

436. The Partingtons are irreparably harmed too.

437. O.P. resides in a sending district and is now barred from using town tuition funds at Mid Vermont due to Act 73.

438. The Partingtons will now either have to pay out-of-pocket for O.P. to attend Mid Vermont once he enters high school or will have to send O.P. to a public school or eligible secular private school.

439. Nathan Partington believes that sending O.P. to a public school or secular private school would violate his religious mandate to educate O.P. in the Christian faith.

440. Act 73 irreparably harms Nathan Partington by putting him to the unconstitutional choice of receiving a public benefit or violating his religious

JA.127

convictions by sending O.P. to a public or secular, town-tuition-eligible private school.

441.   Moreover, due to Act 73's de facto religious exclusion,, Mid Vermont Christian and its students cannot participate in Vermont's Dual Enrollment and Early College Programs.

442.   Mid Vermont Christian currently has students who desire to participate in Vermont's Dual Enrollment and Early College Programs.

443.   For example, not only will O.P. be denied town tuition funds for use at Mid Vermont Christina once he enters high school, he will also be categorically ineligible for the Dual Enrollment and Early College Programs because he will not be a "publicly funded" student at Mid Vermont.

444.   Act 73 damages Mid Vermont Christian financially because it now cannot receive town tuition funds.

445.   Act 73 also damages Mid Vermont competitively and reputationally by conveying to prospective and current students that they cannot receive public benefits if they attend Mid Vermont Christian.

446.   Act 73 damages the Partingtons financially because they will have to pay for O.P.'s tuition at Mid Vermont Christian out-of-pocket.

447.   Defendants Saunders and Samuelson participated personally in Plaintiffs' constitutional violations by enforcing Act 73 against them and by being recklessly indifferent to Plaintiffs' constitutional rights under the First Amendment.

JA.128

448.   Act 73 discriminates against Plaintiffs by excluding them from generally available public benefits.

449.   Plaintiffs suffer harm each day that they are excluded from receiving public benefits. The daily deprivation of their constitutional rights "unquestionably constitutes irreparable injury." *Mid Vermont Christian*, 151 F.4th at 96 (quoting *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19, 141 (2020)).

450.   Plaintiffs have no adequate remedy at law for the ongoing constitutional violations and will continue to suffer irreparable harm.

451.   Plaintiffs' injuries are traceable to the State and can be redressed by declaratory, injunctive, and compensatory relief.

452.   Plaintiffs need declaratory and injunctive relief to protect their ability to receive public benefits while exercising their constitutional rights.

453.   An injunction protecting Plaintiffs outweighs any harm to the State and benefits the public interest.

454.   The requested declaratory and injunctive relief is warranted for the past and ongoing constitutional violations.

455.   Plaintiffs also seek punitive damages against the individual-capacity Defendants for their repeated anti-religious discrimination despite several federal court decisions holding that Vermont may not exclude religious schools.

### *The VPA's harm to Plaintiffs.*

456.   The VPA damaged and irreparably harmed Mid Vermont Christian and its students through enforcing the VPA's policies.

457.   Because of Mid Vermont Christian's religious beliefs, the VPA unconstitutionally expelled Mid Vermont Christian and its students from all VPA activities after Mid Vermont Christian had participated in VPA sports for at least 28 years with no issue.

458.   Mid Vermont Christian currently offers girls' varsity and junior high basketball, girls' varsity volleyball, girls' varsity and junior high cross country, boys' varsity and junior high cross country, girls' varsity and junior high track, boys' varsity and junior high track, boys' varsity and junior high basketball, and girls' and boys' varsity golf. Up until their exclusion from the VPA, all of these teams competed against other VPA schools.

459.   If a Mid Vermont Christian student desires to compete in a sport not offered by Mid Vermont Christian, that student has previously been able to play that sport at other VPA member schools through the VPA's "Member-to-Member Program."

460.   Before the Second Circuit's preliminary injunction decision, Mid Vermont Christian and its students—including Abel and M.G.—could not participate in VPA sports or activities

461.   Before the Second Circuit's preliminary injunction decision , all Mid Vermont Christian athletes were harmed by the VPA's actions against Mid Vermont Christian. For example, each year, about ten to twelve Mid Vermont Christian high school students participate in each of boys' basketball, girls' basketball, and girls' volleyball; about fifteen to seventeen students participate in

82

JA.130

boys' soccer; about four to eight students participate in golf; and about eight to ten students participate in track and field.

462.    M.G. lost two full seasons of VPA girls' basketball competition. And Abel lost his senior VPA basketball and track seasons.

463.    Nor could Mid Vermont Christian and its students participate in the VPA's "Member-to-Member Program" through which students can play sports at schools they do not attend if the students' schools do not offer the sport. Multiple students from Mid Vermont Christian previously participated in that program, including one male student who could no longer play VPA baseball due to the VPA's action.

464.    Several Mid Vermont Christian students also withdrew from the school because they could not play VPA-sanctioned sports at the school or through the VPA's Member-to-Member Program.

465.    For example, Mid Vermont Christian did not offer girls soccer during the fall 2023 season, so one of its 12-year-old female students asked her local public high school whether she could participate on their girls' soccer team, but was denied because Mid Vermont Christian was expelled from the VPA.

466.    And it's not just Mid Vermont Christian students that were punished. Students at public schools were impacted too. For example, some students at Woodstock Union were interested in joining Mid Vermont Christian's girls' volleyball team during the fall 2023 season because Woodstock Union did not have a

83

JA.131

team. Those girls could not join Mid Vermont's team because Mid Vermont Christian was excluded from the VPA.

467.   Mid Vermont Christian and its students also could not compete in VPA academic competitions such as the VPA's Geo-Bee, Science and Math Fair, and Debate and Forensics League, until this Court pressured the VPA to permit Mid Vermont to join such academic competitions.

468.   The VPA's gender identity policies also force Mid Vermont Christian to allow biological males who identify as female to play on its own girls' athletic teams and biological females who identify as male to play on boys' athletic teams in violation of Mid Vermont Christian's religious beliefs. Those same policies would thus require Mid Vermont Christian to re-write its own internal policies in order to satisfy the State's requirements.

469.   The VPA's actions also caused Mid Vermont Christian competitive and reputational harm by conveying to prospective and current students that they could not play VPA sports if they attended Mid Vermont Christian.

470.   The current preliminary injunction against the VPA prevents irreparable harm during the pendency of this lawsuit, yet Plaintiffs seek a permanent injunction against the VPA to prevent future expulsion or penalties for adhering to their religious beliefs.

471.   Plaintiffs will suffer irreparable harm absent a permanent injunction protecting their ability to adhere to their sincere religious beliefs without being penalized by the VPA.

JA.132

472.    A permanent injunction outweighs any harm to the VPA and protects the public interest by preserving Plaintiffs' constitutional rights.

## LEGAL ALLEGATIONS

### FIRST CLAIM FOR RELIEF
### Violation of the Free Exercise Clause: Religious Discrimination, Gerrymandering, and Hostility
### (All Plaintiffs Against All Defendants)

473.    Plaintiffs incorporate by reference paragraphs 1–472.

474.    Mid Vermont Christian exercises its religious beliefs by engaging in the education of its students and operating its school—including through its internal policies on restroom usage, pronouns, dress code, and students' sports—in accordance with its religious beliefs.

475.    The Goodwins and Partingtons exercise their religious beliefs by choosing to attend or send their children to Mid Vermont Christian due to its distinctly religious education.

476.    The Free Exercise Clause of the First Amendment protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988). It also forbids government officials from "exclud[ing] religious observers from otherwise available public benefits." *Carson*, 596 U.S. at 778.

477.    The government cannot "discriminate[]" against otherwise eligible religious schools "by disqualifying them ... solely because of their religious character," *Trinity Lutheran*, 582 U.S. at 462, or "on the basis of their religious exercise," *Carson*, 596 U.S. at 789.

85

JA.133

*Rule 2200's nondiscrimination strings*.

478.   Mid Vermont Christian's religious beliefs and exercise prevent it from complying with Rule 2200's nondiscrimination strings, including the Vermont Public Accommodations Act and Fair Employment Practices Act, because the nondiscrimination strings force Mid Vermont Christian to: use pronouns based on someone's claimed gender-identity rather than biology, allow students to use restrooms and locker rooms based on their claimed gender-identity rather than biology, allow students to play on sports teams based on their claimed gender-identity rather than biology, admit a student whose parents do not share Mid Vermont's religious beliefs, and employ people who do not share Mid Vermont's religious beliefs.

479.   In August 2023, the State originally denied Mid Vermont Christian as an approved independent school eligible to receive public funds because of its religious character, status, beliefs, and exercise, thus disqualifying it from the Town Tuition Program.

480.   The State still has not informed Mid Vermont whether Rule 2200's constitutional qualifier applies to it and whether the school is thus compliant with Rule 2200's nondiscrimination strings.

481.   Rule 2200's nondiscrimination strings burden Mid Vermont's religious exercise and exclude the school from public benefits solely because of the school's religious character and exercise.

JA.134

482.    Rule 2200's nondiscrimination strings do not serve a compelling governmental interest and are not narrowly tailored to achieve any purported compelling interest, and therefore violate the Free Exercise Clause of the First Amendment.

***Act 73's de facto religious exclusion.***

483.    The Free Exercise Clause protects more than overt and facial religious discrimination and targeting; it also "forbids subtle departures from neutrality," "covert suppression of particular religious beliefs," and "governmental hostility which is masked." *Lukumi,* 508 U.S. at 534.

484.    A law that has the "effect" of "disqualify[ing] some private schools from funding solely because they are religious" must "be subjected to the strictest scrutiny." *Carson*, 596 U.S. at 780 (citation modified).

485.    Likewise, if the "object" of a law is to exclude the religious, it is not neutral and must undergo strict scrutiny. *Lukumi*, 508 U.S. at 533, 546.

486.    Act 73 is not neutral and creates a "religious gerrymander" that excludes all religious schools in Vermont from the state's public benefit programs— including the Town Tuition, Dual Enrollment, and Early College Programs. *Id.* at 535.

487.    The "effect" of Act 73 "in its real operation" is that religious schools are now barred from all public benefits, while myriad secular private schools remain eligible. *Id.*

JA.135

488.   Act 73's covert goal was to exclude all religious schools while still allowing most secular schools to participate, including the 18 favored secular approved independent schools.

489.   And Act 73 deprives eligible Mid Vermont Christian students and their families—including the Partingtons—from public funding because Mid Vermont Christian is religious.

490.   Act 73 discriminates against religious schools, students, and parents.

491.   Act 73's geographic restriction, public-funding floor, and class-size requirements are a de facto religious exclusion.

492.   Act 73's de facto religious exclusion burdens Mid Vermont's religious exercise and excludes the school from public benefits solely because of the school's religious character and exercise.

493.   Act 73's de facto religious exclusion does not serve a compelling governmental interest and is not narrowly tailored to achieve any purported compelling interest.

494.   Nor is Act 73's de facto religious exclusion rationally related to Act 73's stated purposes.

495.   Act 73's de facto religious exclusion violates the Free Exercise Clause of the First Amendment.

### *VPA policies and action.*

496.   Moreover, Mid Vermont Christian's religious beliefs and exercise prevent it from complying with the VPA's gender identity policies because by

JA.136

complying, Mid Vermont Christian would be affirming that sex is mutable, contradicting its religious beliefs.

497. Because Mid Vermont Christian's religious beliefs teach that gender is determined by biological sex, the VPA expelled Mid Vermont Christian from the VPA, disqualifying the school and its students—including the Goodwins—from participating in any VPA middle school and high school athletics in the state.

498. Before the court-issued preliminary injunction,, the VPA refused to grant Mid Vermont Christian membership in its association unless Mid Vermont Christian agreed with the VPA's gender identity policies, including the belief that sex is mutable.

499. The VPA's gender identity policies and actions toward Mid Vermont do not serve a compelling governmental interest and are not narrowly tailored to achieve any purported compelling interest, and therefore violate the Free Exercise Clause of the First Amendment.

500. Through both public benefit programs and middle school and high school athletics, Defendants require Plaintiffs to abandon their religious status, beliefs, character, and exercise in order to participate in public, state funded programs.

501. Requiring Plaintiffs to forfeit their religious status, beliefs, character, and exercise to participate in public benefit programs and to gain readmission in the VPA violates the Free Exercise Clause.

89

JA.137

502.    What's more, the VPA engaged in impermissible religious hostility by asserting that Mid Vermont Christian engaged in discrimination under "the guise of religious freedom," and by skirting its own rules and procedures under the VPA to immediately punish the school. The VPA's decision to exclude Mid Vermont Christian from VPA membership and VPA sports and activities was based on hostility towards the school's religious beliefs. *See Mid Vermont Christian,* 151 F.4th 86.

503.    And the State has a history of attempting to exclude religious schools from public benefits, even when courts have ruled against them. *See., e.g., A.H. v. French*, 985 F.3d at 170–74. The State's purposeful attempt to exclude religious schools from public benefits in light of the Second Circuit and Supreme Court's decisions is based on religious hostility.

504.    Defendants' religious hostility is unconstitutional per se. *See Masterpiece Cakeshop,* 584 U.S. 617; *Mid Vermont Christian*, 151 F.4th at 95–96.

### SECOND CLAIM FOR RELIEF
### Violation of the Free Exercise Clause: Not Neutral or Generally Applicable
### (All Plaintiffs Against All Defendants)

505.    Plaintiffs incorporate by reference paragraphs 1–472.

506.    Mid Vermont Christian's sincerely held religious beliefs guide and permeate everything that it does.

507.    Mid Vermont Christian exercises its religious beliefs by engaging in the education of its students and operating its school—including through its

90

JA.138

internal policies on restroom usage, pronouns, dress code, and students' sports—in accordance with its religious beliefs.

508. The Goodwins and Partingtons exercise their religious beliefs by choosing to attend Mid Vermont Christian due to its distinctly religious education.

509. Rule 2200, Act 73, and the VPA's gender identity policies burden Plaintiffs' religious exercise.

510. Rule 2200, Act 73, and the VPA's gender identity policies are not neutral or generally applicable.

511. Act 73 is not neutral or generally applicable because it purposefully gerrymanders and excludes all religious schools from receiving public benefits.

512. Act 73 is not neutral or generally applicable because it treats comparable approved independent schools better than Mid Vermont Christian and all other religious schools in the state. *See Tandon v. Newsom*, 593 U.S. 61 (2021).

513. In addition, both the State's decisions about whether to designate schools as approved independent schools (capable of receiving public benefits) and the VPA's decisions about whether to admit or exclude certain schools under its gender identity policies are made in a system of individualized assessments and thus are not neutral or generally applicable. *See Fulton v. City of Phila.*, 593 U.S. 522 (2021).

514. And both Rule 2200 and the VPA's gender identity policies require Mid Vermont Christian to comply with Vermont's Public Accommodations Act, but that

JA.139

Act is neither neutral nor generally applicable because it contains myriad exemptions. *See* 9 V.S.A. § 4502.

515.   For instance, the Vermont Public Accommodations Act exempts certain lodging facilities from the prohibition on sex or marital status discrimination, *id.* § 4502(d); exempts entities when they determine an individual poses a "direct threat to the health or safety of others," *id.* § 4502(h); exempts entities when they believe a person is disruptive due to alcohol or drugs, *id.* § 4502(i); and partially exempts religious organizations when the service pertains to the "solemnization" or "celebration of a marriage," *id.* § 4502(l).

516.   Moreover, Rule 2200 requires Mid Vermont Christian to comply with the Vermont Fair Employment Practices Act, but that Act isn't neutral or generally applicable either because it contains exemptions, including an exemption for religious organizations. Yet the Agency of Education has refused to provide Mid Vermont Christian a religious accommodation from any aspect of Rule 2200, including the requirement that the school comply with the Vermont Fair Employment Practices Act's nondiscrimination provisions.

517.   The VPA's actions also are not neutral or generally applicable because the VPA can and has allowed other schools to forfeit athletic events for secular reasons without later penalizing or excluding those schools from the VPA for their decisions. Yet the VPA has penalized and excluded Mid Vermont Christian because of its religious beliefs and exercise. This "devalues religious reasons ... by judging them to be of lesser import than nonreligious reasons." *Lukumi*, 508 U.S. at 537–

92

38."Thus, religious practice is being singled out for discriminatory treatment." *Id.* at 538.

518. Rule 2200, Act 73, and the VPA's gender identity policies—and the State's enforcement of them—are also not neutral or generally applicable because the practical "effect" of those provisions is to exclude and penalize only those schools and families with religious beliefs and practices like Mid Vermont Christian's and its families. *Id.* at 535–36 (the "effect" of the challenged law "in its real operation is strong evidence of its object").

519. Rule 2200, Act 73, and the VPA's gender identity policies cannot survive strict scrutiny because they do not serve a compelling governmental interest and are not narrowly tailored to achieve any purported governmental interest.

520. Nor is Act 73's exclusion of religious schools rationally related to Act 73's stated purposes.

521. Rule 2200, Act 73, and the VPA's gender identity policies, therefore, violate the Free Exercise Clause as applied to Plaintiffs.

### THIRD CLAIM FOR RELIEF
### Violation of the Free Speech Clause
### (All Plaintiffs Against All Defendants)

522. Plaintiffs incorporate by reference paragraphs 1–472.

523. The First Amendment's Free Speech Clause protects Plaintiffs' ability to speak in accordance with their religious views and protects their ability to not speak.

93

JA.141

524. Plaintiffs engage in protected speech by teaching and expressing that sex is immutable, based on biology from birth, and determined by God. They also engage in protected speech by using pronouns based on a person's biological sex.

525. Rule 2200 and the VPA's gender identity policies restrict and compel Plaintiffs' speech about human sexuality and gender based on the speech's content and viewpoint.

526. Specifically, Rule 2200 requires Plaintiffs to comply with the Vermont Public Accommodations Act, which prohibits Mid Vermont Christian from discriminating based on gender identity "in all aspects of [the school's] recruitment, enrollment, operation, and employment activities," meaning Mid Vermont Christian must use pronouns based on a person's preferred gender identity and not based on biological sex. Vt. Admin. Code § 7-1-3:2223.2.1.

527. Rule 2200 forces Mid Vermont Christian to publish statements of nondiscrimination consistent with the Vermont Public Accommodations Act and Vermont Fair Employment Practices Act on its website and in its application materials. *Id.*

528. Moreover, Rule 2200 specifically requires Mid Vermont Christian to *affirm* compliance with the Vermont Public Accommodations Act by signing an assurance stating the same and including such information on its website.

529. If Mid Vermont Christian does not publish said nondiscrimination statements or sign the assurance, it cannot obtain approved independent school

94

status and therefore cannot participate in Town Tuition or other public benefit programs.

530. Rule 2200 thus compels Mid Vermont Christian to speak in accordance with the State's views on gender identity and restricts its speech to the contrary.

531. And the VPA's gender identity policies require Mid Vermont Christian to affirm that sex is mutable by competing against teams with transgender athletes and allowing such athletes to compete on its own teams.

532. If Mid Vermont Christian were to compete against a team with a transgender student, it would be acknowledging that one's sex can be changed.

533. Indeed, the VPA expelled Mid Vermont Christian from the Association because it refused to compete against a biological male on a girls' basketball team.

534. To regain membership, the VPA required Mid Vermont Christian to adopt, accept, and speak the State's views on gender and sexuality, which Mid Vermont Christian would not do.

535. The VPA thus compels Mid Vermont Christian to speak in accordance with the State's views on gender identity and restricts its speech to the contrary.

536. Rule 2200 and the VPA's gender identity policies are thus content- and viewpoint-based limitations on speech, do not serve any compelling or even valid interest in a narrowly tailored way, and infringe Plaintiffs' right to free speech as applied.

537.    Requiring Plaintiffs to forfeit their rights to free speech to participate in the Town Tuition Program and middle school and high school athletics violates the Free Speech Clause.

**FOURTH CLAIM FOR RELIEF**
**Violation of the First Amendment: Religious Autonomy**
**(Mid Vermont Christian Against All Defendants)**

538.    Mid Vermont Christian incorporates by reference paragraphs 1–472.

539.    The First Amendment protects Mid Vermont Christian's "power to decide for [itself], free from state interference, matters of [internal] government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952).

540.    The right to religious autonomy also protects Mid Vermont Christian's internal employment decisions about who should further its religious purposes and goals. This right contains two similar but separate protections: the ministerial exception and the coreligionist exemption.

541.    Under the ministerial exception, the government cannot interfere with the school's employment decisions about its "ministerial employees." *See Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732 (2020).

542.    Mid Vermont Christian has ministerial employees, including but not limited to its teachers.

543.    The coreligionist exemption is broader in that it applies to all of Mid Vermont Christian's employees, but it only protects the school's decisions about

96

JA.144

non-ministerial employees when they are rooted in the school's religious beliefs, practices, or observances.

544. To participate in the Town Tuition Program, Mid Vermont Christian must comply with Rule 2200, including by agreeing to comply with the Vermont Fair Employment Practices Act, which prohibits Mid Vermont Christian from hiring only employees who agree with and abide by its religious beliefs, including religious beliefs on marriage, sexuality, and gender. *See* Vt. Admin. Code § 7-1-3:2223.2.1; *see also* 21 V.S.A. § 495 (prohibiting employment discrimination "because of ... religion, ... sexual orientation, [and] gender identity").

545. The State will not apply the Vermont Fair Employment Practices Act's religious employer exemption in enforcing Rule 2200.

546. Rule 2200 thus violates both the ministerial exception and coreligionist exemption by prohibiting Mid Vermont Christian from hiring only those who agree with and live out its religious beliefs, including its beliefs on marriage, sexuality, and gender.

547. In addition, the VPA's gender identity policies also violate this right to religious autonomy by forcing Mid Vermont Christian to structure its own athletic teams in a way that conflicts with its religious beliefs and teachings—i.e., by structuring its athletic teams based on athletes' chosen gender identity rather than biological sex.

548. As such, Defendants' rules and policies violate Mid Vermont Christian's right to religious autonomy.

JA.145

**FIFTH CLAIM FOR RELIEF**
**Violation of the First Amendment: Expressive Association**
**(All Plaintiffs Against All Defendants)**

549. Plaintiffs incorporate by reference paragraphs 1–472.

550. The First Amendment protects the right of persons to speak and associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.

551. When an association expresses a collective message, the First Amendment prohibits the government from forcing the association to admit those who disagree with its message, seek to change that message, or express a contrary view.

552. The First Amendment protects the right of Mid Vermont Christian and its families and students to freely associate for religious and educational reasons.

553. Mid Vermont Christian employs only like-minded believers to fulfill its educational and religious purposes and to express its religious beliefs to the world.

554. And every Mid Vermont Christian student must have at least one parent who is a born-again, Bible-believing Christian and who must be in full agreement with the doctrinal and philosophical positions of the school.

555. So Mid Vermont Christian associates with its students and their families to fulfill its educational and religious purposes and to express its religious beliefs to the world.

556. Rule 2200 punishes Mid Vermont Christian by disqualifying it from the Town Tuition Program and other Vermont public benefits programs unless the

98

school agrees to employ individuals who do not share and adhere to the school's religious beliefs and who cannot express the same message as the school.

557.   Rule 2200 also punishes Vermont students and families—like the Partingtons—by disqualifying them from the Town Tuition Program because of their desire to expressively associate with others for educational and religious reasons by sending their children to Mid Vermont Christian.

558.   Similarly, the VPA's gender identity policies punish Vermont families—like the Goodwins—by disqualifying their children from participating in Vermont middle school and high school athletics because of their desire to expressively associate with others for educational and religious reasons by sending their children to Mid Vermont Christian.

559.   Both Rule 2200 and the VPA's gender identity policies thus unconstitutionally force Plaintiffs to expressively associate with people who do not hold the same religious views and who cannot express the same message in order to participate in the State's public tuition program and school athletics.

560.   Rule 2200 and the VPA's gender identity policies cannot survive strict scrutiny because they do not serve a compelling governmental interest and are not narrowly tailored to achieve any purported governmental interest.

561.   Requiring Plaintiffs to forfeit their rights to expressive association to participate in the Town Tuition Program and school athletics violates the First Amendment.

99

JA.147

**SIXTH CLAIM FOR RELIEF**
**Violation of the Fourteenth Amendment: Fundamental Parental Right to Control the Upbringing of Children**
**(Mid Vermont Christian on behalf of its students' parents, Christopher and Bethany Goodwin, and Nathan Partington Against All Defendants)**

562.    Plaintiffs incorporate by reference paragraphs 1–472.

563.    Mid Vermont Christian has standing to assert, on behalf of its students' parents their constitutional right to direct their children's education. *See Runyon*, 427 U.S. at 175 n.13.

564.    Parents have the natural, fundamental, and common-law right to control and decide the upbringing, education, and care of their children.

565.    The Fourteenth Amendment protects parents' right to control the education and upbringing of their child. Indeed, the right is "perhaps the oldest of the fundamental liberty interests recognized by" the Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (collecting cases).

566.    This fundamental right "without doubt" includes the right of parents to "establish a home and bring up children" and "to control the education of their own." *Meyer v. Nebraska,* 262 U.S. 390, 399, 401 (1923).

567.    This right allows parents to choose a religious education for their children without governmental interference or punishment. *See Pierce v. Soc'y*, 268 U.S. 510; *Wisconsin v. Yoder*, 406 U.S. 205 (1972).

568.    Parents of Mid Vermont Christian students—including the Goodwins and Nathan Partington—exercise this fundamental right by choosing to send their children to Mid Vermont Christian.

JA.148

569. Rule 2200, Act 73, and the VPA's gender identity policies interfere with this right by penalizing the parents—like the Goodwins and Nathan Partington—who send their children to Mid Vermont Christian by denying those parents participation in the Town Tuition and Dual Enrollment Programs and by prohibiting their children from playing *any* VPA middle school or high school athletics.

570. Parents who choose to send their children to public schools (or dozens of secular private schools) are fully able to participate in the Town Tuition and Dual Enrollment Programs and their children can compete in VPA middle school and high school athletics in the state.

571. The State thus penalizes Mid Vermont Christian parents for choosing to send their children to the School, which penalizes them for exercising their parental right to direct the education and upbringing of their children.

572. Because the State infringes the parents' fundamental rights, strict scrutiny applies.

573. The State's infringement of the parents' fundamental rights cannot survive strict scrutiny because the State lacks a compelling, legitimate, or rational interest and any purported interest is not narrowly tailored.

574. Rule 2200, Act 73, and the VPA's gender identity policies—and the State's enforcement of them—violate Mid Vermont Christian's parents', Chris and Bethany Goodwins', and Nathan Partington's Substantive Due Process rights and Privileges or Immunities under the Fourteenth Amendment.

JA.149

**SEVENTH CLAIM FOR RELIEF**
**Violation of the First Amendment – Retaliation**
**(All Plaintiffs Against All Defendants)**

575.    Plaintiffs incorporate by reference paragraphs 1–472.

576.    The First Amendment prohibits the government from retaliating against individuals or organizations for exercising their constitutionally protected freedoms, including the rights to religious exercise, free speech, and expressive association.

577.    Mid Vermont Christian engaged in protected speech when it expressed its religious beliefs about sexuality and gender and the proper treatment of female athletes.

578.    Mid Vermont Christian engages in protected speech and expressive association when it requires employees to adhere to its beliefs and adopts policies on bathroom and locker room usage, pronoun usage, and dress codes based on biological sex, instead of gender identity.

579.    Mid Vermont Christian engages in protected speech and expressive association when it chooses to assign athletes to sports teams and condition access to private spaces based on their biological sex, instead of their chosen gender identity.

580.    Mid Vermont Christian and its student-athletes also engaged in protected expressive association when they chose not to participate in a girls' athletic event where a biological male was allowed to compete.

102

JA.150

581. The Goodwins and other Mid Vermont Christian families engage in protected speech, association, and religious exercise by choosing to send their children to Mid Vermont Christian, by participating in athletics at Mid Vermont Christian, and by expressing the same views as Mid Vermont Christian about sexuality and gender.

582. The VPA took adverse action against Plaintiffs by terminating Mid Vermont Christian's membership, denying the school readmission in the VPA, and excluding Mid Vermont Christian and its students—including the Goodwins and other families at Mid Vermont Christian—from participation in middle school and high school sports and activities in retaliation for their protected speech, association, and religious exercise.

583. In fact, the VPA failed to follow its own disciplinary action procedures before excluding Mid Vermont Christian from athletics and all activities.

584. The VPA's actions were motivated or substantially caused by Plaintiffs' exercise of their constitutional rights.

585. The VPA's decision to terminate Mid Vermont Christian's membership, deny the school readmission, and exclude Mid Vermont Christian and its students from participating in VPA sports and activities because they expressed and exercised their religious beliefs would be sufficient to deter a person of ordinary firmness from exercising his or her constitutional and civil rights.

586. There is a causal connection between the VPA's adverse actions against Plaintiffs and their protected religious exercise, speech, and association.

587.   The VPA's adverse actions against Plaintiffs have injured Plaintiffs and constitute retaliation in violation of the First Amendment.

588.   Likewise, the State retaliated against Mid Vermont by enacting Act 73's de facto religious exclusion.

589.   The passage of Act 73 was motivated or substantially caused by Plaintiffs' exercise of their constitutional rights, including their religious exercise and right to sue the State for a deprivation of constitutional rights.

590.   There is a causal connection between the State's adverse actions against Plaintiffs and their protected religious exercise, speech, and association.

### EIGHTH CLAIM FOR RELIEF
### Violation of the Fourteenth Amendment – Equal Protection
### (All Plaintiffs Against All Defendants)

591.   Plaintiffs incorporate by reference paragraphs 1–472.

592.   The Equal Protection Clause prohibits the government from denying "to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

593.   The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike" and prohibits the government from creating "arbitrary or irrational" distinctions between classes of people. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 446 (1985).

594.   Act 73 violates the Equal Protection Clause at least two ways.

595.   First, Act 73 treats approved independent schools differently based on a suspect class: religion.

104

JA.152

596.   Act 73 was adopted with a discriminatory intent towards religious schools and results in a discriminatory effect (exclusion) towards religious schools.

597.   For the State to treat religious schools—including Mid Vermont Christian—dissimilarly from similarly situated secular approved independent schools, the State must have a compelling reason and such treatment must be the least restrictive means of achieving that purported interest.

598.   The State does not have a compelling reason to justify this disparate treatment of religious schools.

599.   Second, Act 73 treats approved independent schools—all who are permitted to receive public tuition funding under 16 V.S.A. § 822—differently based on their location (via the geographic restriction), enrollment percentages (via the public-funding floor), and class sizes (via the class size requirement).

600.   Even when a suspect class or fundamental right is not at issue, the Equal Protection Clause prohibits the government from intentionally treating citizens differently from others similarly situated without a rational basis for the differential treatment.

601.   All approved independent schools in Vermont are similarly situated as they all follow the State's laws and regulations for approved independent schools and exist to provide education to Vermont students.

602.   But Act 73 treats one group of approved independent schools—the 18 eligible schools—more favorably than all other approved independent schools.

105

JA.153

603.   There is no rational basis for Act's 73 arbitrary classification of approved independent schools.

604.   Act 73's purpose is "to ensure each student is provided substantially equal educational opportunities that will prepare them to thrive in a 21st-century world." Act 73, § 1(b)(1).

605.   Yet Act 73's disparate treatment of approved independent schools actually provides *less* educational opportunities for Vermont students by excluding several approved independent schools—including all religious ones—from being able to receive town tuition funding.

606.   The discriminatory treatment is not rationally related to Act 73's stated purpose.

607.   Act 73 thus violates the Equal Protection Clause.

608.   Plus, the VPA treats schools differently based on a suspect class: religion.

609.   The VPA acted with religious hostility towards Mid Vermont due to the school's religious beliefs and exercise.

610.   Yet other schools have forfeited games and the VPA has not expelled or otherwise penalized those schools.

611.   The VPA does not have a compelling reason that justifies its discriminatory and disparate treatment of Mid Vermont Christian, nor are its gender identity policies narrowly tailored.

106

JA.154

612.   The VPA's actions and gender identity policies thus violate the Equal Protection Clause.

## NINTH CLAIM FOR RELIEF
### Violation of the Free Exercise Clause and Parental Rights – Substantial Interference with Religious Development of Children
### (Mid Vermont Christian on behalf of its students' parents, Christopher and Bethany Goodwin, and
### Nathan Partington Against All Defendants)

613.   Plaintiffs incorporate by reference paragraphs 1–472.

614.   Mid Vermont Christian raises this claim on behalf of its students' parents. *See Pierce*, 268 U.S. at 535–36.

615.   The Free Exercise Clause protects against laws and policies that "substantially interfere with the religious development of children." *Mahmoud v. Taylor,* 145 S. Ct. 2332, 2350 (2025) (citation modified).

616.   "A government burdens the religious exercise of parents when it requires them to submit their children to instruction that poses 'a very real threat of undermining' the religious beliefs and practices that the parents wish to instill." *Id.* at 2342 (quoting *Yoder*, 406 U.S. at 218).

617.   Mid Vermont's families—including the Goodwins and Partingtons— exercise their religion by sending their children to Mid Vermont so that they can receive a Christian education.

618.   For the Goodwins and Partingtons, "there are few religious acts more important than the religious education of their Children." *Id.* at 2351.

JA.155

619. For the Goodwins and Partingtons, sending their children to a public or secular private school would burden their religion by hindering the religious development and education of their children.

620. Act 73 substantially interferes with the religious development of O.P. by banning the Partingtons from using a public benefit owed to them under state law—tuition payments—at Mid Vermont Christian.

621. The public benefit at issue is the payment of tuition, not the provision of a public education. *See* 16 V.S.A. § 822(a)(1) (school district without high school shall "pay[ ] tuition to a public high school, an approved independent school, or an independent school meeting education quality standards, to be selected by the parents or guardians of the student"); *see also Carson*, 596 U.S. at 782–83 ("The benefit is *tuition* at a public *or* private school, selected by the parent, with no suggestion that the 'private school' must somehow provide a 'public' education.").

622. Act 73 "condition[s]" the "availability" of town tuition funds on Nathan Partington's "willingness to accept a burden on [his] religious exercise"—*i.e.,* sending O.P. to a public or secular private school. *Mahmoud*, 145 S. Ct. at 2359 (citation modified).

623. There are *zero* eligible religious schools under Act 73.

624. Prior to Act 73, there were 15 eligible religious schools.

625. Act 73 thus puts the Partingtons, and other town tuitioned families, to an unconstitutional choice: (1) exercise their religion by sending their children to religious schools to receive a religious education, thereby losing a public benefit, or

JA.156

(2) violate their religion by sending their children to a public or secular private school in order to receive a public benefit.

626.    It does not matter whether Act 73 is "neutral" or "generally applicable" (it isn't) because the law imposes a burden "of the same character as that imposed in *Yoder.*" *Id.* at 2361.

627.    Act 73 triggers strict scrutiny.

628.    Act 73 cannot survive strict scrutiny because it does not serve a compelling governmental interest and is not narrowly tailored to achieve any purported governmental interest.

629.    Nor is Act 73's exclusion of religious schools rationally related to Act 73's stated purposes.

630.    Act 73 violates the Free Exercise Clause as applied to Nathan Partington and Mid Vermont's students' parents.

631.    In addition, the Goodwins also believe that forcing M.G. to participate in girls' athletic events against biological males who claim to be females would impose on M.G. a set of values and beliefs—*i.e.*, the belief that sex is mutable and can be changed—that are hostile to the Goodwin's religious beliefs.

632.    The VPA's gender identity policies substantially interfere with the Goodwin's religious development of M.G. by forcing her to compete against males who claim to be females.

633.     It does not matter whether the VPA's gender identity policies are "neutral" or "generally applicable" (they are not) because they substantially

109

JA.157

interfere with the Goodwins' religious development of M.G. by forcing M.G. to compete against males who claim to be females.

634. The VPA's gender identity policies trigger strict scrutiny.

635. The VPA's gender identity policies cannot survive strict scrutiny because they do not serve a compelling governmental interest and are not narrowly tailored to achieve any purported governmental interest.

636. The VPA's gender identity policies violate the Free Exercise Clause as applied to Chris and Bethany Goodwin and Mid Vermont's students' parents.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter judgment against Defendants and order the following relief:

a.     A preliminary and permanent injunction, enjoining Act 73's de facto religious exclusion—via Act 73's geographic restriction (§ 21(a)(2)(C)), public-funding floor (§ 21(a)(2)(D)), and minimum class size requirement (§ 21(a)(2)(E))—as applied to Plaintiffs and other religious approved independent schools so that they will be eligible for town tuition funding and other public benefits.

b.     A preliminary and permanent injunction, enjoining the application of Rule 2200's nondiscrimination strings as applied to Mid Vermont Christian to the extent that the rules restrict or prohibit the school's religiously-based policies on marriage, sexuality, and gender, including those pertaining to pronouns, restrooms and locker rooms, dress codes, admissions, and employment.

c.     A preliminary and permanent injunction, prohibiting Defendants

JA.158

Saunders and Samuelson, and any person acting in concert with them, from excluding Plaintiffs from the Town Tuition, Dual Enrollment, and Early College Programs.

d.    A preliminary and permanent injunction prohibiting Defendant Waits River Valley (Unified #36 Elementary) School Board from denying Nathan Partington and O.P. town tuition funds to be used at Mid Vermont Christian.

e.    A permanent injunction prohibiting Defendant Nichols and any person acting in concert with him or the VPA from enforcing the VPA's gender identity policies against the constitutionally protected activities of Plaintiffs, including: (1) Mid Vermont's right to determine the members of its own athletic teams based on its religious beliefs (i.e., based on athletes' biological sex, not gender identity), and (2) its right to not participate in girls' athletic events where biological males are competing (or vice-versa).

f.    A permanent injunction[30] prohibiting Defendant Nichols and any person acting in concert with him or the VPA from denying current or future membership to Mid Vermont Christian because of its religious beliefs and exercise about sexuality and gender, including its decisions to not participate in girls' athletic events where males are competing (or vice-versa).

g.    Declare that Rule 2200, Act 73, and the VPA's gender identity policies as applied to Plaintiffs violate their free exercise rights, free speech rights, religious

---

[30] The Second Circuit directed the entry of a preliminary injunction reinstating Mid Vermont Christian in the VPA.

111

JA.159

autonomy rights, expressive association rights, equal protection rights, fundamental parental rights, and the right to be free from retaliation, under the First and Fourteenth Amendments to the U.S. Constitution.

    h.      Nominal, compensatory, and punitive damages against Defendants.

    i.      Court costs and expenses, including reasonable attorney's fees.

    j.      Any other relief to which Plaintiffs may be entitled.

Dated: October 31, 2025.         Respectfully submitted,

s/ *David Cortman*
David Cortman
AZ Bar No. 29490
Ryan J. Tucker*
AZ Bar No. 034382
Katherine Anderson*
AZ Bar No. 033104
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street Scottsdale, AZ 85260
(480) 444-0020
rtucker@adflegal.org
dcortman@adflegal.org
kanderson@adflegal.org

Jacob E. Reed*
VA Bar No. 97181
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4655
jreed@ADFlegal.org

*Attorneys for Plaintiffs*
**Pro Hac Vice Admission*

JA.160

**VERIFICATION OF COMPLAINT**

I, Vicky Fogg, Head of School of Mid Vermont Christian School, and a citizen of the United States and a resident of the State of Vermont, hereby declare under penalty of perjury that I have read the foregoing Amended Verified Complaint and the factual allegations contained therein, and the facts as alleged are true and correct.

Executed this __14__ day of October, 2025 in __Quechee__, Vermont.


_____

Vicky Fogg

JA.161

## VERIFICATION OF COMPLAINT

I, Christopher Goodwin, a citizen of the United States and a resident of the State of Vermont, hereby declare under penalty of perjury that I have read the foregoing Amended Verified Complaint and the factual allegations contained therein, and the facts as alleged are true and correct.

Executed this 31st day of October, 2025 in Quechee, Vermont.

s/Abel Goodwin
Abel Goodwin

JA.162

## VERIFICATION OF COMPLAINT

I, Christopher Goodwin, a citizen of the United States and a resident of the State of Vermont, hereby declare under penalty of perjury that I have read the foregoing Amended Verified Complaint and the factual allegations contained therein, and the facts as alleged are true and correct.

Executed this 31st day of October, 2025 in Quechee, Vermont.

*s/Christopher Goodwin*

Christopher Goodwin

JA.163

## VERIFICATION OF COMPLAINT

I, Bethany Goodwin, a citizen of the United States and a resident of the State of Vermont, hereby declare under penalty of perjury that I have read the foregoing Amended Verified Complaint and the factual allegations contained therein, and the facts as alleged are true and correct.

Executed this 31st day of October, 2025 in Quechee, Vermont.


*s/Bethany  Goodwin*

Bethany Goodwin


JA.164

## VERIFICATION OF COMPLAINT

I, Nathan Partington, a citizen of the

United States and a resident of the State of

Vermont, hereby declare under penalty of

perjury that I have read the foregoing

Amended Verified Complaint and the

factual allegations contained therein, and

the facts as alleged are true and correct.

Executed this __14__ day of October,

2025 in __Topsham__, Vermont.

Nathan Partington

JA.165