# 26-1416

## United States Court of Appeals for the Second Circuit

Mid Vermont Christian School, on behalf of itself and its students and its students' parents, Nathan Partington, individually, O. P., by and through his father and natural guardian, Nathan Partington,
Plaintiffs - Appellants,

T. S., K. S., by and through their parents and natural guardians, Nathaniel and Dawna Slarve, Nathaniel Slarve, individually, Dawna Slarve, individually, A. G., M. G., by and through their parents and natural guardians, Chris and Bethany Goodwin, Christopher Goodwin, individually, Bethany Goodwin, individually,
Plaintiffs,

v.

Zoie Saunders, in her official capacity as Secretary of the Vermont Agency of Education, Jennifer Deck Samuelson, in her official capacity as Chair of the Vermont State Board of Education, Waits River Valley (Unified #36 Elementary) School Board,
Defendants - Appellees,

Heather Bouchey, in her official capacity as Interim Secretary of the Vermont Agency of Education, Christine Bourne, in her official capacity as Windsor Southeast Supervisory Union Superintendent, Hartland School Board, Randall Gawel, in his official capacity as Orange East Supervisory Union Superintendent, Jay Nichols, in his official capacity as the Executive Director of The Vermont Principals' Association,
Defendants.

On Appeal from the United States District Court of Vermont
Hon. Geoffrey W. Crawford
(2:23-cv-00652-GWC)

## BRIEF OF AMICUS CURIAE EDCHOICE, INC. IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

Thomas M. Fisher
Bryan Cleveland
Melinda R. Hudson
EDCHOICE LEGAL ADVOCATES
111 Monument Circle, Suite 2650
Indianapolis, IN 46204
Tel: (317)681-0745
Fax: (317)978-9472
tfisher@edchoice.org

*Counsel for Amicus Curiae*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

EdChoice, Inc, is a nonprofit entity operating under Section 501(c)(3) of the Internal Revenue Code. It has no parent corporation and no publicly traded stock. No publicly held corporation owns any part of it. EdChoice Legal Advocates is a registered d/b/a of EdChoice, Inc.

i

# TABLE OF CONTENTS

**Page(s)**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT.........................i

TABLE OF AUTHORITIES.................................................................iv

INTEREST OF AMICUS CURIAE.........................................................1

SUMMARY OF ARGUMENT ...............................................................3

ARGUMENT .........................................................................................6

    I.  Act 73 Violates *Carson* Because Vermont Excludes Religious Schools from its Education-Benefit Program Because of their Religious Exercise.........................................................................6

        A. Act 73 violates *Carson* because it restricts eligibility based on religious schools' historic exclusion under Vermont's pre-*Carson* policy. ...........................................7

        B. The district court erred by refusing to apply *Carson* because Act 73 lacks magic words....................................10

    II.  Vermont's Rationale for Act 73 Does Not Justify Its Exclusion of Religious Schools. ...............................................................12

    III. Concrete religious pluralism produces successful school choice programs. ..................................................................................16

CONCLUSION ...................................................................................17

ii

CERTIFICATE OF COMPLIANCE.......................................................19

CERTIFICATE OF FILING AND SERVICE ........................................20

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. ex rel. Hester v. French,*
  985 F.3d 165 (2d Cir. 2021) .......................................................... 3, 7, 8

*Carson v. Makin,*
  596 U.S. 767 (2022)...................................4, 5, 7, 8, 9, 10, 11, 12, 15, 17

*Church of Lukumi Babalu Aye, Inc. v. Hialeah,*
  508 U.S. 520 (1993)....................................................................... 12, 15

*Espinoza v. Mont. Dep't of Rev.,*
  591 U.S. 464 (2020)......................................................................... 3, 11

*Fulton v. City of Philadelphia,*
  593 U.S. 522 (2021)....................................................................... 12, 13

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
  546 U.S. 418 (2006)............................................................................ 12

*Guinn v. United States,*
  238 U.S. 347 (1915)............................................................................. 9

*In re A.H.,*
  999 F.3d 98 (2d Cir. 2021) ................................................................. 3

*Lyng v. Nw. Indian Cemetery Protective Ass'n,*
  485 U.S. 439 (1988)............................................................................. 7

*Sherbert v. Verner,*
  374 U.S. 398 (1963)............................................................................. 7

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
  582 U.S. 449 (2017)......................................................................... 3, 11

iv

**Statutes**

16 V.S.A. § 828...............................................................................4, 8

Vt. Acts No. 73 (2025).....................................4, 5, 6, 7, 8, 9, 10, 12, 13, 15

**Other Authorities**

EdChoice, *The 123s of School Choice* (2024).........................................16

M. Danish Shakeel, Patrick J. Wolf, *et al.*, *The Public Purposes of Private Education: A Civic Outcomes Meta-Analysis*, 36 Ed. Psych. Rev. 40 (2024) ....................................................................................17

Milton Friedman, *Capitalism and Freedom* 97 (1962)............................1

**Rules**

Fed. R. App. P. 29...............................................................................1

## INTEREST OF AMICUS CURIAE[1]

EdChoice is a nonprofit, nonpartisan 501(c)(3) organization that serves as a national leader in education-choice research, fiscal analysis, policy development, training, outreach, and legal defense. EdChoice's mission is to advance education freedom and choice for all as a pathway to successful lives and a stronger society. EdChoice supports policies that afford families financial access to educational opportunities that best fit the needs of their children—whether public school, private school, charter school, home school, or any other learning environment.

One of EdChoice's guiding principles is that education freedom requires education pluralism. It does parents little good to have a choice among multiple versions of the same educational content and environment for their children. As EdChoice's founder, Nobel laureate economist Milton Friedman, observed, the problem to be solved by education freedom is "an excess of conformity" and the solution "is to foster diversity" in education. Milton Friedman, *Capitalism and Freedom* 97 (1962). Ac-

---

[1] Pursuant to Fed. R. App. P. 29(a), counsel for amicus curiae represents that all parties consent to the filing of this brief and that no party, party's counsel, or person other than amicus curiae authored this brief in whole or in part or contributed money intended to fund preparing or submitting this brief.

cordingly, EdChoice submits this brief in support of Appellants, including Mid Vermont Christian School, whose participation in Vermont's Town Tuition Program will offer families important options that meet their children's educational needs.

Including private religious education among choices available to families is critical to the success of school choice programs. And data from programs around the country demonstrate that meaningful school choice promotes successful educational outcomes. Vermont's historic and current refusal to include religious schools as options in its Town Tuition Program both impinges religious liberty and undermines the mission of education freedom.

## SUMMARY OF ARGUMENT

Vermont has a history of excluding religious schools from its Town Tuition Program. Even after the Supreme Court held in two different cases that a state cannot deny an education benefit because of the recipient's religious exercise, *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449 (2017); *Espinoza v. Mont. Dep't of Rev.*, 591 U.S. 464 (2020), Vermont "nevertheless continued to discriminate against religious schools and students in violation of the First Amendment." *In re A.H.*, 999 F.3d 98, 100 (2d Cir. 2021).

This Court has already explained that Vermont's refusal to provide tuition payments for students who qualified for the program but chose to attend a religious school is unconstitutional, holding that "the individual petitioners [we]re entitled to TTP funding to the same extent as parents who choose secular schools for their children." *Id.* at 103, 108; *see also A.H. ex rel. Hester v. French*, 985 F.3d 165, 183-84 (2d Cir. 2021) (holding that plaintiff high school student was likely to succeed on the merits of her claim that Vermont's refusal to pay tuition for her attendance at religiously affiliated high school so she could participate in Dual Enrollment Program violated the Free Exercise Clause).

3

But only after the Supreme Court's 2022 ruling in *Carson v. Makin*, 596 U.S. 767 (2022), did Vermont finally alter its policy to begin paying tuition for students attending religious schools through the program. JA.770.

But Vermont's tolerance for religious schools lasted only briefly, for in 2025, its legislature enacted Act 73, which changed the eligibility requirements for private schools to receive tuition for students attending under the Town Tuition Program. Now, to qualify for town-tuition funds, an "approved independent school" must meet all of the following criteria: (1) located within Vermont; (2) qualified as an approved independent school on or before July 1, 2025; (3) located within a district or supervisory union that does not operate a public school for some or all grades as of July 1, 2024; (4) received district-funded tuition for at least 25% of its enrollment during the 2023-2024 school year; and (5) comply with the minimum class-size requirements, subject to the right to seek a waiver. Act 73, § 21; 16 V.S.A. § 828(a)(2); JA.772.

The district court found that, under Act 73's eligibility requirements, not a single religious school qualifies as an approved independent school. JA.774–75. And none ever will, thanks to the requirement that

4

ties eligibility to the percentage of students attending using the Program during the 2023-2024 school year—the first full year that Vermont allowed religious schools to participate. *Id.*; *see* JA.770.

That requirement necessarily favors secular private schools over religious schools given the previous exclusion of religious schools. Secular private schools had the opportunity to reach the 25% threshold over many years of eligibility and participation in the program, while religious schools had little more than one school year to do the same. In this way, Act 73 re-establishes Vermont's pre-*Carson* regime impinging the religious liberty of schools and the families that would choose religious education for their children.

Vermont's stated interests do not justify such exclusion-by-bootstrap. Its general, high-level interest in providing a "high-quality, cost-effective, and substantially equal education to every child," JA.496, does not support the "25 by '24" exclusion at issue here. To its credit, Vermont hardly tries to hide the ball—it expressly states that it prefers secular private schools that have long participated in the program over the religious schools. JA.497. But that is an admission of discriminatory and illegitimate treatment, not a compelling interest.

Ultimately, Vermont's antipathy to religious schools undermines its education mission. School choice programs are successful when parents have meaningful choices that include religious education. Religious schools have been critical to the success of education freedom for decades. Studies show that religious schools outperform other schools in student academic achievement, higher education attainment, and tolerance and civic engagement. Vermont's exclusion of all religious education options from its Town Tuition Program thus deprives the education marketplace of exactly the meaningful choices parents need for their children to succeed.

## ARGUMENT

**I.  Act 73 Violates *Carson* Because Vermont Excludes Religious Schools from its Education-Benefit Program Because of their Religious Exercise.**

Act 73 ties a private school's eligibility to accept tuition from a student under the Town Tuition Program to metrics that seal in amber the results of Vermont's decades-long religious discrimination. It therefore violates the Free Exercise Clause by restricting education benefits based on a school's religious character and preventing parents from choosing religious education for their children. The district court erred by declin-

6

ing to apply *Carson v. Makin*, 596 U.S. 767 (2022), just because the challenged exclusion cleverly avoided using the word "religious."

### A. Act 73 violates *Carson* because it restricts eligibility based on religious schools' historic exclusion under Vermont's pre-*Carson* policy.

The Free Exercise Clause prohibits states from excluding religious schools from participating in education-benefits programs because of their religious exercise. *Carson*, 596 U.S. at 778–81. The Clause "protects against 'indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.'" *Id.* at 778 (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)). As the Supreme Court has "repeatedly held," "a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id.* (citing *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)). The Supreme Court made this principle emphatically clear in *Carson*, which rejected Maine's "nonsectarian" requirement for its own town-tuitioning program. *Id.* at 789.

Like Maine, Vermont long excluded religious schools from participating in its Town Tuition Program. For decades, Vermont has prevented students from using program funds to attend religious schools. *See A.H.*

7

*v. French*, 985 F.3d 165, 170–73 (2d Cir. 2021). It was not until the fall of 2022, after the Supreme Court decided *Carson*, that Vermont changed its policy to begin permitting students to use program-funded tuition at religious schools. JA.770.

But Vermont's court-ordered tolerance for religious schools was short lived. Less than three years later, Act 73 deployed the effects of the state's historical exclusion of religious schools from the Town Tuition Program to exclude them once again. JA.774–75. Specifically, Act 73's requirement that, to qualify under the program, a private school must have "[r]eceived district-funded tuition for at least 25% of its enrollment during the 2023-2024 school year," JA772; Act 73, § 21; 16 V.S.A. § 828(a)(2), makes prior religious discrimination a feature of eligibility.

Vermont began permitting religious schools to participate in 2022, which means that religious schools had little more than one year to amass Town Tuition Program students before Act 73 cut them off. Unsurprisingly, with so little time to build program-funded clientele, no religious school in the 2023-2024 school year had 25% of its enrollment supported by program-funded tuition. JA.774–75. As a result, under Act 73, no religious school will *ever* be able to meet the requirements to partici-

8

pate in the Town Tuition Program. This policy violates the Free Exercise Clause just like Vermont's pre-*Carson* policy. Rather than exclude religious schools directly, Vermont reaches them by codifying the results of its former (unlawful) exclusion.

Vermont's refusal to follow Supreme Court rulings to respect constitutional rights is unfortunately not without precedent. Shortly after statehood, Oklahoma's constitution required that voters "be able to read and write" except for those "entitled to vote" as of January 1, 1866, and their descendants. *Guinn v. United States*, 238 U.S. 347, 357 (1915). Despite "contain[ing] no express words of an exclusion," that provision in "substance and effect" disenfranchised black voters by making the "period of time before the enactment of the 15th Amendment … the controlling and dominant test of the right of suffrage." *Id.* at 364–65.

In other words, a law is discriminatory when it facially carries forward vestiges of prior discrimination. In the same way, Act 73 violates the Free Exercise Clause by giving operational effect to its prior discrimination against religious schools.

### B. The district court erred by refusing to apply *Carson* because Act 73 lacks magic words.

The district court erred by failing to apply *Carson* to Vermont's exclusion of religious schools.

The district court misstated the doctrine by drawing a line between "explicit exclusion" and "inferred effects on religious practices." JA.780. In the district court's view, no matter the "practical effect" a state law has in "barring access to a benefit to students enrolled in religious schools," "[i]f a state law is silent about religion," then *Carson* does not apply. *Id.* But by requiring such "magic words" before applying the doctrine, the court made the same mistake as Maine made in *Carson*. 596 U.S. at 784–85.

In *Carson*, Maine argued that its exclusion of religious schools from the town-tuitioning program was permissible because "the public benefit Maine is offering is a free public education," not "tuition assistance payments to be used at approved private schools." 596 U.S. at 782. The Supreme Court rejected that argument, explaining that a state cannot avoid the First Amendment "simply by redefining" the program. *Id.* at 785. The Supreme Court's "holding in *Espinoza* turned on the substance of free exercise protections" and "applies fully whether the prohibited discrimi-

nation is in an express provision … or in a party's reconceptualization of the public benefit." *Id.*

The constitutional violation under *Carson* does not merely come from a law targeting religious schools on the "explicit" basis that they are religious. JA.780. Rather, the violation comes from "penaliz[ing] the free exercise" of religion by excluding private actors who would otherwise participate in a public-benefits program because of their religious exercise. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 466 (2017).

In this case, the basis for Vermont's exclusion of Mid Vermont Christian School is that school's religious exercise. Vermont prohibited religious schools from participating in the program because they were religious up until 2022. Although Vermont frames its current exclusion in terms of a private school's percentage of program-funded students in the 2023-2024 school year, that is just "redefining" the same religious-based exclusion, *Carson*, 596 U.S. at 785. Although Act 73 is one step removed from the express-exclusion policy, *Carson* applies just the same. The district court erred by failing to apply *Carson* simply because the words of the exclusionary policy do not include the word "religious."

11

## II. Vermont's Rationale for Act 73 Does Not Justify Its Exclusion of Religious Schools.

Vermont's stated interest in "providing a high-quality, cost-effective, and substantially equal education to every child," JA.496, does not justify its exclusion of religious schools from the program. Nor does the interest that the district court identified—"the preference for favoring the public school system over independent schools" in the name of addressing "concerns about the cost, equity and efficient delivery of public education." JA.792.

First, Vermont's interest is too generalized to satisfy strict scrutiny. To overcome strict scrutiny, the state must show that refusing to allow Mid Vermont Christian School to participate in the program "advance[s] 'interests of the highest order'" and is "narrowly tailored in pursuit of those interests." *Carson*, 596 U.S. at 780 (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)). It cannot "rely on 'broadly formulated interests,'" but instead must demonstrate the "harm of granting specific exemptions to particular religious claimants." *Fulton v. City of Philadelphia*, 593 U.S. 522, 541 (2021) (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)).

12

Vermont, in asserting only that Act 73's requirements serve those interests in general, JA.496–98, failed to do so here. Like in *Fulton*, Vermont has not shown that allowing Mid Vermont Christian School to participate "will put [the state's] goals at risk." 593 U.S. at 541–42. Its asserted concern that including Mid Vermont among the private schools available to students under the Town Tuition Program would somehow undermine the State's interests in "providing a high-quality, cost-effective, and substantially equal education to every child," JA.496, is nothing more than "speculation," *Fulton*, 593 U.S. at 542.

The district court's articulation of the state's interest as a "preference for favoring the public school system over independent schools," JA.792, is even further from justifying the exclusion. Once a student qualifies for the Town Tuition Program by virtue of not living in a district with a public school, the state's preference for public schools goes away because the student may choose any qualifying school to attend, whether private or public. That rationale, moreover, has nothing to do with the 25% program-funded-enrollment requirement or the geographic requirement, which both prefer some private schools over others.

13

Second, and even more critically, Vermont's rationale for its exclusionary eligibility requirements is, at bottom, an illegitimate preference for secular private schools over religious schools. In its district court briefing, Vermont stated that its "independent school eligibility criteria" serves to "direct public tuition dollars to only those independent schools that are necessary to fill the gaps in Vermont's existing public school infrastructure." JA.496. In Vermont's words, "[d]irecting funding to the schools that already educate lots of students with public tuition dollars furthers the Legislature's goal of school consolidation, while having the salutary effect of minimizing disruption to existing educational arrangements." JA.497.

But that is just another way of saying that Vermont prefers secular private schools over religious ones, as Vermont's long-held policy of excluding religious schools ensured that the only private schools "that already educate lots of students with public tuition dollars" are not religious ones. The district court's holding reflects the same impermissible preference. The court held that Act 73's eligibility restrictions for private schools "discourages the application of independent schools to join the town tuition program." JA.792.

14

A state's preference for secular schools over religious schools will never justify an exclusionary policy. In *Carson*, the state's "interest in separating church and state 'more fiercely' than the Federal Constitution" did not support its policy of only paying tuition for students at private schools "so long as the schools are not religious" because it constituted "discrimination against religion." 596 U.S. at 781.

The same is true here, where Vermont's policy excludes religious schools because the state prefers secular ones. "A state's antiestablishment interest does not justify enactments that exclude some members of the community from an otherwise generally available public benefit because of their religious exercise." *Id.* As the Supreme Court explained in *Carson*, "[a] law that targets religious conduct for distinctive treatment … will survive strict scrutiny only in rare cases." *Carson*, 596 U.S. at 781 (quoting *Church of Lukumi*, 508 U.S. at 546). And "[t]his is not one of them." *Id.*

Vermont's stated preference for funding private schools "that already educate lots of students with public tuition dollars" and "minimizing disruption to existing educational arrangements," JA.497, is another way of saying that Vermont is only willing to pay tuition for students

15

attending secular private schools, which Vermont has long supported. That interest is itself discriminatory and does not support Vermont's exclusion of Mid Vermont Christian School.

## III. Concrete religious pluralism produces successful school choice programs.

Vermont's Town Tuition Program holds great promise because when parents have the resources to choose the best education providers for their children, education outcomes improve. Studies of choice programs throughout the country overwhelmingly reflect a common conclusion: Choice leads to measurable educational benefits for many students, is neutral for others, and harms none. The 2024 edition of EdChoice's research compendium reports that "[t]he number of studies that find null or positive effects from school choice significantly outweigh that of studies that find negative effects." EdChoice, *The 123s of School Choice* 5 (2024).

Those results presuppose meaningful choices, *i.e.*, choices among providers of educational content not available in traditional public schools—especially religious schools. Religious schools provide a critical education option for all parents because they inculcate political tolerance and civic engagement. A recent statistical meta-analysis examining the

16

association between private schools and four civic outcomes (political tolerance, political participation, civic knowledge and skills, and voluntarism and social capital) showed that private schools boost civic outcomes for students over comparably situated public school students. *See* M. Danish Shakeel, Patrick J. Wolf, *et al.*, *The Public Purposes of Private Education: A Civic Outcomes Meta-Analysis*, 36 Ed. Psych. Rev. 40 (2024). Critically, religious private schools were particularly more likely to be associated with better civic outcomes. *See id.* at 23.

Thus, meaningful education pluralism—which includes religious education providers—improves student education attainment and socialization alike. Such concrete results offer more students far more opportunity and better odds than Vermont's policy of fossilizing the pre-*Carson* regime—the only real promise of which is exclusion of a successful genre of private schools in the education-freedom era.

## CONCLUSION

The order denying Plaintiffs' Motion for Preliminary Injunction should be reversed.

17

Date: July 1, 2026        Respectfully submitted,

/s/ Thomas M. Fisher
Thomas M. Fisher
Bryan Cleveland
Melinda R. Hudson
EDCHOICE LEGAL ADVOCATES
111 Monument Circle, Suite 2650
Indianapolis, IN 46204
(317) 681-0745
tfisher@edchoice.org
*Counsel for Amicus Curiae*

18

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

> [x] this document contains 3,089 words.
> [ ] this brief uses a monospaced typeface and contains <state the number of> lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [x] this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365, Version 2407 in size 14 Century Schoolbook font.
> [ ] this document has been prepared in a monospaced typeface using <state name and version of word processing program> with <state number of characters per inch and name of type style>.

Date: July 1, 2026

/s/ Thomas M. Fisher
Thomas M. Fisher
EDCHOICE LEGAL ADVOCATES
111 Monument Circle, Suite 2650
Indianapolis, IN 46204
(317) 681-0745
tfisher@edchoice.org
*Counsel for Amicus Curiae*

19

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on July 1, 2026, I electronically filed the fore-going using the Court's CM/ECF system, which will send notification of such filing to all registered participants.

Dated: July 1, 2026

/s/ Thomas M. Fisher
Thomas M. Fisher
EDCHOICE LEGAL ADVOCATES
111 Monument Circle, Suite 2650
Indianapolis, IN 46204
(317) 681-0745
tfisher@edchoice.org
*Counsel for Amicus Curiae*
