# 26-1416

**UNITED STATES COURT OF APPEALS FOR
THE SECOND CIRCUIT**

Mid Vermont Christian School, on behalf of itself and its students and its students' parents, Nathan Partington, individually, O.P., by and through his father and natural guardian, Nathan Partington,

*Plaintiffs-Appellants,*

T.S., K.S., by and through their parents and natural guardians, Nathaniel and Dawna Slarve, Nathaniel Slarve, individually, Dawna Slarve, individually, A.G., M.G., by and through their parents and natural guardians, Chris and Bethany Goodwin, Christopher Goodwin, individually, Bethany Goodwin, individually,

*Plaintiffs*, v.

Zoie Saunders, in her official capacity as Secretary of the Vermont Agency of Education, Jennifer Deck Samuelson, in her official capacity as Chair of the Vermont State Board of Education, Waits River Valley (Unified #36 Elementary) School Board,

*Defendants-Appellees*,

Heather Bouchey, in her official capacity as Interim Secretary of the Vermont Agency of Education, Christine Bourne, in her official capacity as Windsor Southeast Supervisory Union Superintendent, Hartland School Board, Randall Gawel, in his official capacity as Orange East Supervisory Union Superintendent, Jay Nichols, in his official capacity as the Executive Director of The Vermont Principals' Association,

*Defendants*.

On Appeal from the United States District Court for the
District of Vermont / Case No. 2:23-cv-00652

**APPELLEE WAITS RIVER VALLEY (UNIFIED
#36 ELEMENTARY) SCHOOL BOARD'S BRIEF**

Pietro J. Lynn
Sean M. Toohey
LYNN, LYNN, BLACKMAN
& TOOHEY, P.C.
76 St. Paul Street, Suite 400
Burlington, VT 05401

*Counsel for Defendant-Appellee*
*Waits River Valley (Unified #36*
*Elementary) School Board*

## I.    **<u>Disclosure Statement</u>**

Since there is no non-governmental corporation party to this proceeding, and since this is not a criminal case or a bankruptcy case, the disclosure requirements of Fed. R. App. P. 26.1 are not applicable.

# TABLE OF CONTENTS

Disclosure Statement.................................................................................. i

Table of Contents ..................................................................................... ii

Table of Authorities ................................................................................ iii

Statement of the Case............................................................................... 1

Summary of the Argument........................................................................ 4

Argument................................................................................................... 5

    I.    The District Court's factual findings are not clearly erroneous………5

    II.    The District Court's decision does not rest on an error of law……….9

Conclusion ............................................................................................. 12

Certificate of Compliance ...................................................................... 13

Certificate of Service ............................................................................. 14

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*A.H. ex rel. Hester v. French,*
     985 F.3d 165 (2d Cir. 2021) .................................................................. 3

*A.M. v. French*,
     2:19-cv-15, 2020 WL 2786446 (D. Vt. May 29, 2020) ....................... 3

*Athens Sch. Dist. v. Vermont State Bd. of Educ.,*
     2020 VT 52, 212 Vt. 455, 237 A.3d 671 (2020) .................................. 2

*Blondin v. Milton Town Sch. Dist.*,
     2021 VT 2, 214 Vt. 44, 251 A.3d 959 ................................................... 3

*Brigham v. State*,
     66 Vt. 246, 692 A.2d 384 (1997)......................................................... 2

*Carson as next friend of O. C. v. Makin*,
     596 U.S. 767, 142 S. Ct. 1987, 213 L. Ed. 2d 286 (2022).................... 9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
     508 U.S. 520 (1993)..................................................................... 10-11

*City of Montpelier v. Barnett*,
     2012 VT 32, 191 Vt. 441, 49 A.3d 120 ................................................ 2

*E.B. & A.C. Whiting Co. v. City of Burlington*,
     106 Vt. 446, 175 A. 35 (1934)............................................................ 2

*Employment Div., Dept. of Human Resources of Oregon v. Smith*
     494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1996)....................... 9

*Espinoza v. Montana Dep't of Revenue.*
91 U.S. 464, 140 S. Ct. 2246, 207 L. Ed. 2d 679 (2020)...................... 9

*E.W. v. French*,
Case No. 2:22-cv-59, 2022 WL 845700 (D. Vt. Feb. 24, 2022).......... 3

*In re A.H.*,
999 F.3d 98 (2d Cir. 2021) ............................................................... 3

*Mahmoud v. Taylor,*
606 U.S. 522 (2025)......................................................................... 10

*Masterpiece Cakeshop v. Colorado Civil Rights Commission,*
584 U.S. 617 (2018)..................................................................... 10, 11

*Michael M. v. Superior Court,*
450 U.S. 464, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981) ..................... 11

*Monell v. Dep't of Soc. Servs. of City of New York,*
436 U.S. 658, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978))............ 4

*Slattery v. Hochul*,
61 F.4th 278 (2d Cir. 2023) .............................................................. 10

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
120 F.4th 59 (2d Cir. 2024) ............................................................... 5

*Stormans, Inc. v. Wiesman*,
579 U.S. 942, 136 S. Ct. 2433, 2437 195 L.Ed.2d 870 (2016) .......... 11

*Tandon v. Newsom*,
593 U.S. 61 (2021)............................................................................ 10

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
582 U.S. 449, 137 S. Ct. 2012, 198 L. Ed. 2d 551 (2017) ................... 9

*U.S. v. O'Brien,*
      391 U.S. 367, 88 S.Ct. 1673 (1968) ...................................................... 11

*Vitale v. Bellows Falls Union High Sch.,*
      2023 VT 15, 217 Vt. 611, 293 A.3d 309 .............................................. 2

*Vives v. City of New York,*
      524 F.3d 346 (2d Cir. 2008) ................................................................ 4

**Statutes**

1 V.S.A. § 126 .............................................................................................. 3

16 V.S.A. § 828 .................................................................................... passim

**Rules**

Fed. R. App. P.  28(i) .................................................................................. 1

v

## STATEMENT OF THE CASE

Pursuant to Fed. R. App. P. 28(i), Defendant-Appellee Waits River Valley (Unified #36 Elementary) School Board ("WRV School Board") joins and adopts by reference Defendant-Appellee the State of Vermont's brief in its entirety, as if set forth fully herein, for the following reasons.

This appeal does not actually concern the WRV School Board. Plaintiff-Appellants Mid Vermont Christian School ("Mid Vermont") and the Partingtons challenge the state law known as Act 73, passed by the State of Vermont. They do not allege, nor could they, that the WRV School Board had anything to do with the passage of Act 73, nor do they claim that the Board made statements hostile to religion.

Act 73, Section 21, amends 16 V.S.A. § 828, defining new limits on the schools to which Vermont public schools can send public tuition funds. J.A. 216-18. Pre-amendment, Vermont school boards had some discretion. Post-amendment, they have no discretion. Because Mid Vermont is not an "approved independent school" under Section 21, the WRV School Board cannot send public tuition funds to the school. The WRV School Board has not "refused" to pay tuition; it cannot pay under the statute, as defined by the State of Vermont.

The Vermont Supreme Court has repeatedly confirmed "the 'long and settled' principle in Vermont that education is 'a fundamental obligation of state

1

government.'" *Athens Sch. Dist. v. Vermont State Bd. of Educ.*, 2020 VT 52, ¶ 51, 212 Vt. 455, 237 A.3d 671, 691 (2020) (quoting *Brigham v. State*, 166 Vt. 246, 264, 692 A.2d 384, 395 (1997) (rejecting contention "that the primary constitutional responsibility for education rests with the towns of Vermont"). "The [Vermont] constitutional obligation to provide for education rests with the state, not school districts or towns." *Vitale v. Bellows Falls Union High Sch.*, 2023 VT 15, ¶ 15, 217 Vt. 611, 624, 293 A.3d 309 (citing *Brigham, supra*). "The state is ultimately responsible for inequities resulting from its chosen methods of providing for education." *Id.* (citing *Brigham, supra*) ("They are choices made by the government of the State of Vermont, and choices for which it bears ultimate responsibility.").

Moreover, Vermont has "adopted Dillon's Rule, declaring that 'a municipality has only those powers and functions specifically authorized by the legislature, and such additional functions as may be incident, subordinate or necessary to the exercise thereof.'" *City of Montpelier v. Barnett*, 2012 VT 32, ¶ 20, 191 Vt. 441, 452, 49 A.3d 120, 129 (citing *E.B. & A.C. Whiting Co. v. City of Burlington*, 106 Vt. 446, 460–61, 175 A. 35, 42 (1934) ("A municipal corporation is a creature of the Legislature, and it possesses only such powers or rights as are expressly granted to it by the Legislature, or fairly implied in or incident to those expressly granted because necessary to carry the latter into effect.")). "For better

2

or worse, this rule expresses the liberal commitment to the state as the centralized source of political power." *Id.* In Vermont, "Schools and school districts are municipal entities supported by taxpayers." *Blondin v. Milton Town Sch. Dist.*, 2021 VT 2, ¶ 63, 214 Vt. 44, 71, 251 A.3d 959, 978 (citing 1 V.S.A. § 126).

Thus, it is the State that is responsible for making education decisions in Vermont, and school districts and their respective boards only have such authority as is delegated by statute. With regard to the payment of public tuition funds under Act 73, Section 21, school boards have no authority to make public tuition payments to schools that do not satisfy the statutory criteria under 16 V.S.A. § 828.

Mid Vermont's reliance on certain language from prior Vermont tuition cases about the role of Vermont school boards is misplaced. *See In re A.H.*, 999 F.3d 98 (2d Cir. 2021); *A.H. ex rel. Hester v. French*, 985 F.3d 165 (2d Cir. 2021); *A.H. v. French*, 511 F. Supp. 3d 482 (D. Vt. 2021); *A.M. v. French*, No. 2:19-cv-15, 2020 WL 2786446 (D. Vt. May 29, 2020) *E.W. v. French*, Case No. 2:22-cv-59, 2022 WL 845700 (D. Vt. Feb. 24, 2022) (collectively, the "*French* cases"). The *French* cases were decided under the prior version of 16 V.S.A. § 828, where boards had some discretion. Under the current 16 V.S.A. § 828, as amended by Act 73, Section 21, Vermont school boards have no discretion. Because Mid Vermont is not an approved independent school under the statute, the WRV School Board cannot pay public tuition funds on behalf of Mr. Partington to Mid Vermont. In

3

fact, Mr. Partington has never asked the WRV School Board to pay tuition for his son O.P. to attend Mid Vermont. J.A. 65-67.

The WRV School Board has twice moved to dismiss for lack of standing and failure to state a *Monell* claim[1] under § 1983, first in 2024 and again following the Amended Complaint in 2026. J.A. 017; 25. The District Court has not had the opportunity to rule on the motion to dismiss because of the motions for preliminary injunction and related appeals, including this one. J.A. 014-32. The first appeal concerned the impact of the Vermont Principals Association's policy concerning transgender student athletes on Mid Vermont, which did not involve the WRV School Board. The present appeal concerns Act 73; the WRV School Board (and all Vermont schools) must comply with Act 73 but it had no role in enacting it.

## SUMMARY OF THE ARGUMENT

The District Court did not abuse its discretion when it denied the motion for preliminary injunction because its factual findings and legal conclusions are correct.

---

[1] *See Vives v. City of New York*, 524 F.3d 346, 353 (2d Cir. 2008) ("[W]e agree with all circuits to address state laws mandating enforcement by municipal police officers that a municipality's decision to honor this obligation is not a conscious choice. As a result, the municipality cannot be liable under *Monell* in this circumstance.") (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978)).

## ARGUMENT

As stated above, the WRV School Board, as a Vermont municipality, joins and adopts the State of Vermont's brief in full.

Additionally, the Court should affirm because the District Court did not abuse its discretion when it denied the motion for preliminary injunction. *See State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024) ("A district court 'abuses' or 'exceeds' the discretion accorded to it [in resolving a motion for preliminary injunction] when (1) its decision rests on an error of law ... or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions.") (cleaned up). The District Court correctly determined that Act 73, Section 21, is neutral towards religion and its purpose satisfies the rational basis test. J.A. 791-92.

### I. The District Court's factual findings are not clearly erroneous.

The District Court provided an accurate factual account of the history of the provision of education and the payment of public tuition funds in Vermont and its relationship to the First Amendment and the Vermont Constitution. J.A. 762-75. In contrast, Mid Vermont and the Partington's depiction of a monolithic "Vermont" fueled by animus towards religion is inaccurate and unconvincing.

The District Court correctly understood that Act 73 is significant, omnibus legislation addressing changes to the provision of education in Vermont, encompassing 70 Sections covering topics including school consolidation based on location, minimum class size, per pupil spending, career and technical education, special education, taxation, and school construction.  J.A. 770-74.  Within this context, one section, Section 21, addresses new limitations on the payment of public tuition funds to approved independent schools.  J.A. 772.  The Section 21 limitations identified by the District Court align with the overall purpose of Act 73:

- Located within Vermont;

- Qualified as an approved independent school before July 1, 2025;

- Located within a district or supervisory union that does not operate a public school for some or all grades as of July 1, 2024;

- Received district-funded tuition for at least 25% of its enrollment during the 2023-2024 school year; and

- Complies with minimum class size requirements, subject to the right to seek a waiver.

J.A. 772.  These limitations relate to declining student populations, economies of scale, utilizing existing resources, and geography, particularly with reference to Vermont's historical academies.  J.A. 765-75.

6

The District Court correctly understood that this is a case about "approved independent schools," which are fundamentally different than "therapeutic schools," "tutorial programs" or "approved educational programs" under Section 21. J.A. 774-75; 787-89. The District Court correctly found that the limitations under Section 21 reduced the total number of approved independent schools eligible to receive public tuition funds from 48 to 18 and that the effect was roughly equal for both religiously affiliated independent schools (15) and secular independent schools (18). J.A. 774-75; 787-89. J.A. 774-75; 787-89. The District Court correctly determined that most of the schools disqualified under Section 21 failed to satisfy both the geographic limitation and the 25% requirement (10 religious schools and 10 secular schools), finding that 5 religious schools and 8 secular schools were eliminated based the 25% requirement only, and 1 secular school was eliminated based on the geographic limitation, reflecting an equal impact on religious and secular independent schools and an overall reduction in the number of approved independent schools in Vermont. J.A. 774-75; 787-89.[2]

In an attempt at obfuscation, Mid Vermont and Partington assert that therapeutic schools are the same as secular independent schools, adding the

---

[2] Mid Vermont asserts that the District Court miscalculated, suggesting that only 13 or 14 secular independent schools were disqualified under Section 21 rather than 18. Even assuming this is correct, substantially the same number of religious and secular schools were rendered ineligible whether it was 15/18 or 15/13 or 14.

number of therapeutic schools (27) to the number of approved independent schools (18) to inflate the number.  This ignores the definition in Section 21(d) that distinguishes the two, explaining that therapeutic schools are specialized schools that limit enrollment only to special education students on IEPs or Section 504 Plans who are placed in the therapeutic school pursuant to a written agreement or court order.  J.A. 788; 218.  The same goes for approved educational and therapeutic programs, which are fundamentally different than independent schools.

Mid Vermont's claim that Section 21 preserved 75% of secular schools (including therapeutic schools, approved educational programs, and tutorial programs) while eliminating 100% of religious schools does not withstand any scrutiny.  Mid Vermont's claim that it serves students with disabilities wholly ignores the fact that all independent schools serve students with disabilities to some extent; this does not mean that these schools limit their enrollment to students on IEPs or 504 Plans who are "enrolled pursuant to a written agreement between a local education agency and the school or pursuant to a court order."  J.A. 218.  Mid Vermont clearly does not limit its enrollment to special education students.  Mid Vermont is not a therapeutic school, nor is it an approved educational program or tutorial program.  It is an independent school that does not satisfy the neutral standards under Act 73, Section 21, just like a more than a dozen

other secular independent schools that no longer qualify to receive public tuition funds.

In light of the foregoing, the District Court did not base its decision on clearly erroneous factual findings.

## II.     The District Court's decision does not rest on an error of law.

The District Court correctly analyzed the history of Establishment Clause and Free Exercise cases interpreting the First Amendment in relation to public benefits.  J.A. 777-80.  The District Court correctly distinguished the present case from more recent U.S. Supreme Court cases concerning explicit exclusion of religious entities from public benefits including tuition, *Carson as next friend of O. C. v. Makin*, 596 U.S. 767, 142 S. Ct. 1987, 213 L. Ed. 2d 286 (2022); *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 140 S. Ct. 2246, 207 L. Ed. 2d 679 (2020); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 137 S. Ct. 2012, 198 L. Ed. 2d 551 (2017).  J.A. 777-80.

The District Court correctly determined that since Act 73 does not explicitly exclude religious entities, the standard from *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878–79, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1996), applies.  J.A. 781-82.  The District Court correctly applied the *Smith* standard to the facts, concluding that while Act 73, Section 21, places burdens on religious practice, it is neutral and generally applicable because secular

9

independent schools are impacted in the same manner and in the same number. J.A. 782.[3]

On the issue of religious animus, the District Court correctly distinguished this case from *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993) (concerning a city council ordinance) and *Masterpiece Cakeshop v. Colorado Civil Rights Commission*, 584 U.S. 617 (2018) (concerning a state civil rights commission) because this case concerns statements from nine legislators in a 150-member state legislature, passing a law. J.A. 784-86; 790. The District Court correctly concluded that the nine statements are a "thin basis" supporting the claim that the passage of Act 73 (including Section 21) was motivated by religious animus given that Act 73 is facially neutral. J.A. 784-86; 790.

In doing so, the District Court correctly analogized this case to *Slattery v. Hochul*, 61 F.4th 278, 293 (2d Cir. 2023), which acknowledged the challenge in attributing religious animus to the passage of neutral legislation based on the statements of a few legislators:

> These statements could be read to suggest hostility on the part of some legislators to the religious exercise of employers. But the statements do not establish that the purpose of the legislature was to target religion. "What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently

---

[3] Mid Vermont's reliance on *Mahmoud v. Taylor*, 606 U.S. 522 (2025) (opt out of elementary school curriculum) and *Tandon v. Newsom*, 593 U.S. 61 (2021) (restriction on public gatherings) is misplaced. The District Court correctly placed this case in the context of explicit (*Carson*) or inferred (*Smith*) impact.

high for us to eschew guesswork." *O'Brien*, 391 U.S. at 384, 88 S.Ct. 1673; *see also Michael M. v. Superior Court*, 450 U.S. 464, 470, 101 S.Ct. 1200, 67 L.Ed.2d 437 (1981) ("[I]ndividual legislators may have voted for the statute for a variety of reasons."); *cf. Stormans, Inc. v. Wiesman*, 579 U.S. 942, 136 S. Ct. 2433, 2437 n.3, 195 L.Ed.2d 870 (2016) (Alito, J., dissenting from the denial of certiorari) ("It is an open question whether a court considering a free exercise claim should consider evidence of individual lawmakers' personal intentions, as is done in the equal protection context."). The legislative debate, and the legislation itself, was generally directed at discrimination in the workplace and employee privacy.

The District Court correctly concluded that the nine statements here do not establish "pervasive religious intolerance and hostility" as required under *Lukumi* and *Masterpiece Cakeshop*. J.A. 790.

The District Court also correctly rejected the attempt to graft a certain interpretation of historical Vermont cases involving the First Amendment and the Vermont Constitution onto the passage of Act 73 to establish religious animus. J.A. 790-91. As stated by the District Court:

Act 73 addresses issues of local versus central control and equitable funding that have formed the educational debate in Vermont for two centuries. The specific provision at issue – Section 21 – addresses issues of school funding, falling enrollment, class size and the role of public education in Vermont. The legislative choice that resulted in ineligibility for 15 religious schools and a somewhat higher number of secular independent schools was the preference for favoring the public school system over independent schools. This is the type of policy decision that state legislators are entitled to make. Their decision provides a rational basis for the changes to Vermont law that appear in Section 21.

J.A. 792. Finally, the District Court correctly found that the 14th Amendment Equal Protection claim fails for the same reasons. J.A. 793.

11

Accordingly, the District Court's decision does not rest on errors of law. Moreover, the preliminary injunction decision falls within the range of permissible decisions given the facts and law relative to the passage of Act 73.

## CONCLUSION

The WRV School Board respectfully requests that the Court AFFIRM the District Court's Order on Motion for Preliminary Injunction.

Date: July 31, 2026

Respectfully submitted,

WAITS RIVER VALLEY (UNIFIED #36 ELEMENTARY) SCHOOL BOARD

By:     */s/ Pietro J. Lynn*

Pietro J. Lynn, Esq.
Sean M. Toohey, Esq.
Lynn, Lynn, Blackman & Toohey, P.C.
Counsel for Defendants-Appellees
76 St. Paul St., Suite 400
Burlington, VT 05401
(802) 860-1500
plynn@lynnlawvt.com

12

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(ii) and Local Rule 32.1(a)(4)(B) because it contains 2,774 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f).

Date: July 31, 2026

> */s/ Pietro J. Lynn*
> Pietro J. Lynn, Esq.
> Sean M. Toohey, Esq.
> *Counsel for Defendants-Appellees*

# CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Second Circuit using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

Date: July 31, 2026

/s/ Pietro J. Lynn
Pietro J. Lynn, Esq.
Sean M. Toohey, Esq.
*Counsel for Defendants-Appellees*

14